**IN THE UNITED STATES DISTRICT COURT**
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| JERRY LEON DEES, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| Vs. | * | **CASE NO.** |
| | * | **2:07-cv-00306-MHT-CSC** |
| HYUNDAI MOTOR MANUFACTURING | * | |
| ALABAMA, LLC, and HYUNDAI | * | |
| MOTOR AMERICA, INC., | * | |
| | * | |
| Defendants. | * | |

**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER LIMITING THE SCOPE OF RULE 30(b)(6 DEPOSITIONS**

COMES NOW the Plaintiff, Jerry Leon Dees, Jr., ("Dees") and files this Response in Opposition to Defendants' Motion for Protective Order Limiting the Scope of Rule (30(b)(6) Depositions. In support thereof, Dees states as follows:

1.    Whether HMA is the alter ego of HMMA, and/or whether HMMA is a mere instrumentality of HMA can only be determined by discovery of the relevant facts, to wit:  the "relationship between" HMA and HMMA.

2.    The deposition topic regarding the decision to halt production at HMMA's manufacturing facility in Montgomery is relevant to issues of both damages and liability.

3.    Defendants' insistence that Dees depose HMA's corporate representative in HMA's own offices is unreasonable.  Dees had attempted to accommodate HMA by traveling over two thousand miles to depose HMA's corporate representative near HMA's headquarters, but HMA has spurned this accommodation.  Dees should be allowed to depose HMA in Montgomery, Alabama, where HMA is qualified to do business and where this case is pending.

- 1 -

Under the typical Rule 26(c) "good cause" analysis, Montgomery is the most suitable location

for deposing HMA's corporate representative, and Dees requests a court order to that effect.

## ARGUMENT

### I.   Dees is Entitled to Discover the Extent of the Relationship Between HMA and HMMA to Determine Whether HMMA is HMA's Alter Ego or a Mere Instrumentality of HMA

Defendants state their primary objection to Plaintiff's requested discovery in paragraph

21(c) of their Motion:

> …Plaintiff's Rule 30(b)(6) designations are not relevant to the legitimate claim or defense of any party because the relationship between HMMA and HMA for purposes of piercing the corporate veil on an alter ego or mere instrumentality theory is not limited to whether HMA is an "employer", i.e. whether HMA "pa[id] salary or wages for work performed or [had] control over employment opportunities…." 38 U.S.C. §4303(4)(a). **Plaintiff's alter ego or mere instrumentality theory is not supported by or necessary under the USERRA statute, and is not a basis of liability in the caselaw**. Because liability under USERRA is limited to discrimination by an "employer," Plaintiff's purported inquiry beyond this issue is irrelevant and not discoverable. [Emphasis added]

(Defendants' Motion, Doc. 46, p. 8).

Defendants cite no case law to support the argument that alter ego or mere

instrumentality theories cannot be the "basis of liability" under USERRA.  Instead, Defendants

state that they have found no USERRA cases allowing these theories of liability.  (Defs.' Motion,

Doc. 46, p. 3).

Yet, neither can Defendants cite any USERRA case *prohibiting* these theories. Indeed,

USERRA is not some unique federal employment statute requiring repudiation of the substantial

body of law developed pursuant to similar federal employment statutes.  Like those statutes,

USERRA is a remedial statute designed to protect employees--one which must be "liberally

construed for the benefit of those who left private life to serve their country." *Duarte v. Agilent*

*Technologies*, 366 F. Supp. 2d 1039, 1045 (D. Colo. 2005); *see also Alabama Power Co. v.*

*Davis*, 431 U.S. 581, 584 (1977); *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275,

285 (1946). Given the similar purposes of USERRA and other employment rights statutes (like Title VII, the ADEA, and the Americans with Disabilities Act), it follows that holding a parent company liable for misconduct that it perpetuates through operation of its subsidiary, which has been accepted by courts interpreting similar federal employment statutes, will be equally acceptable in USERRA cases.  Cf., *Duarte v. Agilent Technologies*, 366 F. Supp. 2d 1039 (finding case law construing ADEA helpful in interpreting USERRA provision).

