# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| JERRY LEON DEES, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO.: |
| v. ) | 2:07-cv-00306-MHT-CSC |
| ) | |
| HYUNDAI MOTOR MANUFACTURING ) | |
| ALABAMA, LLC, and HYUNDAI MOTOR ) | |
| AMERICA, INC., ) | |
| ) | |
| Defendants. ) | |

### DEFENDANTS' MOTION FOR LEAVE TO RESPOND TO PLAINTIFF'S OBJECTION TO ORDER ON DEFENDANTS' MOTION TO QUASH NON-PARTY SUBPOENA TO INDUSTRIAL CARE MANAGEMENT

Defendants Hyundai Motor Manufacturing Alabama, LLC (HMMA) and Hyundai Motor America, Inc. ("HMA") (collectively "Defendants") move this Honorable Court to allow Defendants to reply to *Plaintiff's Objection to Order on Defendants' Motion to Quash Non-Party Subpoena to Industrial Care Management* (Doc. No. 91). In support of this motion, Defendants state as follows:

1. *Plaintiff's Objection to Order on Defendants' Motion to Quash Non-Party Subpoena to Industrial Care Management* was filed on January 15, 2008.

2. Defendants ask this Court to allow them to reply and consider their *Response to Plaintiff's Objection to Order on Defendants' Motion to Quash Non-Party Subpoena to Industrial Care Management.*

WHEREFORE, PREMISES CONSIDERED, Defendants request this Honorable Court to consider Defendants' *Response to Plaintiff's Objection to Order on Defendants' Motion to*

*Quash Non-Party Subpoena to Industrial Care Management*, and, if necessary, enter an Order allowing Defendants' to respond considering the attached Exhibit A as Defendants' response.

Respectfully submitted this 17th day of January, 2008.

/s/  T. Scott Kelly
J. Trent Scofield (SCO-024)
T. Scott Kelly (KEL-053)
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, AL 35203-2118
Tel.: (205) 328-1900
Fax: (205) 328-6000
E-mail: trent.scofield@odnss.com
E-mail: scott.kelly@odnss.com

Matthew K. Johnson
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
P.O. Box 2757
Greenville, SC  29602
Tel.: (864) 271-1300
Fax: (864) 235-8806
E-mail: matthew.johnson@odnss.com
**Pro Hac Vice Granted 05/15/07**

Attorneys for Defendants Hyundai Motor
Manufacturing Alabama, LLC and
Hyundai Motor America, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of January, 2008, I electronically filed the foregoing *Defendants' Motion for Leave to File to Respond to Plaintiff's Objection to Order on*

*Defendants' Motion to Quash Non-Party Subpoena to Industrial Care Management* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: W. Perry Hall, Vincent F. Kilborn, III, David Allen McDonald, Jeffrey Rayborn Sport, Trent Scofield, and Matthew K. Johnson.

        /s/ T. Scott Kelly
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, AL 35203-2118
Tel.: (205) 328-1900
E-mail: trent.scofield@odnss.com

5438150.1

5438150.1

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JERRY LEON DEES, JR., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>HYUNDAI MOTOR MANUFACTURING )<br>ALABAMA, LLC, and HYUNDAI MOTOR )<br>AMERICA, INC., )<br>)<br>Defendants. ) | CASE NO.<br>2:07-CV-00306-MHT-CSC |

### DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION TO ORDER ON PLAINTIFF'S MOTION TO QUASH THE NON-PARTY SUBPOENA TO INDUSTRIAL CARE MANAGEMENT

Defendants Hyundai Motor Manufacturing Alabama, LLC ("HMMA") and Hyundai Motor America, Inc. ("HMA") (collectively "Defendants") respond to *Plaintiff's Objections to Order on Defendants' Motion to Quash Non-Party Subpoena to Industrial Care Management* (Doc. 91) ("Plaintiff's Objection"), filed on January 15, 2008 by Plaintiff Jerry Leon Dees, Jr.'s ("Plaintiff") as follows:

I.   **Introduction and Factual Background**

1.   Plaintiff instigated this action, after HMMA terminated his employment because another employee, James Brookshire ("Mr. Brookshire"), reported Plaintiff was sleeping at work.[1]

---

[1] HMMA did not rely solely on Mr. Brookshire's report in its decision to terminate Plaintiff. Indeed, it conducted an independent investigation and interviewed Plaintiff. Based on the results of this investigation, HMMA decided to terminate Plaintiff's employment.

