**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

**JERRY LEON DEES, JR.,**

      **Plaintiff,**

**v.**

**HYUNDAI MOTOR MANUFACTURING
ALABAMA, LLC, and HYUNDAI
MOTOR AMERICA, INC.,**

      **Defendants.**

**CIVIL ACTION NO.:
2:07-cv-00306-MHT-CSC**

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

J. Trent Scofield (SCO-024)
T. Scott Kelly (KEL-053)
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, AL 35203-2118
Tel.: (205) 328-1900
Fax: (205) 328-6000
E-mail: trent.scofield@odnss.com
E-mail: scott.kelly@odnss.com

Matthew K. Johnson
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
P.O. Box 2757
Greenville, SC  29602
Tel.: (864) 271-1300
Fax: (864) 235-8806
E-mail: matthew.johnson@odnss.com
**Pro Hac Vice Granted 05/15/07**

## TABLE OF CONTENTS

I.    Response To Plaintiff's Introduction ........................................................................... 1

II.   The Court Should Not Consider Portions Of Plaintiff's Brief And Declarations That Contain
      Conclusory Assertions, Hearsay Statements, And Statements of Subejctive Belief ...........1

III.  Defendant HMA Is Due To Be Immediately Dismissed. ..................................................... 2

   A.   HMA Was Not Plaintiff's "Employer"................................................................................. 3

   B.   Defendants Cannot Be Considered "Joint Employers". ...................................................... 3

IV.   Plaintiff Has Abandoned His "USERRA Harassment" Claim. ............................................ 5

V.    Plaintiff's USERRA Termination Claim Fails As A Matter Of Law. ................................... 6

   A.   There Is No Direct Evidence Of Unlawful Animus............................................................. 6

   B.   Plaintiff Cannot Rely On Inadmissible Evidence. .............................................................. 9

      i.  Unsupported, Conclusory Allegations. ........................................................................ 10

VI.   The Undisputed Facts Demonstrate No Discriminatory USERRA Animus Exists.......... 11

   A.   Prater Has No Connection To The Alleged Misconduct Investigation ............................ 11

   B.   Prater Is A Fellow Military Member. ................................................................................ 12

   C.   The Investigation Was Complete and Impartial. .............................................................. 13

   D.   The Termination Decision Was Objective And Consistent............................................... 13

   E.   No Evidence Casts Doubt On HMMA'S Good Faith Belief. ............................................ 14

   F.   Plaintiff's Proffered Circumstantial Evidence Cannot Create A Genuine Issue In Light of
        the Undisputed Material Facts. ........................................................................................ 15

      i.  No Adverse Employment Action....................................................................................... 15

      ii.  No Proximity In Time / No Actual Knowledge............................................................. 16

      iii.  Plaintiff's Alleged  Evidence Falls Far Short............................................................. 17

VII.    Defendants Are Entitled to Judgment As A Matter Of Law On Plaintiff's State Law
        Claims ................................................................................................................. 18

   A.   Plaintiff's Outrage Claim Is Entirely Unsupported. ........................................... 18

   B.   Plaintiff's Conversion Claim Fails As A Matter Of Law. ................................... 20

VIII.   Conclusion. ........................................................................................................ 22

Defendants Hyundai Motor Manufacturing Alabama, LLC ("HMMA") and Hyundai Motor America, Inc. ("HMA"), through undersigned counsel, submit this Reply Brief in Support of their pending motion for summary judgment.[1]

## I.      Response To Plaintiff's Introduction

Plaintiff's narrative introduction, which is filled with argument and is devoid of any record citations, requires no reply from Defendants.   Though Plaintiff accuses HMMA of "reprehensible conduct," he either ignores (or fails to address) the undisputed evidence which clearly demonstrates that his USERRA and two state law claims fail as a matter of law.

## II.     The Court Should Not Consider Portions Of Plaintiff's Brief And Declarations That Contain Conclusory Assertions, Hearsay Statements, And Statements of Subjective Belief.

Defendants note that Plaintiff's "Statement of Facts" (Doc. 107, pp. 4-15) contain numerous fact assertions with no record citations.   This violates Section 2 of this Court's Scheduling Order (Doc. 19, p. 2), which clearly states, "Failure to make such specific reference will result in the evidence not being considered by the court."   Id.   As this Court well knows, "Although there may be evidence somewhere within the non-moving party's record that might create a genuine issue of material fact, '[t]he district judge is not required to comb the record to find some reason to deny a motion for summary judgment." Cavicci v. Chertoff, Secretary of Dept. of Homeland Security, 2008 WL 239157, * 2 (S.D. Fla), quoting Forsberg v. Pac. N.W. Bell Tel. Co., 840 F.2d 1409, 1418 (9th Cir. 1988).

---

[1] Defendants' right to reply is authorized by the Court's Order entered on December 20, 2007. (Doc. 81).  For ease of reference, Defendants' motion for summary judgment is filed at Doc. 67 and its supporting brief is Doc. 69.  Plaintiffs' opposition brief, to which Defendants reply, is filed at Doc. 107.

1

Plaintiff's opposition brief, as well the declarations he has submitted, are replete with conclusory assertions, hearsay statements, and statements of subjective belief. Defendants have separately addressed the deficiencies of the declarations in a contemporaneously-filed Motion to Strike Portions of Plaintiff's Evidentiary Submission and, pursuant to Federal Rule of Civil Procedure 10(c), Defendants adopts and incorporate those arguments as if stated in full herein in this reply. Defendants respectfully urge the Court to focus on the evidence presented that is both admissible and undisputed. This evidence demonstrates that Defendants' properly-supported dispositive motion is due to be granted.