In *Bruce vs. S&H Riggers & Erectors, Inc.*, 732 F.Supp. 1172 (N.D. Ga. 1990), the plaintiff brought an action pursuant to, *inter alia*, the ADEA alleging she was wrongfully terminated because of her age and sex.  *Bruce* at 1173-1174.  At summary judgment, defendants, S&H Riggers & Erectors, Inc. (S&H) and its parent company, Contractors Diversified, Inc. (CDI), argued that plaintiff was an employee of CDI (the parent) and **not** S&H.  The defendants argued that, since CDI employed only 3 people, CDI could not be an "employer" as defined by the ADEA which, on its face, is limited to employers with at least 20 employees.  *Bruce* at 1174.

The court applied the quadpartite "integrated enterprise" test to determine whether the parent and subsidiary were so interrelated that they should be considered one employer, considering proof of:   (1) an interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control.  *Bruce* at 1175 (citing *McKenzie vs. Davenport-Harris Funeral Home*, 834 F.2d 930 (11th Cir. 1987) and *Radio & Television Broadcast Technicians, Local Union 1264, Int'l Brotherhood of Electrical Workers, AFL-CIO v. Broadcast Serv. of Mobile, Inc.*, 380 U.S. 255 (1965).

In *Bruce*, the court traced the history of the "integrated enterprise" test through both Title VII and ADEA cases.  The court concluded that employing this test, which was designed to preclude unscrupulous parent companies from limiting their liability by operating through

wholly owned and controlled subsidiaries, "is 'well suited' to Title VII cases because it allows

courts to read the term 'employer' in a manner consistent with the purposes of the Act." *Bruce* at

1175. *See also Carter v. Shop Rite Foods*, 470 F. Supp. 1150, 1160 (N.D. Tex. 1979); *Baker v.

Stuart Broadcasting Co.*, 560 F.2d 389 (8th Cir. 1977). The test is similarly applied to ADEA

cases. 732 F. Supp. 1172; *see also Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756 (1979)

(interpretation of ADEA should follow Title VII construction, given common language and

purposes of the two acts).

Notwithstanding Defendants' unsupported argument that the USERRA term "employer"

should be narrowly construed, inconsistently with judicial interpretation of other federal

employment legislation, Dees has also asserted **state law claims** for conversion and outrage.  In

Alabama, a company that is the alter ego of a plaintiff's employer may also be held liable in an

employment-related claim.    "[W]here one corporation controls and dominates another

corporation to the extent that the second corporation becomes the mere instrumentality of the

first, the dominant corporation becomes liable for those debts or torts of the subservient

corporation attributable to an abuse of that control."  *Kwick Set Components, Inc. v. Davidson

Industries, Inc.*, 411 So.2d 134 (Ala. 1982).

In *Duff vs. Southern Railway Co.*, 496 So.2d 760 (Ala. 1986), for example, the Alabama

Supreme Court set out factual issues to be considered in determining whether a subsidiary is a

"mere instrumentality" of the parent corporation such that the parent is liable to the employee:

> "So far as the question of control alone is concerned, the parent
> corporation will be responsible for the obligations of its subsidiary when its
> control has been exercised to such a degree that the subsidiary has become its
> mere instrumentality.
>
> "The Instrumentality Rule is recognized in all jurisdictions in this country
> and our problem therefore is to determine the circumstances which render the
> subsidiary an 'instrumentality' within the meaning of the decisions. This is
> primarily a question of fact and of degree.

"The circumstances rendering the subsidiary an instrumentality. **It is manifestly impossible to catalogue the infinite variations of fact that can arise but there are certain common circumstances which are important and which, if present in the proper combination, are controlling.** These are as follows:

"(a) The parent corporation owns all or most of the capital stock of the subsidiary.

"(b) The parent and subsidiary corporations have common directors or officers.

"(c) The parent corporation finances the subsidiary.

"(d) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

"(e) The subsidiary has grossly inadequate capital.

"(f) The parent corporation pays the salaries and other expenses or losses of the subsidiary.