2. Plaintiff brought claims against Defendants for violations of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301, et seq. ("USERRA"), and asserted Alabama state law claims of outrage and conversion.

3. During the course of discovery, Plaintiff sought medical and psychiatric records from Dr. Shah, Alabama Psychiatric Services, and Industrial Care Management pertaining to Mr. Brookshire.[2]

4. Defendants filed Motions to Quash the subpoenas to Dr. Shah, Alabama Psychiatric Services and Industrial Care Management citing the psychiatric-patient privilege, the fact that the records were irrelevant, and that the subpoena was sent as an attempt to harass and intimidate Mr. Brookshire.

5. Dr. Shah and Alabama Psychiatric Services also filed a Motion to Quash the subpoena asserting the psychiatric-patient privilege.

6. On January 4, 2008, Magistrate Judge Coody issued an Order granting Defendants' Motion to Quash Plaintiff's Non-Party Subpoenas to Industrial Care Management, Dr. Shah and Alabama Psychiatric Services. Court Doc. No. 86.

7. In his Order, Magistrate Judge Coody found the information sought by Plaintiff was privileged and not subject to disclosure pursuant to Federal Rule of Evidence 501 and *Jaffee v. Redmond*, 518 U.S. 1 (1996).

8. On January 15, 2008, Plaintiff objected to Magistrate Judge Coody's Order as it related to the granting of the Motion to Quash the subpoena to Industrial Care Management.[3]

---

[2] Brookshire failed a drug test, in connection with a post-accident screen, in late March 2007. (Brookshire Depo. attached hereto as Exhibit 1 at 48: 15-19). This was approximately six (6) weeks after Brookshire observed and reported Dees' misconduct.
[3] Plaintiff did not object to the entry of the Order granting the Motion to Quash to subpoena to Dr. Shah and Alabama Psychiatric Services.

9. Basically, Plaintiff's Objection is that ICM did not treat but only monitored Mr. Brookshire and, therefore, the application of the psychiatric-privilege does not apply in this instance and Magistrate Judge Coody's Order is contrary to law. Plaintiff also presented arguments that Defendants lacked standing and that ICM had failed to file a Motion to Quash.

## II.  Industrial Care Management Files Its Motion to Quash

10. On January 17, 2008, Industrial Care Management filed a Motion to Quash the subpoena asserting the psychiatric-patient privilege and stated that its records contained confidential communications between it and Mr. Brookshire relating to his medical and psychiatric treatment. *See* Court Doc. No. 92 at ¶ 2.

11. In particular, Industrial Care Management stated it was a health care provider, not a mere third party as alleged by Plaintiff, that maintained records that contained confidential information related to the "employer drug and alcohol testing, the subsequent assessment, referral and psychiatric treatment of" Mr. Brookshire. *Id.*

12. It is interesting to note that Plaintiff did not object to Magistrate Judge Coody's Order as it relates to Dr. Shah and Alabama Psychiatric Services. Indeed, Plaintiff in his objection states that the Motion to Quash was granted to those two providers because "Dr. Shah could and did assert the privilege on behalf of Mr. Brookshire and that Mr. Brookshire did not waive the privilege." Court Doc. No. 91 at 1, 2.

13. The fact that ICM has now filed its own Motion to Quash aligns it with the positions taken by Dr. Shah and Alabama Psychiatric Services.

14. As set forth in ICM's Motion to Quash, Plaintiff's assertion that ICM did not treat Mr. Brookshire is inaccurate and the privilege applies in this instance. Therefore, Magistrate Judge Coody's Order is not erroneous or contrary to law.

### III. Magistrate Judge Coody's Order Is Not Contrary to Law

15. Examining the two cases Plaintiff relies upon to illustrate how Magistrate Judge Coody's Order is contrary to law actually reveals an application of the privilege in this instance is appropriate.

16. For instance, in *Doe v. Ensey*, et al., 220 F.R.D. 422 (M.D. Pa. 2004), the court held that any discussions between defendants, who were priests accused of sexual molestation by plaintiff, and their psychologists were protected by the federal privilege recognized in *Jaffe* but that under Pennsylvania law the privilege was waived because of the priests disclosure of the protected information to third parties.