III.     **Defendant HMA Is Due To Be Immediately Dismissed.**

HMA renews its request for immediate dismissal from this action. Throughout this litigation, Plaintiff has attempted to bind HMA under an entirely unsupported "alter ego" and/or "mere instrumentality" theory of recovery. (Complaint, ¶ 4). It has at all times been undisputed that HMMA was Plaintiff's employer. (See Warner Decl., ¶ 6, filed in connection with Doc. 9). Nevertheless, Plaintiff has subjected Defendants to excessive, protracted and unnecessary discovery on an issue upon which he cannot prevail.[2] The undisputed material facts demonstrate that HMA never employed Plaintiff. Indeed, Plaintiff's opposition acknowledges that "HMMA hired Dees"[3] and that "HMMA fired Dees."[4] Further, nothing in Plaintiff's opposition suggests that HMA engaged in any alleged unlawful employment practice. Finally, no record evidence supports Plaintiff's contention that these Defendants are joint employers for purposes of assigning liability under either federal or state law.

---

[2] The Court's Order entered January 8, 2008 predicted as much: "As a practical matter the court is skeptical about the efficacy of the plaintiff spending time, effort and money to pursue a theory that ultimately will profit him little or nothing." (Doc. 88).

[3] Doc. 107 at p. 4 (emphasis added).

[4] Id. at p. 12 (emphasis added).

### A.     HMA Was Not Plaintiff's "Employer"

Defendants' supporting brief thoroughly explains that HMA had no involvement in HMMA's decisions regarding Plaintiff's (or any other HMMA employee's) hiring, terms of employment, and eventual termination.  (See Doc. 69, pp. 2-4, 18-20).  As such, HMA cannot be considered Plaintiff's "employer" under USERRA. Plaintiff's opposition ignores these undisputed material facts and offers no evidence whatsoever that any individual employed by HMA had any involvement with this matter.[5]

### B.     Defendants Cannot Be Considered "Joint Employers".

Instead of addressing Defendants' undisputed facts regarding the relationship between and respective roles of HMA and HMMA, Plaintiff instead simply asserts that, "HMMA and HMA are substantially interrelated, as are all the companies of Hyundai Motor Company ("HMC")".[6]  Plaintiff relies on the same "joint employer" test that Defendants submit control the outcome of this inquiry.[7]  However, Plaintiff fails to apply the undisputed facts to this necessary analysis in any meaningful manner.  See Lyes v. City of Riviera Beach, Florida, 166 F.3d 1332, 1341-42 (11th Cir. 1999) (setting forth "joint employer" analysis).

Absent from Plaintiff's opposition is any evidence which would indicate the "centralized labor relations" prong of the NLRB test, which is the most critical of the four factors.  See Fike v. Goldkist, Inc., 514 F. Supp. 722, 727 (N.D. Ala. 1981), aff'd, 664 F.2d 295 (11th Cir. 1981).

---

[5]  The Court authorized broad discovery related to the HMA/HMMA relationship (Order – Doc. 88) and also authorized a summary judgment extension for Plaintiff to conduct discovery on this issue. (Orders – Docs. 85 and 104).  That notwithstanding, Plaintiff has produced no evidence which would support his claim that HMA is a proper party to this action.

[6]  HMC is not a party to this action.

[7]  Compare Doc. 69, p. 19 and Doc. 107, p. 36, both citing the NLRB factors of: (1) interrelated operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.  See Lyes decision, cited infra.

3

The undisputed facts offered by Defendants (and uncontested by Plaintiff) provide that HMMA operates completely independently from HMA with regard to labor relations.  (See, e.g., Kathy Parker Declaration (HMA at ¶¶ 5-12), and Second Wendy Warner Declaration (HMMA at ¶¶ 3-7), submitted in support of Defendants' motion for summary judgment). Plaintiff's bare assertion that "centralized labor relations is shown by HMMA and HMA being part of a controlled group of corporations"[8] is insufficient as a matter of law to establish this requisite element.  See Frank v. U.S. West, Inc., 3 F.3d 1357, 1363 (10th Cir. 1993) (plaintiff must show day to day actual and active control of the subsidiary's employment decisions); see also Fike, 514 F. Supp. at 727. There is no evidence which would suggest HMA made any decision(s) regarding employment matters related to Plaintiff or any other HMMA employee.  See Trevino v. Celanese Corp., 701 F.2d 397, 404 (5th Cir. 1983).  This is because no such evidence exists in this case.

Plaintiff's reliance upon the assertion that HMMA is a "wholly-owned subsidiary of HMA"[9] and that two of HMMA's board of managers also have leadership roles in Hyundai Motor Company ("HMC") is not sufficient to establish the "common management" prong under the NLRB test.  See Frank, 3 F.3d at 1364; Fike, 514 F. Supp. at 727 ("some overlap of officials" between the parent and its subsidiary does not necessarily translate to common management).

Simply stated and notwithstanding Plaintiff's "exhaustive" discovery efforts on the subject, there is no evidence in this record which would indicate that HMA exercises a degree of control over HMMA that would make it a joint employer.  See Fike, 514 F. Supp. at 727.

---

[8]  Doc. 107, p. 37.