"(g) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.

"(h) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own.

"(i) The parent corporation uses the property of the subsidiary as its own.

"(j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest.

"(k) The formal legal requirements of the subsidiary are not observed."

*Taylor v. Standard Gas & Electric Co.*, 96 F.2d 693, 704-05 (10th Cir. 1938); see also *Baker v. Raymond Int'l. Inc.*, 656 F.2d 173 (5th Cir. 1981); *Garrett v. Southern Ry.*, 173 F. Supp. 915 (E. D. Tenn. 1959).

*Duff* at 763 (emphasis added).

Dees is entitled to proceed with the 30(b)(6) deposition of HMA--as noticed--in order to support his Alabama claims against HMA.  Dees cannot adequately argue his case against HMA without the deposition and documents requested.  The court has already denied HMA's motion to dismiss based on the same argument HMA now makes in objecting to discovery, finding the issue of HMA's liability to be one that can be addressed, at the earliest, at summary judgment.

Defendants unconvincingly argue that this ruling does not mean Dees is entitled to discovery on this issue. (Defs.' Motion, Doc. 46, p. 4, fn 2). Obviously Dees should not have to respond to HMA's anticipated summary judgment motion without discovery from a defendant against which Dees has stated a claim for which relief may be granted. **If the court intended to deny Dees the opportunity to rebut HMA's motion with *facts* obtained through discovery, the court would have granted HMA's 12(b)(6) motion.**

Defendants next contend that the scope of Dees' 30(b)(6) request is: "global in nature, vague, overly broad, oppressive, [and] unduly burdensome." (Defs.' Motion, Doc. 46, p. 7) As the Alabama Supreme Court noted in *Duff*, there is an **infinite variation of facts** that can arise which, combined, render the subsidiary an instrumentality of the parent corporation. Dees bears the burden of proof on this issue and is entitled to this discovery. HMA may exert control over HMMA in a variety of ways, by, for example, making management decisions, directing HMMA's production schedule, directing the human resources process, including the hiring and firing of employees, controlling the cash or working capital available so that HMMA's financial resources are limited, to name a few. There is already evidence that HMMA is the mere instrumentality of HMA since HMMA has substantially no business apart from or except with HMA for which it manufactures and assembles Hyundai motor vehicles. HMA is qualified to do business in Alabama, has the same phone number in Alabama as HMMA, and HMA's website refers to HMMA's Alabama facilities as "our assembly plant in Alabama."

**II. <u>Discovery of Circumstances Surrounding the Decision to Halt Production for Several Days in 2007 is Relevant</u>**

Dees intends to obtain testimony from HMA regarding the decision to halt production at HMMA's manufacturing facility for several days this year. Defendants argue that, because this

decision occurred *after* Dees' termination, the information sought is "irrelevant, confidential, and sensitive business/financial information."  (Defs.' Motion, Doc. 46, p. 8)

Dees is entitled to this discovery for at least two reasons.  First, the extent to which HMA dictates the production schedule of its subsidiary, HMMA, demonstrates Dees' alter ego/mere instrumentality/integrated enterprise theory of liability.  Second, Dees must support his damage calculations for lost wages and benefits.  These damages have been calculated based on Dees' history of employment at the HMMA manufacturing plant and the plant's future projected operations.  Dees is entitled to explore the circumstances surrounding the 2007 production halt and the likelihood that production will be halted in the future in order to support his damage calculations.   Indeed, the Defendants' own expert witness criticized Dees' expert's discount rate for calculating damages, saying it failed to take "company-specific risks into account.  Future uncertainties, **such as the currently scheduled 10 day closing of the Montgomery plant**, should be reflected by an increase to the discount rate."  Expert Report of J. Timothy Downard, C.P.A., at p. 4 (emphasis added).  It is thus disingenuous for Defendants to now argue that this production shut-down and circumstances surrounding it are off-limits in discovery.