17. Plaintiff relies upon *Doe* for the proposition that the privilege does not attach unless the communications were confidential and made in course of diagnosis or treatment. Court Doc. No. 91 at 2.

18. By filing its Motion to Quash, ICM has demonstrated that the communications between it and Mr. Brookshire were confidential and made in relation to his treatment. Applying *Doe* in this context supports an application of the privilege.

19. The other case cited by Plaintiff, a decision from the Alabama Supreme Court that analyzed the Alabama psychiatric privilege and not the federal privilege as outlined in *Jaffee*, is also unhelpful for Plaintiff's position. *See Ex parte Etherton*, 773 So. 2d 431, 436 (Ala. 2000).

20. In *Ex parte Etherton*, a former dental patient of Dr. Etherton's sued alleging claims of medical malpractice, breach of contract and fraudulent suppression. The patient sought records from three separate medical providers related to Dr. Etherton's treatment for chemical dependency and in response Dr. Etherton filed a motion to quash the subpoenas. The one provider that Plaintiff brings to the Court's attention is Dr. Guin, who did not provide any

4

psychological treatment to Dr. Etherton. Instead, the Alabama Impaired Professionals' Committee appointed Dr. Guin to monitor Dr. Etherton's rehabilitation and report his findings to the Committee. *Id.* at 434. Because Dr. Guin did not treat Dr. Etherton, the Court found that there was no privilege. *Id.*

21. *Ex parte Etherton* in the context that Plaintiff applies it to this case is distinguishable because ICM did, in fact, treat Mr. Brookshire. In contrast, Dr. Guin did not treat Dr. Etherton.

22. However, a thorough analysis of the case reveals support for the application of privilege in this case. For instance, the court upheld the privilege for the other two medical providers that actually treated Dr. Etherton. Its analysis included an examination of Dr. Etherton's conduct, which included testifying in a deposition about his treatment, sending a letter to his patients about his chemical-dependency problem, treatment and his return to practice. *Id.* at 435-36. The court did recognize the dental patient's heavy burden of producing by substantial evidence that Dr. Etherton had committed malpractice and ordered the records be produced at to the trial court for an *in camera* inspection. *Id.*

23. In this case, unlike the dental patient, Plaintiff is not faced with such a difficult burden and, therefore, Magistrate Judge Coody's Order granting Defendants' Motion to Quash the subpoena to Industrial Care Management is appropriate.

24. Plaintiff has cited no cases that illustrate Magistrate Judge Coody's Order was contrary to law or clearly erroneous. Paradoxically, the cases Plaintiff relies upon support an application of the privilege in this case.

5

### IV. The Subpoena and Plaintiff's Actions Are Intended To Harass Mr. Brookshire and Defendants.

25. Plaintiff's counsel has subpoenaed these records in an effort to harass Mr. Brookshire and Defendants. *See* Federal Rule of Civil Procedure 26 (c) ("Upon motion by a party or by the person from whom discovery is sought, ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... (1) that the disclosure or discovery not be had ... (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters.").

26. The issuance of the subpoena to ICM is not the only instance where Plaintiff has attempted to harass and intimidate Mr. Brookshire and Defendants. For example, during a break during Mr. Brookshire's deposition where Mr. Brookshire was asked numerous questions about illegal drug use, Redding Pitt, a former United States Attorney, entered the deposition room at the apparent invitation of Plaintiff's counsel. It was only after Defendants' counsel confronted Mr. Pitt that he agreed to leave the room.

27. The juxtaposition of Mr. Pitt's appearance in the deposition room and the line of questioning to Mr. Brookshire about his alleged illegal drug use is a clear example of Plaintiff's efforts of intimidation in an attempt to bolster his own claims.

WHEREFORE, PREMISES CONSIDERED, Defendants request this Honorable Court to enter an Order that Magistrate Judge Coody's Order granting Defendants' Motion to Quash the Non-Party Subpoena to Industrial Care Management was neither erroneous nor contrary to law and, therefore, should be accepted in whole and Plaintiff's objections should be overruled.