[9]  Doc. 107 at p. 14. Defendants object to this mischaracterization of their corporate relationship because HMMA is a single member LLC whose sole member is HMA.  (See Doc. 14 (Corporate Disclosure Statement)).

4

Therefore, Plaintiff's claims against HMA are due to be immediately dismissed as a matter of law.

## IV.    **Plaintiff Has Abandoned His "USERRA Harassment" Claim.**

Plaintiff's Complaint frames one of his causes of action, in part, as "an environment of harassment" under USERRA.  (Complaint, ¶¶ 19-21).  Defendants have devoted a substantial portion of their summary judgment brief to the multiple reasons why Plaintiff's "USERRA harassment" claim fails as a matter of law, i.e., (1) "hostile work environment" is not a cognizable claim under USERRA;[10] and (2) the alleged "harassment" presented by Plaintiff was neither severe nor pervasive as to constitute an actionable claim under any federal statute.[11]

Plaintiff's opposition only addresses Defendants' Rule 56 arguments regarding his USERRA termination claim, his outrage claim, and his conversion claim.  Plaintiff's failure to address the arguments against his proffered "USERRA harassment" claim amounts to an abandonment of that claim.  See, e.g., Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); Bute v. Schuller International, Inc., 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned); see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F. 3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); Resolution Trust Corp. v. Dumnar Corp., 42 F.3d 587, 599 (11th Cir. 1995); Hudson v. Norfolk Southern Ry. Co., 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001); cf. McMaster v. United States, 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no

---

[10]  See Doc. 69, pp. 31-33.
[11]  Id. at pp. 33-36.

argument concerning a claim included in the plaintiff's complaint); <u>Road Sprinkler Fitters Union No. 669 v. Independent Sprinkler Corp.</u>, 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment"). Therefore, any proffered "USERRA harassment" claim is due to be dismissed from this action.

**V.      Plaintiff's USERRA Termination Claim Fails As A Matter Of Law.**

Plaintiff's opposition employs a strategy of throwing "everything but the kitchen sink" before the Court in an attempt to create a disputed issue of material fact regarding his USERRA termination claim.  However, Plaintiff fails to acknowledge numerous evidentiary deficiencies and also fails to address the undisputed facts which, as a matter of law, negate his ability to pursue such a claim.

**A.      There Is No Direct Evidence Of Unlawful Animus.**

In the Eleventh Circuit, direct evidence is "evidence, which if believed, proves existence of fact in issues without inference of presumption."  <u>Merrit v. Dillard Paper Co.</u>, 120 F. 3d 1181, 1189 (11th Cir. 1977).  Plaintiff's opposition suggests that this is a "direct evidence" case.  (<u>See</u> Doc. 107, pp. 19-21).  Without reference to any controlling precedent and without evidentiary support, Plaintiff argues that HMMA's "disparaging comments" constitute direct evidence of military discrimination. (<u>Id.</u>).  Plaintiff actually refers only to one comment allegedly uttered by Greg Prater (and not one made by John Applegate), that "all Guard members did on their training weekends was drink beer and play golf," as direct evidence.  (Doc. 107 at p. 18, <u>citing</u> Wingo Declaration).

Plaintiff's failure to offer any precedent from this Circuit alone is striking but an analysis of the authority cited from other jurisdictions reveals that this is a transparent attempt to

6

circumvent the rigorous direct evidence standard applied by the Eleventh Circuit.  Damon v.
Fleming Supermarkets, Inc., 196 F. 3d 1354, 1359 (11th Cir. 1999) (direct evidence standard is
rigorous and must indicate that the "complained of employment decision was motivated by the
decision-maker's" bias.)  For example, Plaintiff's reliance upon Valazquez-Garcia v. Horizon
Lines of Puerto Rico, Inc., 473 F.2d 11, 17 (1st Cir. 2007) ignores the fact that the comments the
First Circuit found to constitute direct evidence of military discrimination were made by a
supervisor who was involved in one of the adverse employment actions. (Id. at 18). In
Valazquez-Garcia, the plaintiff argued being referred to as "GI Joe," "Girl Scout," and "little
lead soldier" constituted direct evidence.  (Id. at 14).   Even though the First Circuit found some
of these comments could be presented to the jury, it recognized that these comments were not
necessarily proof of anti-military discriminatory animus and noted that the comments were not
made by those who participated in the decision to fire plaintiff, which limited their
probativeness.  (Id. at 18-19 n. 8).   As explained more fully below, this holding is contrary to
Eleventh Circuit precedent on direct evidence and should be disregarded by this Court.

Another non-binding case that Plaintiff relies upon to establish direct evidence, Maher v.
City of Chicago, 406 F. Supp. 2d 1006, 1030 (N.D. Ill. 2006), is distinguishable.  In Maher, the
plaintiff complained of several instances of military discrimination including a failure to promote
claim.  The plaintiff cited several conversations with high-ranking officials where he was told
that he was not being promoted because of his military service and one where he was told "it
would not be fair to promote plaintiff because someone else had to do his job while he was 'off
gallivanting in Bosnia.'" (Id. at 1030). Again, the comments in Maher were uttered by the
decision-makers who denied the plaintiff a promotion.  Here, there are no alleged comments
which link Plaintiff's military service to his termination.  Indeed, Plaintiff points to only one

7

comment made by Prater, and it is undisputed that Prater was <u>not</u> a decisionmaker and played <u>no</u> <u>role</u> in Plaintiff's termination.  (<u>See</u> Clevenger Decl. at ¶ 9, identifying Termination Committee members).