Defendants next argue that information regarding plant operations should not be disclosed because it is confidential.  This argument is without merit.  The parties negotiated a Protective Order to protect such confidential information.  See Doc. 27.  Dees is neither a competitor of, nor employed by a competitor of, either HMA or HMMA.  The Defendants have no reasonable basis for withholding this information.

### III. Montgomery is the Best Location to Depose HMA's Corporate Representative

Defendants cite no authority for their contention that the deposition of HMA's corporate representative must take place in HMA's conference room at its corporate headquarters in

Fountain Valley, California. No such authority exists.  The law is clear that "[a] party may unilaterally choose the place for deposing an opposing party, subject to the granting of a protective order by the Court pursuant to Rule 26(c)(2), Fed. R. Civ. P., designating a different place." Turner v. Prudential Ins. Co. of Am., 119 F.R.D. 381, 382 (M.D.N.C. 1988) (citing 8 C. Wright & A. Miller, Federal Practice and Procedure, § 2112 at 403 (1970)). See also, Afram Export Corp. v. Metallurgic Halyps, S.A., 772 F.2d 1358, 1365 (7th Cir. 1985) (the "Federal Rules of Civil Procedure do not specify the place for deposing a party.").

Dees noticed the deposition of HMA's corporate representative for a conference room at a hotel in Santa Monica (about 40 miles from HMA's corporate offices (Doc. 46, p. 9)) solely as an accommodation to HMA.  Dees alternatively offered to depose HMA's corporate representative at the HMMA facility in Montgomery. See Exhibit A.

Since Defendants have raised the issue, however, it is in fact more appropriate to take the deposition of HMA's corporate representative in Montgomery. The events giving rise to this cause took place in Montgomery.  Most of the witnesses reside within driving distance of Montgomery. Counsel for Plaintiff and two of three defense counsel are within driving distance of Montgomery. In short, the "factors of cost, convenience and litigation efficiency militate in favor of holding the deposition" in Montgomery.  See Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp., 203 F.R.D. 98, 107 (S.D.N.Y. 2001).

Additionally, "[r]equiring defendants to appear for depositions at the place of trial is not unusual."  Adair v. Hunt Int'l Resources Corp., No. 79 C 4206, etc., 1987 U.S. Dist. LEXIS 14075, *4 & n. 8 (N.D. Ill. May 12, 1987) (citing *Financial General Bankshares, Inc. v. Lance*, 80 F.R.D. 22, 23 (D.D.C. 1978)).  "Corporate defendants are **frequently** deposed in places other than the location of their principal place of business, especially when the deposition site is the

forum most convenient to all parties and that which best serves the general interests of judicial economy." Custom Form Mfg., Inc. v. Omron Corp., 196 F.R.D. 333, 338 (N.D. Ind. 2000) (emphasis added) (citing *Sugarhill Records, Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 171 (S.D.N.Y. 1985)). See also, Adair v. Hunt Int'l Resources Corp., No. 79 C 4206, etc., 1987 U.S. Dist. LEXIS 14075, *3 (N.D. Ill. May 12, 1987) (corporate defendants "**frequently** deposed in places other than the location of the principal place of business, **especially in the forum**, for the convenience of all parties and in the general interests of judicial economy.") (citation omitted, emphasis added).

Most importantly, the Defendants have not established the "good cause" necessary for a protective order under Rule 26(c). Defendants must meet its burden of showing "good cause," which is established by a showing of specific prejudice or harm ("undue burden or expense") if no order is granted. See, e.g., Bucher v. Richardson Hosp. Auth., 160 F.R.D. 88, 92 (N.D. Tex. 1994). Since the Defendants have "presented absolutely no evidence showing a specific and particular need for [a] protective order"[1] that the deposition as noticed should not proceed, its request should be denied. Cadent Ltd. v. 3M Unitek Corp., 232 F.R.D. 625, 628 (C.D. Cal. 2005). Cf., South Seas Catamaran, Inc. v. Motor Vessel "Leeway", 120 F.R.D. 17, 21 n. 5 (D.N.J. 1988) ("[C]ourts have often required corporate defendants to produce their officers or agents for depositions at locations other than the corporation's principal place of business where