Dated this 24th day of January, 2008.

s/ T. Scott Kelly
J. Trent Scofield (SCO-024)
T. Scott Kelly (KEL-053)
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, AL 35203-2118
Tel.: (205) 328-1900
Fax: (205) 328-6000
E-mail: trent.scofield@odnss.com
E-mail: scott.kelly@odnss.com

Matthew K. Johnson
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
P.O. Box 2757
Greenville, SC 29602
Tel.: (864) 271-1300
Fax: (864) 235-8806
E-mail: matthew.johnson@odnss.com
**Pro Hac Vice Granted 05/15/07**

Attorneys for Defendants Hyundai Motor Manufacturing Alabama, LLC, and Hyundai Motor America, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of January, 2008, I electronically filed the foregoing *Defendants' Response to Plaintiff's Objection to Order on Defendants' Motion to Quash Non-Party Subpoena to Industrial Care Management* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: W. Perry Hall, Vincent F. Kilborn, III, David Allen McDonald, and Jeffrey R. Sport.

/s/ T. Scott Kelly
T. Scott Kelly (KEL-053)
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, AL 35203-2118
Tel.: (205) 328-1900
Fax: (205) 328-6000
E-mail: scott.kelly@odnss.com

5438719.1

8

# EXHIBIT 1

JAMES ALLEN BROOKSHIRE

```
 1      IN THE UNITED STATES DISTRICT COURT
 2      FOR THE MIDDLE DISTRICT OF ALABAMA
 3            NORTHERN DIVISION
 4   CASE NO.: 2:0cv00306-MHT-CSC
 5
 6   JERRY LEON DEES, JR.,
 7        Plaintiff,
 8        V.
 9   HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC and
10   HYUNDAI MOTOR AMERICA, INC.,
11        Defendants.
12
13           STIPULATIONS
14
15
16      IT IS STIPULATED AND AGREED by and
17   between the parties, through their respective
18   counsel, that the deposition of JAMES ALLEN
19   BROOKSHIRE may be taken before STACEY L.
20   JOHNSON, Commissioner, at the Marriott
21   Prattville at Capitol Hill, 2500 Legends Circle,
22   Prattville, Alabama, on the 29th day of
23   November, 2007.
                                              1
```

```
 1              INDEX
 2   EXAMINATION BY:              PAGE NUMBER
 3   Mr. Kilborn......................5-177
 4   Mr. Johnson....................177-182
 5   Mr. Kilborn....................182-186
 6   Mr. Johnson...................186
 7
 8   EXHIBITS:
 9   Plaintiff's Exhibit 13.......................12
10      (two handwritten statements)
11   Plaintiff's Exhibit 14.......................33
12      (employment application)
13   Plaintiff's Exhibit 15.......................38
14      (Team Member Handbook)
15   Plaintiff's Exhibit 16.......................98
16      (Team Relations Memo)
                                              3
```

```
 1       IT IS FURTHER STIPULATED AND AGREED
 2   that the signature to and the reading of the
 3   deposition by the witness is hereby waived, the
 4   deposition to have the same force and effect as
 5   if full compliance had been had with all laws
 6   and rules of Court relating to the taking of
 7   depositions.
 8       IT IS FURTHER STIPULATED AND AGREED
 9   that it shall not be necessary for any
10   objections to be made by counsel to any
11   questions except as to form or leading
12   questions, and that counsel for the parties may
13   make objections and assign grounds at the time
14   of trial, or at the time said deposition is
15   offered in evidence, or prior thereto.
16       IT IS FURTHER STIPULATED AND AGREED
17   that the notice of filing of the deposition by
18   the Commissioner is waived.
                                              2
```

```
 1          APPEARANCES
 2   FOR THE PLAINTIFF, JERRY LEON DEES, JR.:
 3      KILBORN, ROEBUCK & McDONALD
 3      Jeffrey R. Sport
 4      (SPORJ5390)
 4      jeff.sport@sportlaw.us
 5
 5      Vincent F. Kilborn, III
 6      (KILBV4484)
 6      1810 Old Government Street
 7      Mobile, Alabama 36606
 7      (251) 479-9010
 8
 9   FOR THE DEFENDANTS, HYUNDAI MOTOR MANUFACTURING
10   ALABAMA, LLC and HYUNDAI MOTOR AMERICA, INC:
11      OGLETREE, DEAKINS, NASH, SMOAK
11        & STEWART, P.C.
12      Matthew K. Johnson
12      P. O. Box 2757
13      Greenville, South Carolina 29602
13
14      HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC
14      Christopher N. Smith
15      chrissmith@hmmausa.com
15      700 Hyundai Boulevard
16      Montgomery, Alabama 36105
16      (334) 387-8057
                                              4
```