In the Eleventh Circuit, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age" [or here on military status] will constitute direct evidence of discrimination.  <u>Damon</u>, 196 F. 3d at 1359 (quoting <u>Earley v. Champion Int'l Corp.</u>, 907 F.2d 1077, 1081-82 (11th Cir. 1990).[12]  Evidence that merely "suggests discrimination … or that is subject to more than one interpretation … does not constitute direct evidence." <u>Merrit</u>, 120 F. 3d at 1189 (internal citations omitted).  Stray remarks, statements by non-decisionmakers, and statements by decisionmakers unrelated to the decisional process itself, do not constitute direct evidence of discrimination.  <u>See</u> <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring); <u>EEOC v. Alton Packaging Corp.</u>, 901 F.2d 920, 924 (11th Cir. 1990) (quoting <u>Price Waterhouse</u>, 490 U.S. 228, 277 (1989)); <u>Mauter v. Hardy Corp.</u>, 825 F.3d 1554, 1558 (11th Cir. 1987) (statements by non-decisionmaker).

Prater's alleged statements, taken as true at the Rule 56 stage, do not rise to the level of direct evidence.  Prater's statements are subject to non-discriminatory interpretation and certainly do not prove that Plaintiff's military status motivated HMMA to terminate his employment.  <u>See</u>, <u>e.g.</u>, <u>Burrell v. Board of Trustees of Georgia Military College</u>, 125 F. 3d 1390, 1303-04 (11th Cir. 1997) (evidence which suggests, but does not prove, a discriminatory motive, is circumstantial evidence by definition). The fact that Prater also served in the military[13] creates a strong presumption against discriminatory intent.  <u>Elrod v. Sears Roebuck & Co.</u>, 939 F. 2d 1466, 1471

---

[12]  For example, in an age discrimination case, "direct evidence would be a management memorandum saying, 'Fire Earley .. he is too old.'"  <u>Earley</u>, 907 F. 3d at 1082.

[13]  <u>See</u> <u>infra</u> at footnote 22.

(11th Cir. 1991).[14]    Therefore, there is no question that Plaintiff has failed to establish his USERRA case by presenting direct evidence of military discrimination.

**B.**    **Plaintiff Cannot Rely On Inadmissible Evidence.**

Defendants have contemporaneously filed a separate Motion to Strike the inadmissible opposition declaration testimony submitted by Plaintiff and other individuals, and Defendants will not belabor those arguments in this reply.  As this Court well knows, Rule 56(c) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  These requirements are mandatory.  Hearsay, mere opinion, and bald conclusions, without specific supporting facts, cannot create a genuine issue of material fact.  Evers v. General Motors Corp., 770 F. 2d 984, 986 (11th Cir. 1985).  Further, inadmissible hearsay cannot defeat a motion for summary judgment.  Givhan v. Electronic Engineers, Inc., 4 F. Supp. 2d 1331, 1334 (M.D. Ala. 1998); Soles v. Board of Comm'rs of Johnson County, 746 F. Supp. 106, 110 (S.D. Ga. 1990)(citations omitted).  It is well-settled that one's subjective belief is not proper evidence to preclude summary judgment.  See Mayfield v. Patterson Pump Co., 101 F. 3d 1371, 1377 (11th Cir. 1996); Harris v. DelChamps, Inc., 5 F. Supp. 2d 1316, 1332-33 (M.D. Ala. 1998).

Plaintiff further attempts to create genuine issues of material fact through numerous assertions as to HMMA's activities, few of which are based on his or his affiants' personal knowledge as required by Rule 56(e).  See Wadsworth v. Nalco Chemical Co., 523 F. Supp. 997

---

[14] holding "[Plaintiff] faces a difficult burden here, because all the primary players behind his termination … were well over the age of forty and within the class of persons protected by the ADEA."

9

(N.D. Ala. 1981), <u>aff'd.</u> 679 F.2d 251 (11th Cir. 1982) (speculative allegations regarding another's motive and activities will not create a genuine issue of material fact).

### i. **Unsupported, Conclusory Allegations.**

Plaintiff's opposition is not properly supported - - over half of his "Facts" do not contain any evidentiary citations.   For example, Plaintiff touts his employment as HMMA was "exemplary,"[15] but offers no testimony or document to support this assertion.   Plaintiff's assertion that HMMA "whitewashed" and "deliberately cleansed" the materials presented to the Termination Committee to allegedly remove any mention of  Plaintiff's military service is yet another example of his reliance upon conclusory allegations in an effort to support his flimsy claims.[16]   Perhaps the most incredulous reach by Plaintiff is his reliance upon a letter dated October 23, 2006 from his Guard Unit to HMMA as the impetus for HMMA to begin its alleged campaign of unlawful harassment.[17]   This allegation is also completely unsupported by any evidence.   Indeed, Plaintiff cannot even establish that any HMMA decisionmaker actually received (or reviewed) this letter from Sgt. Barnes.  (<u>See</u> Applegate Depo., 20:20-23 – 21:1-7).