---

[1]Any attempt by Defendants to reply with affidavits of hardship should be disregarded on their present motion. See, e.g., Pennsylvania Lumbermen Mutual Ins. Co. v. T.R. Miller Mill Co., Inc., Civil Action 05-0302-WS-M, 2006 U.S. Dist. LEXIS 6666, *10 (S.D. Ala. Jan. 31, 2006) ("arguments, initially raised in a reply brief, come too late and need not be reviewed.") (footnote citations omitted).

there has been no showing that the defendant will suffer any resulting financial hardship."),

affirmed by, 993 F.2d 878 (3d Cir. 1993) (Table).[2]

Because Defendants were unsatisfied with Dees' efforts to accommodate HMA, Dees

asks that the court determine that Montgomery is the most appropriate forum for deposing

HMA's 30(b)(6) representatives.

WHEREFORE, the PREMISES CONSIDERED, Defendants' Motion for Protective

Order Limiting the Scope of Rule 30(b)(6) Depositions should be denied. Further, Plaintiff

moves the Court to set the place to depose HMA's corporate representative at the Alabama State

Bar, Montgomery, Alabama, on the date previously noticed, Friday, November 9, 2007.

Respectfully submitted,

s/ Vincent F. Kilborn, III_____
Vincent F. Kilborn, III (KILBV4484)

s/ David A. McDonald_____
David A. McDonald (MCDOD5329)

s/ W. Perry Hall_____
W. Perry Hall (HALLW9043)

s/ Jeffrey R. Sport_____

---

[2]See also, Tomingas v. Douglas Aircraft Co., 45 F.R.D. 94, 97 (S.D.N.Y. 1968) (declining to vacate deposition notice where "there has been no showing that any harm would result to defendant's business by virtue of the deponents' brief absence from their jobs"); Sugarhill Records Ltd., 105 F.R.D. 166 (declining to move deposition to corporate defendant's principal place of business where, among other things, it did not establish that managing agent's absence from the work place for a brief period "imposes a substantial hardship on the corporation," that "travel on behalf of the corporation by one of its managing agents is unexpected or that such travel ... for deposition imposes a severe burden on it"); Afram Export Corp. v. Metallurgiki Halyps, S.A., 772 F.2d 1358, 1365 (7th Cir. 1985) (affirming decision to depose Greek corporation's president in U.S. where corporation made no showing of hardship); Mill-Run Tours, Inc. v. Khashoggi, 124 F.R.D. 547, 550 (S.D.N.Y. 1989) (defendants "failed to provide affidavits demonstrating in detail how their businesses or other interests might be harmed if they were to take the time to come to New York for depositions"); Baker v. Standard Indus., Inc., 55 F.R.D. 178, 179 (D.P.R. 1972) (denying motion for a protective order to require corporate officer's deposition at corporation's principal place of business because no showing that corporate officer is "being put to unnecessary trouble and expense by being required to travel a great distance to give his deposition").

Jeffrey R. Sport (SPORJ5390)
**Attorneys for Plaintiff**

OF COUNSEL:

KILBORN, ROEBUCK & McDONALD
1810 Old Government Street
Post Office Box 66710
Mobile, Alabama 36660
Telephone: (251) 479-9010
Fax: (251) 479-6747
E-mail: vfk@krmlaw.us
E-mail: dam@krmlaw.us
E-mail: wph@krmlaw.us
E-mail: jeff.sport@sportlaw.us

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on the 8th day of November, 2007, electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system which will send notification of such filing to:

J. Trent Scofield, Esq.
T. Scott Kelly, Esq.
OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, AL 35203-2118

Matthew K. Johnson, Esq.
Ogletree, Deakins, Nash,
 Smoak & Stewart, P.C.
Post Office Box 2757
Greenville, SC  29602

s/ W. Perry Hall_____
COUNSEL

# KILBORN ROEBUCK & McDONALD
## ATTORNEYS AT LAW

| VINCENT F. KILBORN, III | M. LLOYD ROEBUCK | DAVID A. MCDONALD | W. PERRY HALL | JEFFREY R. SPORT |

October 16, 2007

**<u>Via Fax and U.S. Mail</u>**

Matthew K. Johnson, Esquire
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
P.O. Box 2757
Greenville, SC 29602