JAMES ALLEN BROOKSHIRE

| | |
|---|---|
| 1  A  For wrinkles and splits on the panel.<br>2  Q  Did you have some suspicion that there<br>3  were quality problems?<br>4  A  Yeah.<br>5  Q  What made that occur to you?<br>6  A  We got a call from the Quality<br>7  Department, the Weld Shop, and they had told us<br>8  they'd seen some problems with it. The other<br>9  piece was we had the die back in the shop being<br>10 worked on. We had to bring it back up. We ran<br>11 very close to running the Body Shop out of<br>12 parts. So we had to put the job back in the<br>13 press quickly to get parts to the Weld Shop, and<br>14 we had to check the quality on them quickly also<br>15 to make sure we weren't going to jeopardize the<br>16 customer in shutting down production at the Weld<br>17 Shop.<br>18 Q  And do you agree with the fact that<br>19 **Mr. Dees should have been terminated for**<br>20 **violating these two bullet points, Serious**<br>21 **Misconduct Policies?**<br>22     MR. JOHNSON: Object to the form.<br>23 A  For any employee taking their own time<br>45 | 1      Now, the part of it that I was not was<br>2  not under the influence on HMMA property.<br>3  Q  Well, did you violate that policy you<br>4  **just read or not?**<br>5  A  I don't actually know the policy of<br>6  that, but I know I failed a urine exam when I<br>7  went up to Medical after I had been cut. I had<br>8  been cut through my glove when I was helping<br>9  some Team Members pull some scrap out of the<br>10 scrap shoot. I went to Medical to be treated<br>11 for the laceration I received on my hand, and<br>12 it's protocol for safety incidents to be drug<br>13 tested.<br>14 Q  **So you got caught with drugs?**<br>15     MR. JOHNSON: Object to the form.<br>16 A  I had shown up positive in the urine<br>17 sample.<br>18 Q  **But you didn't expect to be caught, did**<br>19 **you?**<br>20 A  I didn't think about it because of the<br>21 time of when the incident happened I had been at<br>22 a party and drinking alcohol.<br>23 Q  **You got caught?**<br>47 |
| 1  and not being -- performing the regular job task<br>2  and sleeping on the job, I do have a problem<br>3  with that. I do believe that's a problem<br>4  conflicting with company policy.<br>5  Q  **So you believe he should have been**<br>6  **terminated?**<br>7  A  Yes.<br>8  Q  **So you agree with that?**<br>9  A  Yes.<br>10 Q  **And how many of these serious**<br>11 **misconduct policies on page 34 and 35 have you**<br>12 **yourself violated?**<br>13 A  One of them.<br>14 Q  **Which one is that?**<br>15 A  The use of -- use of illegal drugs.<br>16 Q  **Would you read for us that willful**<br>17 **misconduct that you yourself violated?**<br>18 A  Use or possession, sale, transfer or<br>19 being under the influence of illegal drugs,<br>20 alcohol, or other intoxicating substances at any<br>21 time on HMMA property. Gifts of alcohol or<br>22 coolers containing alcohol are prohibited at<br>23 HMMA.<br>46 | 1  A  Showed up positive in the urine sample,<br>2  yes.<br>3  Q  **What about the alcohol? Did they catch**<br>4  **you with that, too?**<br>5  A  No.<br>6  Q  **Did you tell them you'd also been**<br>7  **drinking alcohol?**<br>8  A  On the weekend I had, that Saturday,<br>9  but I wasn't at work.<br>10 Q  **Did you tell them that?**<br>11 A  Yeah, I disclosed that to the HR<br>12 people, and then also I had to attend a<br>13 substance abuse program -- alcohol and substance<br>14 abuse program for condition of employment.<br>15 Q  **What was the date you got caught?**<br>16 A  March the 24th or 5th or 6th somewhere<br>17 in there. Towards the last week of March.<br>18 Q  **2007?**<br>19 A  Yes, sir.<br>20 Q  **So what happened? You were the**<br>21 **Stamping Plant manager at that time?**<br>22 A  Yeah.<br>23 Q  **In charge of 30 people?**<br>48 |

12 (Pages 45 to 48)