This litany (and non-exclusive listing) of unsupported assertions standing alone will not defeat Defendants' properly supported motion for summary judgment.  <u>Carter v. City of Miami</u>, 870 F. 2d 578, 585 (11th Cir. 1989).  <u>See</u> <u>Betkerur v. Aultman Hosp. Ass'n.</u>, 78 F. 3d 1079, 1096 (6th Cir. 1996) ("Rumors, conclusory allegations, and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law.").  It is well settled that, "[C]onclusory allegations of discrimination, without more, are not sufficient to raise an

---

[15] Doc. 107, at p. 4.
[16] <u>See</u> <u>Id.</u> at p. 12.
[17] <u>Id.</u> at p. 5.

10

inference of pretext or intentional discrimination." <u>Young v. General Foods Corp.</u>, 840 F. 2d 825, 830 (11th Cir. 1988), <u>cert. denied</u>, 488 U.S. 1004 (1989) (citations and quotations omitted).

## VI.     <u>The Undisputed Facts Demonstrate No Discriminatory USERRA Animus Exists.</u>

The primary issue before this Court is whether a reasonable jury could find that Plaintiff's military service was "a substantial or motivating factor" in Defendant HMMA's decision to terminate his employment.  <u>Coffman v. Chugach Support Services, Inc.</u>, 411 F. 3d 1231, 1238 (11th Cir. 2005).  A review of the undisputed evidence demonstrates that Plaintiff cannot meet his burden of proving discriminatory animus related to the challenged termination decision.  Even if Plaintiff's proffered evidence of alleged "harassment" is considered as circumstantial evidence, its probative value is negible in light of the undisputed material facts which support HMMA's decision to terminate his employment.

### A.     <u>Prater Has No Connection To The Alleged Misconduct Investigation or Termination Decision.</u>

Plaintiff was discharged after the Termination Committee determined he had engaged in serious misconduct by intentionally sleeping on the job. (<u>See</u> Doc. 69 at pp. 12-14).[18]  Though Dees vigorously disputes the fact that he was intentionally sleeping,[19] it is undisputed that Prater had <u>no role whatsoever</u> in the reporting, investigation, and decision to terminate Plaintiff's employment.  Indeed, Plaintiff's opposition does not challenge Applegate's deposition testimony

---

[18]  Members of the Termination Committee included: Ms. Warner (Employment), John Kalson (Production), Scott Gordy (Employment), Applegate and Rob Clevenger (Team Relations), and Rick Neal (General Counsel).  Mr. Neal served in an advisory role, not as a decisionmaker.

[19]  Plaintiff's own self-serving testimony that he was not sleeping at work is not sufficient to defeat summary judgment. Indeed, the pretext inquiry is concerned with the employer's perceptions of the employee's performance, not the employee's own beliefs.  <u>See</u> <u>Holifield v. Reno</u>, 115 F. 3d 1555, 1565 (11th Cir. 1997) (holding that when employer produces negative performance reviews, employee's assertion of his own good performance is insufficient to defeat summary judgment).

that Prater had no authority to terminate Plaintiff's employment,[20] and any alleged "recommendation" made by Prater was not relied on by the Termination Committee.[21]

On the night in question, Plaintiff was observed asleep in a concealed area[22] by Jim Brookshire, a supervisor to whom Plaintiff did not report.  Plaintiff acknowledges that he had no problems with Brookshire during his employment. (Dees Depo. at 228:6-13).   Indeed, it was HMMA's Team Relations Department, not Prater, that was responsible for the investigation into the alleged incident. (Clevenger Decl., ¶¶ 3-5).  Plaintiff's theory that HMMA developed a "scheme" "to terminate [his] employment without running afoul of USERRA"[23] is nothing more than pure fiction.

### B.   Prater Is A Fellow Military Member.

Plaintiff's entire opposition is premised on his argument that Prater engaged in alleged non-stop persecution based on his (Plaintiff's) military obligations. (See Doc. 107, pp. 5-8). Though this might be credible circumstantial evidence in another context, it falls far short when the Court considers the undisputed fact that Prater was also a member of the uniformed services. See Elrod, 931 F. 2d at 1471, cited supra.[24]  It simply defies logic to infer that Prater would discriminate against Plaintiff based on their common protected classification.  See Elrod, 939 F.2d at 1471 (reinforcing the inference against discriminatory intent when the alleged "bad

---

[20]  See Applegate Depo., 68:7-9.

[21]  See Applegate Depo., 68:1-6.

[22]  Brookshire described the area as "hidden" and "not trafficked" (Brookshire Depo., 44:7-13). Brookshire further explained that there were no [maintenance] problems in the area at the time he observed Plaintiff asleep. (Id., p. 44, passim).

[23]  Doc. 107 at p. 8.

[24]  As undisputed evidence of Prater's military service, Defendants offered Plaintiff's own deposition testimony, as well as confirmation of the same fact by Wendy Warner, Defendant HMMA's Employment Department Manager.  See Doc. 69 at p. 4.

actors" are in the same protected classification because they "are more likely to be the victims of [unlawful] discrimination than its perpetrators.").

### C. The Investigation Was Complete and Impartial.

It is undisputed that, in connection with the Team Relations' investigation, both Plaintiff and Brookshire were interviewed and their respective version of events were reduced to written form. (Clevenger Decl. at ¶¶ 5-7 and Attachments A-C). Plaintiff's opposition now suggests that Shane Archer, a co-employee, was a witness with "material information" who "should have been interviewed" in connection with the investigation. (See Dees' opposition Declaration and Archer opposition Declaration). However, conspicuously absent from either Plaintiff or Archer's Declaration is any allegation that Archer offered to provide any information during the course of the Team Relations department's investigation or that any member of the Termination Committee was aware that Archer had alleged "exculpatory" information relevant to the investigation.