Re:  *Dees v. Hyundai Motor Manufacturing Alabama, LLC, et al.*

Dear Matt:

Attached you will find three notices of deposition for Wendy Warner, HMMA 30(b)(6), and HMA 30(b)(6). These are the three depositions Judge Coody has allowed us to take **before** you take Mr. Dees' deposition. I have noticed the deposition of HMA at the Marriott Le Merigot hotel in Santa Monica, California. This is within the federal district court jurisdiction in that location. I have chosen the date of Monday, November 5th since it will allow us to complete the two depositions noticed for November 1st and fly to California. If Hyundai wishes to present its representatives in Montgomery rather than California, I will accommodate it. I am assuming that HMA will not agree to this since that is what you expressed in earlier communications. This choice is HMA's, not mine.

With regard to your discovery arguments in your October 9th letter, I must point out that Judge Thompson's order denying your motion to dismiss allows us to fully discover the alter ego and mere instrumentality allegations made in paragraph 4 of the complaint. The fact that Dees was not on HMA's payroll is irrelevant to HMA's liability for HMMA's actions. This is not an "agency" allegation; it is an issue of corporate control.

Dees will be available for deposition in Montgomery upon our return from California. I have included undated notices of deposition for the balance of the witnesses we wish to depose in this matter.

With best regards, I remain

Very truly yours,

Vincent F. Kilborn, III

VFK/jrs
w/ enc.

POST OFFICE BOX 66710  •  MOBILE ALABAMA 36660
1810 OLD GOVERNMENT STREET  •  MOBILE ALABAMA 36606
PHONE 251.479.9010  •  FAX 251.479.6747

# KILBORN ROEBUCK & MCDONALD
### ATTORNEYS AT LAW

| VINCENT F. KILBORN, III | M. LLOYD ROEBUCK | DAVID A. MCDONALD | W. PERRY HALL | JEFFREY R. SPORT |
|---|---|---|---|---|

October 31, 2007

**<u>Via Fax and U.S. Mail</u>**

Matthew K. Johnson, Esquire
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
P.O. Box 2757
Greenville, SC 29602

Re:    ***Dees v. Hyundai Motor Manufacturing Alabama, LLC, et al.***

Dear Matt:

      This is in response to your e-mailed correspondence of this date regarding scheduled HMA deposition and your objections to our 30(b)(6) deposition topics and 30(b)(5) document requests.

      We have already accommodated your clients by agreeing to travel 2,000 miles to California to depose their representative, when HMA is qualified to do business in Alabama. Surely, your clients can travel 40 miles. Alternatively, we would be happy to conduct the deposition in a Hyundai facility. You can produce the HMA representative at the Hyundai manufacturing facility in Montgomery, and we will be happy to depose them there.

      Regarding our disagreement over the scope of discovery on the HMA/HMMA alter ego/mere instrumentality issue, I am more than willing to discuss some mutual compromise that involves significant discovery beyond whether or not HMA ever paid Dees a paycheck. This allegation clearly goes beyond that, and discovery is not only appropriate, it has already been ordered by the court. If, however, you insist on your limited position, we have no alternative but to insist upon our position, to wit: The discovery topics we noticed are entirely relevant and, per Judge Thompson's previous order, are due to be discovered. These topics go directly to the alter ego and mere instrumentality allegations, and the documents requested are relevant to that issue.

      Again, with respect to the document requests you do not object to (if any), please forward those documents to us as soon as possible so that we may prepare for the deposition.

      With best regards, I remain

                           Very truly yours,

                           JEFFREY R. SPORT

JRS/jrs

POST OFFICE BOX 66710  ·  MOBILE ALABAMA 36660
1810 OLD GOVERNMENT STREET  ·  MOBILE ALABAMA 36606
PHONE 251.479.9010  ·  FAX 251.479.6747