### D. The Termination Decision Was Objective And Consistent.

Plaintiff's opposition characterizes the termination decision as a "complete sham." (Doc. 107 at p. 12). However, Plaintiff again has no evidence which would support such an incredibly bold allegation. Importantly, Plaintiff concedes that he can offer no evidence which might suggest that Plaintiff's military service was considered in connection with the termination decision. (Id.). Indeed, the undisputed evidence clearly provides that Ms. Warner, the Employment Department Manager in charge of the Termination Committee, did not know Plaintiff was a military member. (Warner Depo., pp. 210, passim and 214:9-12).

Plaintiff's opposition further fails to identify any inconsistent application of past practice as related to this case. Those individuals who were present at the Termination Committee (and

who were deposed) have consistently testified that they believed Plaintiff's actions amounted to intentionally sleeping on the job and that such behavior was properly characterized as Serious Misconduct, an offense which carries immediate termination as a possible penalty.  See Warner Depo., 190:16-23, 191:1-2 (purposefully sleeping on the job is a firing offense); Applegate Depo., 106:10-15, 107:8-10 (same); Clevenger Depo., 47, passim, 48:1-12 (same).

### E.    No Evidence Casts Doubt On HMMA'S Good Faith Belief.

Plaintiff's opposition brazenly states, "Every 'fact' upon which HMMA relied in terminating Dees was bogus." (Doc. 107 at p. 11).  In Elrod the Eleventh Circuit rejected the same opposition argument, which was made in a very similar context:

> Much of Elrod's proof at trial centered around whether Elrod was in fact guilty of the sexual harassment allegations leveled at him by his former co-workers. **We can assume for purposes of this opinion that the complaining co-workers interviewed by Rives were lying through their teeth.**  The inquiry of the ADEA is limited to whether Rives, Malone and Merrill believed that Elrod was guilty of harassment and, if so, whether this belief was the reason behind Elrod's discharge.

939 F. 2d at 1470 (emphasis added).

Plaintiff's failure to offer any evidence that HMMA did not have a good faith belief that he was intentionally sleeping when it made the decision to terminate his employment is fatal to his attempt to establish pretext.  See Jones v. Gerwens, 874 F. 2d 1534, 1540 (11th Cir. 1989) ("The law is clear that, even if a . . . claimant did not in fact commit the violation with which he is charged, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation.").  It is well-settled in the Eleventh Circuit that "[a]n employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." Damon v. Fleming Supermarkets of Fla., Inc., 196 F. 3d 1354, 1361 (11th Cir. 1999); EEOC v.

14

Total Systems Services, Inc., 221 F. 3d 1171, 1175 (11th Cir. 2000) ("an employer is entitled to rely on its good faith belief about falsity, concealment, and so forth in an internal investigation and can properly discharge an employee who it believes has lied in an internal investigation") (internal citations omitted); see also Laosebikan v. Coca-Cola Co., 167 Fed. Appx. 758, 764 (11th Cir. 2006); Boggan v. McLendon, 2005 WL 1618550, * 6 (M.D. Ala. July 5, 2005); Keel v. U.S. Dept. of Air Force, 256 F. Supp. 2d 1269, 1287 (M.D. Ala. 2003).

Plaintiff's opposition disputes both the investigation process and the result. However, absent some evidence of unlawful animus connected to the termination decision - - which is clearly not present in this case - - Plaintiff's USERRA termination claim cannot survive summary judgment.

### F.    **Plaintiff's Proffered Circumstantial Evidence Cannot Create A Genuine Issue In Light of the Undisputed Material Facts.**

#### i.  **No Adverse Employment Action.**

Plaintiff spends the lion's share of his opposition attacking Prater (his immediate supervisor) in an attempt to create an inference of unlawful military animus.  However, even taking Plaintiff's allegations as true, he fails to acknowledge his own sworn deposition testimony that: (1) Prater never disciplined him for participating in Guard duty or failing to provide written Guard duty orders (Dees Depo. at 147:22-23, 148:1-23); and (2) Plaintiff has no recollection of ever missing Guard service based on an HMMA obligation.  (Id. at 149:6-15).

Because there is clearly no adverse employment action which can be connected to his requests for military leave, Plaintiff's alternate proffered circumstantial evidence is that he was assigned to clean "the pit" more than other maintenance employees. (See Doc. 107 at p. 7). Plaintiff's accusation regarding HMMA's alleged "destruction of records" is disingenuous at

best.[25]  Plaintiff claims the "Daily Reports" would demonstrate the alleged disparate treatment to which he was subjected.  As the author of his own "Daily Report," it is reasonable to assume that Plaintiff has at all times been aware of the existence of these alleged documents.  However, as fully explained in Defendants' contemporaneously-filed Motion to Strike, Plaintiff never identified the existence of such documents either in his Initial Disclosures or in response to a specific interrogatory requesting identification of any document "which you believe relate or pertain in any way to this case . . ."  (Int. No. 6, <u>see</u> Motion to Strike, Sec. II(E)).

Written discovery is a two-way street.  Plaintiff should not be allowed to accuse Defendants of sinister misconduct when he was at all times aware of their alleged existence and never disclosed this information during discovery.

### ii.  <u>No Proximity In Time / No Actual Knowledge.</u>

Plaintiff's opposition relies heavily on his alleged February 6, 2007 e-mail to Greg Kimble, HMMA's Human Resources Director, and the subsequent timing of his termination to support his unlawful animus theory.  (<u>See</u> Doc. 107 at pp. 12, 22-12).  However, Plaintiff fails to acknowledge the undisputed fact that Kimble has been on medical leave since January 12, 2007, and that Kimble neither attended the Termination Committee meeting nor offered any input regarding the decision to terminate Plaintiff's employment.  (Warner Second Decl., ¶ 33).  Plaintiff presents no evidence that Kimble, or any involved decisionmaker, either received or considered his February 6 e-mail message.  In part, HMMA was not even aware of this e-mail message until Plaintiff mentioned it in his deposition.  (Dees Depo., pp. 166-167, passim).

Absent such a connection, this alleged evidence cannot constitute a "causal connection" or create an inference of unlawful animus.  <u>See</u>, <u>e.g.</u>, <u>Silvera v. Orange County School Bd.</u>, 244

---

[25]  <u>See</u> Doc. 107 at pp. 21-22.

F. 3d 1253, 1262 (11th Cir. 2001) ("Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent.")

### iii.  Plaintiff's Alleged  Evidence Falls Far Short.

Plaintiff's conspiracy theories are abundant throughout his opposition.  However, as this Court well knows, "Employment law is not a game of 'Gotcha!' and an employer's differing statements are not necessarily and automatically inconsistent." Stallworth v. E-Z Serve Convenience Stores, 2001 WL 125304, * 4 (M.D. Ala.); Tidwell v. Carter Prods., 135 F.3d 1422, 1428 (11th Cir. 1998) (holding that employer's reasons that build upon each other but are not plainly contradictory are legitimate).

Further, it is well-settled in this Circuit that an employer is entitled to judgment as a matter of law in cases where "the plaintiff created only a weak issue of facts as to whether the employer's reason was untrue and there was abundant and uncontroverted evidence that no discrimination had occurred . . ." Chapman v. AI Transport, 229 F.3d 1012, 1025 (11th Cir. 2000), quoting Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2109 (2000).

Simply stated and try as he might, Plaintiff cannot present credible evidence upon which a reasonable jury could conclude either that his military service was a motivating factor in the Termination Committee's termination decision or that the Termination Committee would have reached a different result had Plaintiff not been a member of the military.  Therefore, Defendants' motion for summary judgment on Plaintiff's USERRA termination claim is due to be granted.

VII.    **Defendants Are Entitled to Judgment As A
        Matter Of Law On Plaintiff's State Law Claims.**

     A.     **Plaintiff's Outrage Claim Is Entirely Unsupported.**

     The only case that Plaintiff relies upon in his opposition to support his outrage claim is

Lees v. Sea Breeze Health Care Center, Inc., 391 F. Supp. 2d 1103 (S.D. Ala. 2005).  Lees

recognized that an outrage claim could proceed past a Rule 12(b)(6) motion to dismiss due to an

alleged USERRA violation, but it did not hold that the plaintiff established her prima facie case

of outrage. (Id.). Plaintiff relies upon this case for authority that a termination in violation of

USERRA contravenes public policy and amounts to extreme or outrageous behavior.   However,

Plaintiff's opposition misconstrues the holding and the facts of the case in an effort to parlay his

allegations in this lawsuit.

     The Lees court did not find that the defendant's conduct constituted outrage under

Alabama law.  Plaintiff's opposition makes repeated references to allegations contained in the

Lees complaint and amended complaint and stated these allegations as if they were supported by

evidence.  For instance, Plaintiff states that Lees was subjected to harassment at work after

returning from basic training and that she was eventually terminated because of her membership

in the military.  There was no evidence to support these allegations in the record and the Lees

court made no findings of fact.  To the contrary, the Lees court stated that at "this nascent stage

of the proceedings, the Court cannot rule out the possibility that Lees may be able to prove such

a set of facts."  Lees, 391 F. Supp. 2d at 1108.

     Even if Plaintiff's termination amounted to a violation of public policy, which

Defendants adamantly deny, Plaintiff's outrage claim is still untenable.  As discussed previously,

Plaintiff offers no evidence to buttress his self-serving statement that Defendants *intentionally*

fabricated a story that he was sleeping in an effort to terminate his employment all because of his military obligations. Also, obviously missing from his opposition is any evidence that Plaintiff's alleged emotional distress was *extreme*. Instead, Plaintiff relies on his wife's testimony that he is not a happy man anymore and that he is embarrassed by the fact he was terminated from a job. Such evidence is clearly insufficient to establish the high burden necessary to support an outrage claim. See Thomas v. BSE Indus. Contractors, Inc., 624 So. 2d 1041, 1044 (Ala. 1993) (outrage is a "very limited cause of action that is available only in the most egregious circumstances"). In an effort to circumvent the extreme requirement, Plaintiff argues that because he was a military man he suffered more distress than the average person when HMMA terminated his employment. Plaintiff offers no legal or evidentiary authority for this statement.

Arguably, Plaintiff's experiences after being terminated from a job admittedly could have been emotionally unsettling. However, the mere fact that Dees' served in this military does not abrogate his requirement to establish that he suffered *extreme* emotional distress. See Hurst v. Cook, ___ So. 2d ___, 2007 WL 2812150 * 10 (Ala. Civ. App. September 28, 2007) ("The tort of outrage was not developed to provide a person with a remedy for the trivial emotional distresses that are common to each person in his everyday life") (citing U.S.A. Oil, Inc. v. Smith, 415 So. 3d 1098, 1101 (Ala. Civ. App. 1982); see also American Road Service Co. v. Inmon, 394 So. 2d 361, 364-65 (Ala. 1980) ("It should also be noted that this tort [outrage] does not recognize recovery for 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.").

Plaintiff's allegations of outrage, like his allegations of his USERRA claim, are unsupported and as such Plaintiff fails to establish a cognizable claim under Alabama law.

Accordingly, Plaintiff's outrage claim fails as a matter of law and Defendants are entitled to summary judgment.

**B.** **Plaintiff's Conversion Claim Fails As A Matter Of Law.**

In his opposition, Plaintiff confines his conversion claim to two items: Army pay stubs and his personal notes on HMMA's alleged pattern of harassment. After admitting that these two items have "no distinguishable face value or readily ascertainable market value" (Doc. 107 at p. 35), Plaintiff argues that a jury should decide if the information was used in connection with stealing Plaintiff's identity. Absent from the record is any evidence that Plaintiff has been a victim of identity theft. Additionally, Plaintiff claims the notes would have added value to his lawsuit because it would have allowed him to be more precise about the alleged USERRA violation. Again, this argument lacks any evidentiary support.

Moreover, Plaintiff's opposition infers that it was Prater who took his alleged notes. (Doc. 107 at p. 33). Such an allegation, even if taken as true, fails to survive summary judgment applying Alabama law. Under the doctrine of <u>respondeat superior</u>, it is well-settled that an employer is not liable for the intentional acts of its employee unless the acts were committed within the scope of the employee's employment or were done to further the interests of the employer. <u>Joyner v. AAA Cooper Transp.</u>, 477 So. 2d 364, 365 (Ala. 1985). Plaintiff offers no evidence, other than his conclusory allegations, that HMMA authorized and/or ratified such alleged misconduct. Absent such evidence, HMMA cannot be liable for such an alleged tort of conversion. <u>See</u> <u>East Alabama Behavioral Medicine v. Chancey</u>, 883 So. 2d 162 (Ala. 2003) ("Acquiescence or ratification requires full knowledge or means of knowledge of all material facts.").

20

In order for these issues to reach a jury, Plaintiff must first establish a prima facie case of conversion under Alabama law.  Plaintiff has failed to do so.  Plaintiff completely fails to address HMMA's locker policy, which provides that Plaintiff had no expectation of privacy in his locker (where he left the two items in controversy).  Thus, Plaintiff fails to establish he had an immediate right of possession of the materials in the locker belonging to HMMA.  See Rice v. Birmingham Coal & Coke Co., 608 So.2d 713 (Ala. 1992) ("general or specific title and actual possession or the entitlement to immediate possession of the property" required to establish conversion); see also Thompson v. Ford Motor Credit Co., 550 F.2d 256 (5th Cir. 1977) (To sustain an allegation of conversion, a plaintiff must be able to show a legal title and immediate right of possession.).

Additionally, Plaintiff presents no evidence that HMMA destroyed (or authorized/instructed its employees to do so) the two items from his HMMA locker.  Assuming arguendo that HMMA did possess the two items (which it denies), its mere possession alone is not sufficient to establish a prima facie case.  See L.L. Cardy v. Capital City Asphalt Co., 477 So.2d 350, 354 (Ala. 1985) ("The bare possession of property without some wrongful act in the acquisition of possession, or its detention, and without illegal assumption of ownership or illegal user or misuser, is not conversion.")

Accordingly, Dees' conversion claim fails as a matter of law and Defendants are entitled to summary judgment.

**VIII.    Conclusion.**

For the reasons fully addressed herein, as well as the undisputed evidence presented by Defendants in connection with their Rule 56 submission, Defendants are entitled to judgment as a matter of law on all claims asserted by Plaintiff.


Respectfully submitted this the 8th day of February, 2008.

/s/  J. Trent Scofield
J. Trent Scofield (SCO-024)
T. Scott Kelly (KEL-053)
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, AL 35203-2118
Tel.: (205) 328-1900
Fax: (205) 328-6000
E-mail: trent.scofield@odnss.com
E-mail: scott.kelly@odnss.com

Matthew K. Johnson
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
P.O. Box 2757
Greenville, SC  29602
Tel.: (864) 271-1300
Fax: (864) 235-8806
E-mail: matthew.johnson@odnss.com
**Pro Hac Granted 5/15/07**

Attorneys for Defendants Hyundai Motor
Manufacturing Alabama, LLC and
Hyundai Motor America, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of February, 2008, I electronically filed the foregoing *Reply Brief in Support of Motion for Summary Judgment* on behalf of Defendants Hyundai Motor Manufacturing Alabama, LLC and Hyundai Motor America, Inc. with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: W. Perry Hall, Vincent F. Kilborn, III, David Allen McDonald, Jeffrey R. Sport, T. Scott Kelly, and Matthew K. Johnson.

/s/ J. Trent Scofield
J. Trent Scofield (SCO-024)
T. Scott Kelly (KEL-053)
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, AL 35203-2118
Tel.: (205) 328-1900
E-mail: trent.scofield@odnss.com
E-mail: scott.kelly@odnss.com

23