**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **JERRY LEON DEES, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | **2:07-cv-00306-MHT-CSC** |
| **HYUNDAI MOTOR MANUFACTURING** | ) | |
| **ALABAMA, LLC, and HYUNDAI MOTOR** | ) | |
| **AMERICA, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' MOTION TO STRIKE PORTIONS OF**
**PLAINTIFF'S EVIDENTIARY SUBMISSION IN OPPOSITION**
**TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Hyundai Motor Manufacturing Alabama, LLC ("HMMA") and Hyundai

Motor America, Inc. ("HMA") (referred to collectively as "Defendants") respectfully move this

Court, pursuant to Rules 12(f) and 56(e) of the Federal Rules of Civil Procedure, to strike the

declarations and/or the unsupported and inadmissible testimony contained in the declarations

submitted by Plaintiff Jerry Leon Dees, Jr. ("Plaintiff") in support of his brief in opposition to

Defendants' pending motion for summary judgment (Doc. 107).  (See, Plaintiff's Evidentiary

Submission, Doc. 108, Exs. 9-14).  In support of this motion to strike, Defendants state:

**I.    INTRODUCTION AND RELIEF SOUGHT**

Plaintiff submits six (6) declarations in support of his opposition brief.  These

declarations are signed by Jerry Leon Dees, Shane Archer, Mark Bornberg, John Wingo, Lt. Col.

(Ted.) Todd Harrison, and Wendell Richburg.  Careful examination of the information contained

in these declarations demonstrates that they are not sufficient to create any genuine issues of

material fact regarding any of Plaintiff's claims.  Indeed, the vast majority of the declaration testimony submitted is self-serving and simply a recitation of conclusory allegations and sweeping statements of subjective belief and opinions, contain impermissible hearsay testimony, and lack evidence of true personal knowledge or competence.  Defendants demonstrate below that this Court should strike the deficient testimony contained in each of these declarations because these they fail to comply with the requirements of Rule 56(e).

## II.     LEGAL ARGUMENT

### A.     Personal Knowledge, Competence Required

Federal Rule of Civil Procedure 56(e) requires that "[s]upporting and opposing affidavits shall be made on <u>personal knowledge</u>, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is <u>competent to testify</u> to the matters stated therein." (Emphasis added).  These requirements are mandatory.  <u>C.M.S. Industr. Inc. v. L.P.S. Int.'l, Ltd.</u>, 643 F.2d 289 (5th Cir. 1981); <u>Hollingsworth, Solderless Terminal Co. v. Turley</u>, 622 F.2d 1324 (9th Cir. 1980); <u>McClendon v. Georgia Kaolin Co.</u>, 782 F.Supp. 1548 (N.D. Ga. 1992).  Moreover, "it is well-settled that a purported affidavit that does not meet the standards of Rule 56(e) is subject to a motion to strike and should not be considered by the Court in opposition to a motion for summary judgment." <u>Gore v. GTE South Inc.</u>, 917 F.Supp. 1564, 1570 (M.D. Ala. 1996); <u>Williams v. Hager Hinge Co.</u>, 916 F.Supp. 1163, 1168 (M.D. Ala. 1995).

Here, Plaintiff attempts to create genuine issues of material fact through assertions that are <u>not</u> based on personal knowledge as required by Rule 56(e).  <u>See</u>, <u>Wadsworth v. Nalco Chemical Co.</u>, 523 F.Supp. 997 (N.D. Ala. 1981), <u>aff'd</u> 679 F.2d 251 (11th Cir. 1982) (speculative allegations regarding another's motive and activities will not create a genuine issue

of material fact). To the extent these declarations offer statements that are clearly not based on personal knowledge, or inadmissible hearsay statements, they should be stricken. See Harris v. DelChamps, Inc., 5 F.Supp.2d 1316, 1333 (M.D. Ala. 1998).

### B.    Conclusory Allegations Are Insufficient.

Unsupported conclusory assertions, standing alone, will not defeat a defendant's properly supported motion for summary judgment. Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir. 1989). See Betkerur v. Aultman Hosp. Ass'n., 78 F.3d 1079, 1096 (6th Cir. 1996) ("Rumors, conclusory allegations, and subjective beliefs ... are wholly insufficient evidence to establish a claim of discrimination as a matter of law.").[1] It is well settled that, "'Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pre-text or intentional discrimination.'" Young v. General Foods Corp., 840 F.2d 825, 830 (11th Cir. 1988), quoting Grigsby v. Reynolds Metals Co., 821 F.2d 590, 597 (11th Cir. 1987). The conclusory allegations contained in Plaintiff's declarations must be stricken from the record and not considered at this summary judgment stage.

### C.    Hearsay and Subjective Belief Statements Are Insufficient.

Plaintiff's opposition declarations contain numerous hearsay assertions and statements of subjective belief. Hearsay, mere opinion, and bald conclusions, without specific supporting facts, cannot create a genuine issue of material fact. Evers v. General Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985); Williams, 916 F.Supp. at 1168. Affidavits that constitute hearsay are inadmissible to defeat a motion for summary judgment.[2] Givhan v. Electronic Engineers, Inc., 4

---

[1] An affidavit also may not engage in conclusory argument, legal or otherwise. Ali v. City of Clearwater, 915 F.Supp. 1231 (M.D. Fla. 1996), aff'd. 138 F.2d 956 (11th Cir. 1998); Galindo v. Precision American Corp., 754 F.2d 1212 (5th Cir. 1985); Sunshine Kitchens, Inc. v. Alanthus Corp., 403 F.Supp. 719 (S.D. Fla. 1975).

[2] "Hearsay" is "evidence of a statement that was made other than by a witness while testifying at

3

F.Supp.2d 1331, 1334 (M.D. Ala. 1998); <u>Williams</u>, 916 F.Supp. at 1168; <u>Soles v. Board of Comm'rs of Johnson County</u>, 746 F.Supp. 106, 110 (S.D. Ga. 1990) (citations omitted).  It is also well settled that one's subjective belief is not proper evidence to preclude summary judgment.  <u>See</u> <u>Mayfield v. Patterson Pump Co.</u>, 101 F.3d 1371, 1377 (11th Cir. 1996); <u>Harris v. DelChamps, Inc.</u>, 5 F.Supp.2d 1316, 1332-33 (M.D. Ala. 1998).  Otherwise stated, an affidavit based on "information and belief" is insufficient as a matter of law.  <u>Givhan</u>, 4 F.Supp. 2d at 1334; <u>Reeves v. Thigpen</u>, 879 F.Supp. 1153, 1164 (M.D. Ala. 1995), <u>appeal dismissed by</u>, 103 F.3d 147 (11th Cir. 1996).

The Court may consider only admissible evidence.[3]  In determining admissibility under Rule 56, the same standards apply as at trial.  To be "admissible," any document must be both relevant and competent.  A document containing hearsay evidence is not competent and not only fails to meet the "admissible evidence" mandate of Rule 56(e), but also fails to comply with Rule 802 of the Federal Rules of Evidence, or the hearsay exceptions contained in Rules 803 and 804.

Further, to the extent these opposition affidavits rely on the statements of co-workers, these statements do not constitute admissions under Federal Rules of Evidence 801(d)(2), but rather are merely hearsay, and would be excluded under Rule 56(e). <u>See</u>, <u>Id.</u>

### D.     Form Affidavits Are Insufficient.

The Declarations of Lt. Col. (Ret.) Todd Harrison and Wendell Richburg contain the following essentially identical conclusory statements of subjective belief:

---

the hearing and that is offered to prove the truth of the matter stated."  <u>U.S. v. That Certain Real Property located at 632-636 9th Avenue, Calera, Alabama</u>, 798 F.Supp. 1540, 1554-55 (N.D. Ala. 1992); Black's Law Dictionary, 368 (5th Ed. 1983).  "Hearsay" is something of which the witness has no personal knowledge.  Statements like "she told me" or "he said" automatically constitute hearsay, because they refer to the assertions of someone not subject to cross-examination.  <u>Id.</u> at 1555.
   [3] <u>Pritchard v. Southern Co. Services</u>, 92 F.3d 1130, 1135 (11th Cir. 1996), <u>modified</u> <u>on other grounds</u>, 102 F.3d 1118 (11th Cir. 1996); <u>Givhan</u>, 4 F. Supp. 2d at 1334; <u>Soles</u>, 746 F.Supp. at 110.

4

> I cannot <u>believe</u> any [claim/allegation[4]] that Sgt. Dees fell asleep while on duty, even in a civilian job. This would be completely <u>contrary to his character</u>.[5]

(Emphasis added). Likewise, Plaintiff submits multiple declarations in an attempt to support his allegation that he was harassed because of his uniformed service.[6] Plaintiff also submits multiple declarations in an attempt to support his allegation that his harassment is evidence by the frequency with which he was forced to clean "the pit."[7] The fact that these conclusory statements appear in multiple affidavits garners them no credibility. "Form affidavits" that contain identical boilerplate conclusory allegations are disfavored and will not create a triable issue of fact. <u>See</u> <u>Beard v. General Contractors, Inc.</u>, 944 F.2d 908 (Table), 1991 WL 184832 (9th Cir. (Wash.); <u>Brewster v. City of Dallas</u>, 703 F.Supp. 1260, 1264 (N.D. Tex. 1988), <u>citing</u> <u>Matter of Lewisville Properties, Inc.</u>, 849 F.2d 946, 950 (5th Cir. 1988) (Conclusory nature of form affidavits insufficient to defeat a motion for summary judgment).

    **E.**    **Statements Related to Daily Reports Should Be Stricken Because of Plaintiff's Failure to Disclose or Identify Such Documents.**

Plaintiff's declaration contains statements pertaining to Daily Reports.[8] Such statements should be stricken pursuant to Federal Rules of Civil Procedure 12(f) and 37(c)(1) due to Plaintiff's failure to disclose or identify such documents as potentially relevant evidence in this matter.

Plaintiff's Initial Disclosures were served June 7, 2007. <u>See</u>, Plaintiff's Initial Disclosure, **Exhibit A**. Neither Plaintiff's Initial Disclosures, nor any of his supplemental

---

[4] Declaration of Lt. Col. (Ret.) Todd Harrison, ¶ 5; Declaration of Wendell Richburg, ¶ 6.
[5] <u>Id.</u>
[6] Declaration of Shane Archer, ¶ 14; Declaration of John Wingo, ¶ 4; Declaration of Mark Bornberg, ¶¶ 3-4.
[7] Declaration of Shane Archer, ¶ 14; Declaration of John Wingo, ¶ 8; Declaration of Mark Bornberg, ¶ 8.
[8] Declaration of Leon Dees, ¶ 7.

disclosures, identify Daily Reports as being potentially relevant to the matter, despite the fact that Plaintiff now argues they contain relevant information.  See, Plaintiff's Supplemental Initial Disclosures, **Exhibit B**, and Plaintiff's Second Supplemental Disclosures, **Exhibit C**.  HMMA's Interrogatory No. 6 requested "a list of documents ... which you believe relate or pertain in any way to this case ...."  In response, Plaintiff simply referred to his Initial Disclosures.  See, Dees Answers to HMMA's First Interrogatories to Plaintiff, **Exhibit D**.  Plaintiff's responses to HMMA's requests for production similarly fail to identify Daily Reports.  See, Dees' Responses to HMMA's First Request for Production to Plaintiff, **Exhibit E**.  Likewise, Daily Reports have not been the subject of any of the motions to compel filed by Plaintiff with respect to Defendants' discovery responses.

Federal Rule of Civil Procedure 26(e)(1) places a duty upon parties to supplement their Rule 26 disclosures at appropriate intervals "if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Further, Federal Rule of Civil Procedure 26(e)(2) places the same obligation to supplement upon a party's response to discovery requests, including an answer to an interrogatory.

A party who fails to fulfill his disclosure duties under Rule 26(a) or the supplementation duties under Rule 26(e)(1) invokes the automatic and mandatory exclusion sanctions of Federal Rule of Civil Procedure 37(c)(1).  Amended in 1993 along with Rule 26, Federal Rule 37(c)(1) commands that, a "party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a

hearing, or on a motion any witness or information not so disclosed." The 1993 Advisory

Committee Note to amended Rule 37(c)(1) instructs that:

> The revision provides a self-executing sanction for failure to make a disclosure required by Rule 26(a), without need for a motion under subdivision 37(a)(2)(A). Paragraph (1) prevents a party from using as evidence any witnesses or information that, without substantial justification, has not been disclosed as required by Rules 26(a) and 26(e)(1). This automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at trial, at a hearing, or on a motion, such as one under Rule 56.

The sanction of exclusion is thus automatic and mandatory unless the opposing party can

show that its violation of Rule 26(a) or 26(e)(1) was substantially justified or harmless. <u>Finley v.

Marathon Oil Co.</u>, 75 F.3d 1225, 1230, 1231 (7th Cir. 1996) (affirming exclusion of chart that

had not been disclosed); <u>Barner v. Brown</u>, 1998 U.S. Dist. LEXIS 14937, *16 (N.D. Ill. 1998)

(striking and excluding information in affidavit which was not properly disclosed under Rule

26).

**III.    FACTUAL ARGUMENT**

The following catalog of statements, considered in light of the above authorities,

demonstrate that the great majority of Plaintiff's opposition declaration testimony wholly fails to

comply with the requirements of the Federal Rules of Civil Procedure and should be stricken.

**A.    Jerry Leon Dees' Declaration Testimony Is Inadmissible and Should Be Stricken.**

The following statements are due to be stricken from Plaintiff Jerry Leon Dees'

Declaration ("Dees Declaration"):

- *I also told them that Shane had been with me the entire shift except for the five or so minutes he went down to press No. 2 before me, as I had stayed behind to make sure that the trolleys were not going to malfunction again. I further told them that if they questioned Shane about the incident, he should be able to verify everything*

7

*I had told them.*[9]

Analysis:    This statement is self-serving, conclusory, subjective, and/or hearsay at least to the extent it suggests the substance of Shane Archer's knowledge or likely statements. Archer's knowledge must stand upon his own statement, not Dees' allegations of Archer's knowledge.

- *My work record at HMMA prior to the harassment about my military service obligations was exemplary.  I had no blemishes on my work record at HMMA prior to the Guard writing the Letter of Instruction ("LOI") to HMMA in October 2006.*[10]

Analysis:    This statement is self-serving, conclusory, and subjective.

- *Exactly one week after I wrote the e-mail to Kimble, complaining for the third time about harassment because of military service obligations, I was accused of sleeping on the job.*[11]

Analysis:    Neither Dees' Declaration nor any of the depositions taken in this case suggest that he or any other witness has personal knowledge or competence to testify to his implied conclusion that Kimble received this e-mail.  In fact, Defendants submitted evidence that Kimble was on medical leave since January 12, 2007, was not involved in the termination process, and did not provide input in this regard.  (Declaration of Wendy Warner (Second Declaration), ¶ 33, Doc. 68-8, p. 8 of 59).  Furthermore, even assuming Kimble received the e-mail, there is no evidence that anyone other than Kimble received this e-mail or that it would otherwise be the basis or cause of "harassment."  To the extent Dees uses the term "harassment," this statement is conclusory, subjective, and self-serving in that neither the declaration nor the depositions taken in this case suggest a legal basis for actionable harassment.

---

[9]  Dees Declaration, ¶ 3.
[10]  Dees Declaration, ¶ 4.
[11]  Dees Declaration, ¶ 5.

8

- *Working in the pit is a highly dangerous and filthy activity.*[12]

<u>Analysis</u>:     This statement is self-serving, conclusory, and subjective.  No deposition testimony or other declarations or evidence suggests this is a "highly dangerous" or "filthy" activity.

- *HMMA requires employees working in the pit to wear ballistic sleeves over their clothing and safety eyewear to prevent injury from flying metal....*[13]

<u>Analysis</u>:     There is no deposition testimony or other declarations or evidence supporting this statement.  Further, there is no evidence suggesting Plaintiff has personal knowledge about, or is competent to testify to, the purpose for such safety equipment.  Indeed, there is no evidence to suggest that the purpose for such safety equipment is to "prevent injury from flying metal."

- *HMMA requires employees working in the pit to wear ... hearing protection to prevent hearing loss from the 90 decibel noise level.*[14]

<u>Analysis</u>:

There is no deposition testimony or other declarations or evidence supporting this statement.  Further, there is no evidence suggesting Dees has personal knowledge about, or is competent to testify to, the purpose for such safety equipment or that the volume level in the area reaches 90 decibels.  Indeed, there is no evidence to suggest that the purpose for such safety equipment is to "prevent injury from flying metal."

- *As part of my job function at HMMA, I completed Daily Reports every day that detailed the work activities I performed each day.  These daily reports were filed in the maintenance shop office and maintained by Greg Prater.  When I was assigned to the pit, which was often, after I complained to my unit about being harassed because of my military service obligations, I would always designate on*

---

[12] Dees Declaration, ¶ 6.
[13] Dees Declaration, ¶ 6.
[14] Dees Declaration, ¶ 6.

9

*the Daily Report that I was in the pit.  An analysis of those Daily Reports would reveal that I worked in the pit more than any other stamping maintenance employee.*[15]

<u>Analysis</u>:    This paragraph should be stricken to the extent it relates to Daily Reports that were not identified or disclosed by Plaintiff in written discovery.  This statement is also self-serving and conclusory to the extent it suggests he worked in "the pit" "often" or "more than any other stamping maintenance employee."  Plaintiff does not define "often" and does not provide evidence suggesting he has personal knowledge about, or is competent to testify to, the frequency in which he worked in "the pit" versus his co-workers.

- *I have recently learned that Spencer Lewis, who had replaced Greg Prater as Assistant Manager and has since left HMMA, saw Greg Prater destroy the daily reports that related to me sometime after this lawsuit was filed and before Prater left HMMA.*[16]

<u>Analysis</u>:    This statement is entirely hearsay and is not based on any personal knowledge demonstrated by Plaintiff.  Indeed, this statement does not even attribute the unidentified source of Plaintiff's hearsay information.

Because the above statements are self-serving, lack evidence of personal knowledge and/or of competence, contain sweeping conclusory allegations, contain subjective beliefs and opinions, and contain impermissible hearsay, they fail to meet the mandatory requirements of Rule 56(e).

**B.    Shane Archer's Declaration Testimony Is Inadmissible and Should Be Stricken.**

The following statements are due to be stricken from Shane Archer's Declaration ("Archer Declaration"):

---

[15] Dees Declaration, ¶ 7.
[16] Dees Declaration, ¶ 8.

- *Based on my personal observations, Prater wanted to get rid of Leon because of the ongoing dispute over Leon's Guard obligations.*[17]

Analysis:     This statement is conclusory, subjective, and lacks evidence of personal knowledge or competence to state any connection between Plaintiff's Guard obligations and Prater's subjective intent or actions.  Absent additional facts, Archer's assertion of "personal observations" suggesting that Prater "wanted to get rid of" Plaintiff are mere conclusion or subjective belief.

- *On at least two occasions Prater attempted to coerce me to lie about Leon so that HMMA could have him fired.*[18]

Analysis:     This statement is conclusory, speculative, and lacks foundation to suggest any connection between Prater's alleged attempts and any effort to have Plaintiff "fired." Further, this statement is hearsay to the extent it contemplates a statement by Prater regarding the purpose of his alleged coercion.

- *All the team members in Stamping Maintenance, including myself, knew that Prater was out to get Leon because of his Guard obligations.*[19]

Analysis:     This statement is conclusory, subjective, and lacks evidence of personal knowledge or competence to testify to other team member's beliefs or a connection between Prater's alleged subjective intent or actions and Plaintiff's Guard duty.  Further, this statement is hearsay to the extent is seeks to speak for "[a]ll the team members in Stamping Maintenance."

- *When I left Leon, he was, as usual, alert and attending to his responsibilities.  I observed Leon and saw no indication that Leon was groggy or tired.*[20]

Analysis:     This statement is conclusory and subjective to the extent it suggests Dees' state of mind as neither "groggy or tired."

---

[17] Archer Declaration, ¶ 3.
[18] Archer Declaration, ¶ 3.
[19] Archer Declaration, ¶ 5.
[20] Archer Declaration, ¶ 9.

- *When Leon joined me at Press No. 2, he was alert. Again, I observed Leon, and he gave no indication of being tired or groggy.*[21]

<u>Analysis:</u>     This statement is conclusory and subjective to the extent it suggests Dees' state of mind as neither "groggy or tired."

- *As I stated, Leon and I were separated only for about five minutes. Leon could not have set up the PLC as a "blind" or otherwise have arranged the room, fallen asleep, woke up, and returned to me at Press No. 2 within that timeframe.*[22]

<u>Analysis:</u>     This statement is conclusory and subjective to the extent it suggests what he believes Dees could have done within a specific timeframe.

- *Leon did not fall asleep at work.*[23]

<u>Analysis:</u>     This statement is conclusory and subjective. Further, Archer admits he and Plaintiff were separated for "about five minutes" on the evening in question and, therefore, cannot account for at least part of the relevant period. Thus, Archer lacks personal knowledge and is not competent to make this statement.

- *I believe this false claim was an excuse to fire Leon because of Leon's Guard activities.*[24]

<u>Analysis:</u>     This statement is conclusory and subjective. This statement is one of subjective belief akin to an "information and belief" statement, which is not sufficient to defeat a properly supported motion for summary judgment. This statement fails to establish personal knowledge or competence to testify to the facts therein.

- *It was clear to me for quite some time that Leon was being harassed because of his Guard obligations.*[25]

---

[21] Archer Declaration, ¶ 11.
[22] Archer Declaration, ¶ 12.
[23] Archer Declaration, ¶ 13.
[24] Archer Declaration, ¶ 13.
[25] Archer Declaration, ¶ 14.

<u>Analysis</u>:     This statement is conclusory and subjective to the extent Archer uses the term "harassment," in that neither the declaration nor the depositions taken in this case suggest a legal basis for actionable harassment.  Also, Archer provides no evidence to show a foundation or competence regarding a connection between alleged "harassment" and Plaintiff's Guard duty. This statement fails to establish personal knowledge or competence to testify to the facts therein.

- *Again Leon was always the first choice to work the pit, which is a job no one likes to do.*[26]

<u>Analysis</u>:     This statement is conclusory, subjective, and lacks foundation.  Archer identifies no factual basis to suggest any personal knowledge or competence to state that Plaintiff was "always the first choice to work the pit" or the statement that "no one" likes to work in the pit, which is at best based upon hearsay.

- *The Stamping Maintenance daily reports, completed by the team members based on their assigned tasks each day, would show that Leon worked the pit more than anyone on our shift.*[27]

<u>Analysis</u>:     This statement is conclusory, subjective, and lacking foundation.  Archer would lack any personal information concerning Daily Reports not reviewed by or completed by him and there is no evidence that he has personal knowledge or is competent to testify regarding such reports.

- *After this case was filed, one of HMMA's lawyers asked me what happened that night, and I told him Leon was not sleeping.*[28]

<u>Analysis</u>:     This statement is conclusory and subjective.  Further, as discussed above, Archer lacks personal knowledge and is not competent to make this statement.

Because the above statements lack evidence of personal knowledge and/or of

---

[26] Archer Declaration, ¶ 14.
[27] Archer Declaration, ¶ 14.
[28] Archer Declaration, ¶ 15.

13

competence, contain sweeping conclusory allegations, contain subjective beliefs and opinions, and contain impermissible hearsay, they fail to meet the mandatory requirements of Rule 56(e).

**C.    Mark Bornberg's Declaration Testimony Is Inadmissible and Should Be Stricken.**

The following statements are due to be stricken from Mark Bornberg's Declaration ("Bornberg Declaration"):

- *HMMA harassed Leon about Guard duty, particularly about not having written orders for his drill weekends.*[29]

<u>Analysis</u>:    This statement is conclusory, subjective, and speculative in that it does not identify an individual "harasser."    To the extent Bornberg uses the term "harassed," this statement attempts to make an improper legal conclusion given that neither the declaration nor the depositions taken in this case suggest a legal basis for actionable harassment.    Further, Bornberg provides no evidence of a connection between alleged "harassment" and Plaintiff's Guard duty.    This statement also fails to establish personal knowledge or competence to testify to the facts therein.

- *Leon went to John Applegate, head of Maintenance, to complain about HMMA's harassment, but Applegate did not take any action.*[30]

<u>Analysis</u>:    This statement lacks evidence of personal knowledge or competence and appears to be based upon inadmissible hearsay.    To the extent Bornberg uses the term "harassment," this statement attempts to make an improper legal conclusion given that neither the declaration nor the depositions taken in this case suggest a legal basis for actionable harassment.

---

[29] Bornberg Declaration, ¶ 3.
[30] Bornberg Declaration, ¶ 3.

- *Leon then went to Human Resources and complained about the harassment. When that did no good, he had his Guard unit write a letter to HMMA Human Resources about the federal law pertaining to Guard personnel.*[31]

Analysis:     This statement lacks evidence of personal knowledge or competence and appears to be based upon inadmissible hearsay.   To the extent Bornberg uses the term "harassment," this statement attempts to make an improper legal conclusion given that neither the declaration nor the depositions taken in this case suggest a legal basis for actionable harassment.

- *After the letter from the Guard, Prater's harassment of Dees got worse.  It looked like Leon had a target on his back because of his Guard obligations.  The other team members thought so to.*[32]

Analysis:     With respect to "the letter from the Guard," this statement lacks personal knowledge, lacks evidence that the witness is competent to testify as stated therein, and appears to be based upon inadmissible hearsay.  Similarly, this statement is conclusory, subjective, and, to the extent it suggests "harassment" increased after the letter or that "it looked like" Plaintiff "had a target on his back because of his Guard obligations" without evidence that Bornberg actually knew of the letter or when it was sent, is speculative. This statement lacks evidence of personal knowledge, or evidence that the witness is competent to testify, about receipt by HMMA of the letter or the individuals who received such letter.  In addition, to the extent this statement suggests what "other team members thought," this statement lacks evidence of personal knowledge or competence and is conclusory, subjective, and hearsay.  Finally, to the extent Bornberg uses the term "harassed," this statement attempts to make an improper legal conclusion given that neither the declaration nor the depositions taken in this case suggest a legal

---

[31] Bornberg Declaration, ¶ 4.
[32] Bornberg Declaration, ¶ 5.

15

basis for actionable harassment.

- *Shane Archer told me that HMMA tried to get Archer to lie and say that Leon was creating a hostile work environment so that HMMA could fire him. Archer refused, even though he had been an employee only a few months.*[33]

Analysis:    This statement is conclusory, subjective, and hearsay.

- *HMMA always assigned Leon to clean the pit more than anyone else.*[34]

Analysis:    This statement is conclusory, subjective, and lacks foundation. Bornberg identifies no factual basis to suggest any personal knowledge or competence to state that Plaintiff was "always assigned … to clean the pit more than anyone else."

- *Brookshire's word is questionable. Brookshire has come to work with alcohol on his breath. This has been witnessed by several other people.*[35]

Analysis:    This statement is conclusory and subjective. Further, it appears to contain hearsay and it is uncertain whether Bornberg has personal knowledge or is competent to make the allegations concerning whether he personally witnessed Brookshire at work with alcohol on his breath or simply heard others say so.

Because the above statements lack evidence of personal knowledge or competence, contain sweeping conclusory allegations, subjective beliefs and opinions, contain impermissible hearsay, and contain speculation, they should be stricken from the declaration because they fail to meet the mandatory requirements of Rule 56(e).

### D.    John Wingo's Declaration Testimony Is Inadmissible and Should Be Stricken.

The following statements are due to be stricken from John Wingo's Declaration ("Wingo Declaration"):

---

[33] Bornberg Declaration, ¶ 7.
[34] Bornberg Declaration, ¶ 8.
[35] Bornberg Declaration, ¶ 9.

16

- *While I was employed by HMMA, HMMA, through supervisors such as Greg Prater, harassed Leon Dees about his orders from the National Guard and made derogatory comments about the National Guard in general.*[36]

<u>Analysis</u>:    This statement is conclusory, subjective, and, to the extent that it does not identify an individual "harasser" with the exception of Greg Prater, is speculative.  To the extent Wingo uses the term "harassed," this statement attempts to make an improper legal conclusion given that neither the declaration nor the depositions taken in this case suggest a legal basis for actionable harassment.

- *Prater made clear that he resented Leon for fulfilling his obligations to the Guard.*[37]

<u>Analysis</u>:    This statement is conclusory, subjective, and lacks evidence of personal knowledge or competence as to facts supporting Wingo's conclusion that Prater resented Plaintiff because of his Guard duty.

- *Demanding non-existent orders from Leon was clearly harassment based on Leon's Guard obligations.*[38]

<u>Analysis</u>:    This statement is conclusory and subjective to the extent it suggests Plaintiff was "harassed."   To the extent Wingo uses the term "harassment," this statement attempts to make an improper legal conclusion given that neither the declaration nor the depositions taken in this case suggest a legal basis for actionable harassment.  Further, it lacks evidence of personal knowledge or competence as to facts supporting Wingo's conclusion that Prater was "harassed" because of his Guard duty.

- *HMMA would send Leon to clean the pit more than anyone else.  HMMA also assigned Leon the worse jobs, such as the dirty job of wiping down the Press.*[39]

---

[36] Wingo Declaration, ¶ 4.
[37] Wingo Declaration, ¶ 5.
[38] Wingo Declaration, ¶ 6.
[39] Wingo Declaration, ¶ 8.

17

Analysis:    This statement is conclusory, subjective, and lacks foundation.  Wingo identifies no factual basis to suggest any personal knowledge or competence to state that Plaintiff "clean[ed] the pit more than anyone else" or that Plaintiff performed any "dirty job" more than other employees did.

- *It was clear to me and common knowledge among the Stamping Maintenance team members that HMMA wanted to get rid of Dees because of his Guard obligations.*[40]

Analysis:    This statement is conclusory, subjective, and lacks foundation for the hearsay suggestion that other employees felt that HMMA wanted to terminate Dees.  Also, this statement lacks evidence of personal knowledge or competence to state that there is any correlation between any alleged desire on HMMA's part to terminate Dees and his Guard duty.

Because the above statements lack personal knowledge or competence, contain sweeping conclusory allegations, contain subjective beliefs and opinions, contain impermissible hearsay, and contain speculation, they should be stricken from the declaration because they fail to meet the mandatory requirements of Rule 56(e).

**E.    Lt. Col. (Ret.) Todd Harrison's Declaration Testimony Is Inadmissible and Should Be Stricken.**

The following statements are due to be stricken from Lt. Col. (Ret.) Todd Harrison's Declaration ("Harrison Declaration"):

- *I trusted Sgt. Dees with my life, and I cannot believe any claim that Sgt. Dees fell asleep while on duty, even in a civilian job.  This would be completely contrary to his character.*[41]

Analysis:    This statement is subjective, conclusory, and speculative.  Additionally, this statement is contains form affidavit language in comparison to the Declaration of Wendell

---

[40] Wingo Declaration, ¶ 9.
[41] Harrison Declaration, ¶ 5.

18

Richburg and should be stricken. Thus, this statement should be stricken from the declaration because it fails to meet the mandatory requirements of Rule 56(e).

F.   **Wendell Richburg's Declaration Testimony Is Inadmissible and Should Be Stricken.**

The following statements are due to be stricken from Wendell Richburg's Declaration ("Richburg Declaration"):

- *Sgt. Dees was a good man in combat, and always received excellent ratings on his efficiency reports. I cannot believe any allegation that Sgt. Dees fell asleep while on duty, even in a civilian job. This would be completely contrary to his character.*[42]

Analysis:   This statement is subjective, conclusory, and speculative. Additionally, this statement is contains form affidavit language in comparison to the Harrison Declaration and should be stricken.

- *Sgt. Dees should have been eligible for a promotion earlier this year, except that he was not able to attend a mandatory school because of his problems at Hyundai.*[43]

Analysis:   This statement is conclusory, speculative, and lacks evidence of personal knowledge or competence to testify as stated. Richburg offers no factual basis or foundation for his unsupported conclusion that Plaintiff failure to attend mandatory school was related to his relationship with HMMA. Thus, these statements should be stricken from the declaration because they fail to meet the mandatory requirements of Rule 56(e).

THEREFORE, pursuant to Rules 12(f) and 56(e) of the Federal Rules of Civil Procedure, Defendants ask this Court to strike the declarations and/or the unsupported and inadmissible testimony contained in the declarations submitted by Plaintiff in support of his brief in

---

[42] Richburg Declaration, ¶ 6.
[43] Richburg Declaration, ¶ 7.

19

opposition to Defendants' pending motion for summary judgment.

Respectfully submitted this 8th day of February, 2008.

/s/  J. Trent Scofield

J. Trent Scofield (SCO-024)
T. Scott Kelly (KEL-053)
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, AL 35203-2118
Tel.: (205) 328-1900
Fax: (205) 328-6000
E-mail: trent.scofield@odnss.com
E-mail: scott.kelly@odnss.com

Matthew K. Johnson
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
P.O. Box 2757
Greenville, SC  29602
Tel.: (864) 271-1300
Fax: (864) 235-8806
E-mail: matthew.johnson@odnss.com
**Pro Hac Vice Granted 05/15/07**

Attorneys for Defendants Hyundai Motor
Manufacturing Alabama, LLC and
Hyundai Motor America, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of February, 2008, I electronically filed the foregoing *Defendants' Motion to Strike Portions of Plaintiff's Evidentiary Submission in Opposition to Defendants' Motion for Summary Judgment* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: W. Perry Hall, Vincent F. Kilborn, III, David Allen McDonald, Jeffrey Rayborn Sport, T. Scott Kelly, and Matthew K. Johnson.

/s/ J. Trent Scofield

J. Trent Scofield (SCO-024)
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, AL 35203-2118
Tel.: (205) 328-1900
E-mail: trent.scofield@odnss.com

5473639.3

# Exhibit A

*Jerry Leon Dees, Jr., Plaintiff v. Hyundai Motor Manufacturing Alabama, LLC and Hyundai Motor America, Inc., Defendants*

## DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S EVIDENTIARY SUBMISSION IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**IN THE UNITED STATES DISTRICT COURT**
FOR THE MIDDLE DISTRICT OF ALABAMA

JERRY LEON DEES, JR.,                    *
                                         *
        Plaintiff,                       *
                                         *
Vs.                                      *           **CASE NO.**
                                         *      **2:07-cv-00306-MHT-CSC**
HYUNDAI MOTOR MANUFACTURING              *
ALABAMA, LLC, and HYUNDAI                *
MOTOR AMERICA, INC.,                     *
                                         *
        Defendants.                      *

## PLAINTIFF'S INITIAL DISCLOSURES

Comes now the Plaintiff, JERRY LEON DEES, JR. (Dees), in the above styled and numbered cause, and pursuant to FRCP 26(a)(1) and Local Rule 26.3 hereby submits the following Initial Disclosure Information:

A.  The name and, if known, the address and telephone number of each individual likely to have discoverable information, which Dees may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of that information:

**ANSWER:**

1.  **Jerry Leon Dees, Jr., 14805 U.S. Hwy 82, Maplesville, AL 36750; Phone 334-366-0325. Mr. Dees is knowledgeable about all aspects of the case, including all of the acts of harassment cited in the Complaint.**

2.  **Catherine Dees, U.S. Hwy 82, Maplesville, AL 36750; Phone 334-366-0325. Mrs. Dees is knowledgeable about the lost wages suffered by the Plaintiff, as well as Dees' severe emotional distress.**

3.  **Greg Prater, Hyundai Motor Manufacturing Alabama, LLC (HMMA), 700 Hyundai Blvd., Montgomery, AL 36105; Phone 334-387-8000. Mr. Prater is believed to have knowledge regarding the various acts of harassment**

perpetrated on Dees, as well as have knowledge regarding the circumstances surrounding HMMA's termination of Dees.

4. Kevin Hughes, Hyundai Motor Manufacturing Alabama, LLC (HMMA), 700 Hyundai Blvd., Montgomery, AL 36105; Phone 334-387-8000. Mr. Hughes is believed to have knowledge regarding the various acts of harassment perpetrated on Dees, as well as have knowledge regarding the circumstances surrounding HMMA's termination of Dees.

5. John Applegate, Hyundai Motor Manufacturing Alabama, LLC (HMMA), 700 Hyundai Blvd., Montgomery, AL 36105; Phone 334-387-8000. Mr. Applegate is believed to have knowledge regarding the various acts of harassment perpetrated on Dees, as well as have knowledge regarding the circumstances surrounding HMMA's termination of Dees.

6. Kisha W. Morris, Hyundai Motor Manufacturing Alabama, LLC (HMMA), 700 Hyundai Blvd., Montgomery, AL 36105; Phone 334-387-8000. Ms. Morris is believed to have knowledge of the visits Dees made to HMMA human resources regarding the harassment he suffered at the hands of HMMA personnel.

7. Mr. Moon, Hyundai Motor Manufacturing Alabama, LLC (HMMA), 700 Hyundai Blvd., Montgomery, AL 36105; Phone 334-387-8000. Mr. Moon is believed to have knowledge regarding Dees reputation at HMMA, as well as the circumstances surrounding HMMA's termination of Dees.

8. Wendy Warner, Hyundai Motor Manufacturing Alabama, LLC (HMMA), 700 Hyundai Blvd., Montgomery, AL 36105; Phone 334-387-8000. Ms. Warner is believed to have knowledge regarding the relationship between HMMA and HMA, and is, in fact, a self-professed expert on the subject.

9. Drake Barefoot, 101 Lee Road 855, Phoenix City, AL 36870; Phone 334-298-9178. Mr. Barefoot has knowledge of the various acts of harassment perpetrated on Dees, as well as the circumstances surrounding HMMA's termination of Dees.

10. Mark Bornberg, 2382 County Rd. 65, Marbury, AL 36051; Phone 334-358-9510. Mr. Bornberg has knowledge of the various acts of harassment perpetrated on Dees, as well as the circumstances surrounding HMMA's termination of Dees.

11. Chris Weihe, 308 Golson Rd., Prattville, AL 36067; Phone 334-365-1756. Mr. Weihe has knowledge of the various acts of harassment perpetrated on Dees.

12. Shane Archer, 705 Braideliff Place, Prattville, AL 36066; Phone 334-365-3662. Mr. Archer has knowledge of the various acts of harassment perpetrated on Dees, as well as the circumstances surrounding HMMA's termination of Dees.

13. Mark Hanks, 136 Patrick St., Prattville, AL 36067; Phone 334-358-8359. Mr. Hanks has knowledge of the various acts of harassment perpetrated on Dees, as well as the circumstances surrounding HMMA's termination of Dees.

14. John Wingo, 1508 Maples Village Court, Pell City, AL 35128; Phone 205-966-0369. Mr. Wingo has knowledge of the various acts of harassment perpetrated on Dees.

15. Sergeant Franklin Barnes, Detachment 1, 1165th Military Police, Alabama Army National Guard, 95 Airport Dr., Brewton, AL 36426; Phone 251-867-5473. Sergeant Barnes has knowledge regarding certain acts of harassment of Dees by HMMA personnel and various communications between himself and HMMA regarding the statutory obligations of HMMA to its employees who are also uniformed servicemen and women.

B. A copy of, or a description by category and location of, all documents, electronically stored information, and tangible things that are in the possession, custody, or control of the party and that Dees may use to support its claims or defenses, unless solely for impeachment:

**ANSWER:**

1. All documents provided by Defendants in their Initial Disclosures.

2. Documents numbered DEES 000001- 295.

C. A computation of any category of damages claimed by Dees, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered:

## ANSWER:

1. **Under Count One – Violations of USERRA, Dees is claiming compensatory damages relating to his lost wages and benefits, as well as liquidated and/or punitive damages, attorneys fees and costs, and such other relief as is appropriate under the statute and granted by the court. Plaintiff has not yet retained an expert to calculate his compensatory damages, but anticipates that calculation including the differential between his gross wages and HMMA and his gross wages at his subsequent employer, plus the differential in the value of the benefits available at HMMA compare to benefits available at his subsequent employer, projected into the future and discounted back to the present at a risk free interest rate. These disclosures will be supplemented when the calculation of damages is performed.**

2. **Under Count Two – Outrage, Dees is claiming compensatory and punitive damages relating to the severe emotional distress caused by Defendants' outrageous conduct, as well as attorneys' fees and costs and any other relief the court deems appropriate. Damages on this count will be determined by the jury.**

3. **Under Count Three – Conversion, Dees is claiming compensatory and punitive damages, as well as attorneys' fees and costs, for Defendants' conversion of Dees' personal property when Dees was terminated by HMMA. Dees expects the compensatory and punitive damages for this count to be determined by the jury.**

D. Any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

## ANSWER:

**Dees is unaware of any insurance policy or agreement that would compensate him for his damages in this matter.**

_____
Jeffrey R. Sport (SPORJ5390)

OF COUNSEL:

JEFFREY R. SPORT, P.C.
8475 Sterling Drive
Mobile, Alabama 36695
Telephone: (251) 633-7120
Fax: (251) 633-7253
E-mail: jeff.sport@sportlaw.us

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I do hereby certify that I have on the 7th day of June, 2007, filed the foregoing pleading on all counsel of record by placing a copy of same in the United States Mail, pre-paid postage at the following addresses:

J. Trent Scofield, Esq.
T. Scott Kelly, Esq.
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, AL 35203-2118

Matthew K. Johnson
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
P.O. Box 2757
Greenville, SC 29602

COUNSEL

# Exhibit B

*Jerry Leon Dees, Jr., Plaintiff v. Hyundai Motor Manufacturing Alabama, LLC and Hyundai Motor America, Inc., Defendants*

## DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S EVIDENTIARY SUBMISSION IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**IN THE UNITED STATES DISTRICT COURT**
FOR THE MIDDLE DISTRICT OF ALABAMA

JERRY LEON DEES, JR.,                      *
                                            *
        Plaintiff,                          *
                                            *
Vs.                                         *        **CASE NO.**
                                            *    **2:07-cv-00306-MHT-CSC**
HYUNDAI MOTOR MANUFACTURING                 *
ALABAMA, LLC, and HYUNDAI                   *
MOTOR AMERICA, INC.,                        *
                                            *
        Defendants.                         *

## PLAINTIFF'S SUPPLEMENTAL INITIAL DISCLOSURES

Comes now the Plaintiff, JERRY LEON DEES, JR. (Dees), in the above styled and numbered cause, and pursuant to FRCP 26(a)(1) and Local Rule 26.3 hereby supplements his Initial Disclosures as follows:

A. The name and, if known, the address and telephone number of each individual likely to have discoverable information, which Dees may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of that information:

**ANSWER:**

1. **Jerry Leon Dees, Jr., 14805 U.S. Hwy 82, Maplesville, AL 36750; Phone 334-366-0325. Mr. Dees is knowledgeable about all aspects of the case, including all of the acts of harassment cited in the Complaint.**

2. **Catherine Dees, U.S. Hwy 82, Maplesville, AL 36750; Phone 334-366-0325. Mrs. Dees is knowledgeable about the lost wages suffered by the Plaintiff, as well as Dees' severe emotional distress.**

3. **Greg Prater, Hyundai Motor Manufacturing Alabama, LLC (HMMA), 700 Hyundai Blvd., Montgomery, AL 36105; Phone 334-387-8000. Mr. Prater is believed to have knowledge regarding the various acts of harassment**

- 1 -



perpetrated on Dees, as well as have knowledge regarding the circumstances surrounding HMMA's termination of Dees.

4. Kevin Hughes, Hyundai Motor Manufacturing Alabama, LLC (HMMA), 700 Hyundai Blvd., Montgomery, AL 36105; Phone 334-387-8000. Mr. Hughes is believed to have knowledge regarding the various acts of harassment perpetrated on Dees, as well as have knowledge regarding the circumstances surrounding HMMA's termination of Dees.

5. John Applegate, Hyundai Motor Manufacturing Alabama, LLC (HMMA), 700 Hyundai Blvd., Montgomery, AL 36105; Phone 334-387-8000. Mr. Applegate is believed to have knowledge regarding the various acts of harassment perpetrated on Dees, as well as have knowledge regarding the circumstances surrounding HMMA's termination of Dees.

6. Kisha W. Morris, Hyundai Motor Manufacturing Alabama, LLC (HMMA), 700 Hyundai Blvd., Montgomery, AL 36105; Phone 334-387-8000. Ms. Morris is believed to have knowledge of the visits Dees made to HMMA human resources regarding the harassment he suffered at the hands of HMMA personnel.

7. Mr. Moon, Hyundai Motor Manufacturing Alabama, LLC (HMMA), 700 Hyundai Blvd., Montgomery, AL 36105; Phone 334-387-8000. Mr. Moon is believed to have knowledge regarding Dees reputation at HMMA, as well as the circumstances surrounding HMMA's termination of Dees.

8. Wendy Warner, Hyundai Motor Manufacturing Alabama, LLC (HMMA), 700 Hyundai Blvd., Montgomery, AL 36105; Phone 334-387-8000. Ms. Warner is believed to have knowledge regarding the relationship between HMMA and HMA, and is, in fact, a self-professed expert on the subject.

9. Drake Barefoot, 101 Lee Road 855, Phoenix City, AL 36870; Phone 334-298-9178. Mr. Barefoot has knowledge of the various acts of harassment perpetrated on Dees, as well as the circumstances surrounding HMMA's termination of Dees.

10. Mark Bornberg, 2382 County Rd. 65, Marbury, AL 36051; Phone 334-358-9510. Mr. Bornberg has knowledge of the various acts of harassment perpetrated on Dees, as well as the circumstances surrounding HMMA's termination of Dees.

11. Chris Weihe, 308 Golson Rd., Prattville, AL 36067; Phone 334-365-1756. Mr. Weihe has knowledge of the various acts of harassment perpetrated on Dees.

12. Shane Archer, 705 Braideliff Place, Prattville, AL 36066; Phone 334-365-3662. Mr. Archer has knowledge of the various acts of harassment perpetrated on Dees, as well as the circumstances surrounding HMMA's termination of Dees.

13. Mark Hanks, 136 Patrick St., Prattville, AL 36067; Phone 334-358-8359. Mr. Hanks has knowledge of the various acts of harassment perpetrated on Dees, as well as the circumstances surrounding HMMA's termination of Dees.

14. John Wingo, 1508 Maples Village Court, Pell City, AL 35128; Phone 205-966-0369. Mr. Wingo has knowledge of the various acts of harassment perpetrated on Dees.

15. Sergeant Franklin Barnes, Detachment 1, 1165th Military Police, Alabama Army National Guard, 95 Airport Dr., Brewton, AL 36426; Phone 251-867-5473. Sergeant Barnes has knowledge regarding certain acts of harassment of Dees by HMMA personnel and various communications between himself and HMMA regarding the statutory obligations of HMMA to its employees who are also uniformed servicemen and women.

16. Sergeant James Martin, Operations NCO for 1165th Military Police Company, Alabama Army National Guard, 550 Fairwood Blvd., Fairhope, Alabama. Sergeant Martin has knowledge regarding certain acts of harassment of Dees by HMMA personnel, has known Dees for eight years, and has knowledge of Dees' honor, integrity and character.

17. Lt. Col. (ret.) Todd Harrison, former commander of 1168th MP Battalion in Baghdad, Iraq. Col. Harrison knows Dees from when Dees' unit was under his command in Iraq, and had Dees serve in his second security detail, which backed up his personal body guard. Col. Harrison has knowledge of Dees' honor, integrity, and character.

18. Sergeant First Class Wendell Richburg, Operations NCO for 1165th MP, 550 Fairview Blvd., Fairhope, Alabama 36532. Phone 251-928-9333. Sergeant Richburg has known Dees since 2003, when Dees volunteered for active duty when he heard the 1165th MP's had been activated. Sergeant Richburg served with Dees in Iraq from May 2003 through July 2004, training Iraqi police and conducting combat patrols. Sergeant Richburg has knowledge of Dees' skill and courage in combat, and knowledge that Dees could not attend a mandatory military school for promotion within the Guard because of his unlawful termination from Hyundai.

Jeffrey R. Sport (SPORJ5390)
Vincent F. Kilborn, III (KILBV4484)
David A. McDonald (MCDOD5329)
W. Perry Hall (HALLW9043)

OF COUNSEL:

KILBORN, ROEBUCK & McDONALD
1810 Old Government Street
Post Office Box 66710
Mobile, Alabama 36660
Telephone: (251) 479-9010
Fax: (251) 479-6747
E-mail: vfk@krmlaw.us
E-mail: dam@krmlaw.us
E-mail: wph@krmlaw.us
E-mail: jeff.sport@sportlaw.us

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I do hereby certify that I have on the 21st day of September, 2007, filed the foregoing pleading on all counsel of record by placing a copy of same in the United States Mail, pre-paid postage at the following addresses:

J. Trent Scofield, Esq.
T. Scott Kelly, Esq.
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, AL 35203-2118

Matthew K. Johnson
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
P.O. Box 2757
Greenville, SC 29602

_____
COUNSEL

# Exhibit C

*Jerry Leon Dees, Jr., Plaintiff v. Hyundai Motor Manufacturing Alabama, LLC and Hyundai Motor America, Inc., Defendants*

# DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S EVIDENTIARY SUBMISSION IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JERRY LEON DEES, JR., | * | |
| Plaintiff, | * | |
| vs. | * | Case No. 2:07-cv-00306-MHT-CSC |
| HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC and HYUNDAI MOTOR AMERICA, INC., | * <br> * | |
| Defendants. | * | |

## PLAINTIFF'S SECOND SUPPLEMENTAL INITIAL DISCLOSURES

COMES NOW the Plaintiff, JERRY LEON DEES, JR. (Dees), in the above styled and numbered cause, and pursuant to FRCP 26(a)(1) and Local Rule 26.3 hereby supplements his Initial and Supplemental Initial Disclosures as follows:

A.    The name and, if known, the address and telephone number of each individual likely to have discoverable information, which Dees may use to support his claims or defenses, unless solely for impeachment, identifying the subjects of that information.

**The following individuals are in addition to those previously disclosed.**

1.    **James A. Brookshire,** 1048 East Poplar Street, Prattville, Alabama. Mr. Brookshire is the Stamping Production Manager of Hyundai Motor Manufacturing Alabama (HMMA). Mr. Brookshire is familiar with Dees and the circumstances surrounding his termination of employment and with the allegations of the suit.

2.    **Robert Allen Clevenger,** 1074 East Poplar Street, Prattville, Alabama. Mr.

Page 1
*Case No. 2:07-cv-00306-MHT-CSC*

Clevenger is the Assistant Manager, Team Relations for HMMA. Mr. Clevenger is familiar with Dees and the circumstances surrounding his termination of employment and with the allegations of the suit.

3.    **Captain Christopher Butler,** Alabama National Guard, Prattville, Alabama. Captain Butler was Dees' commander in Iraq who recommended that he be awarded a Bronze Star for his military service. Captain Butler has knowledge of Dees' honor, integrity and character.

4.    **Richard Neal,** General Counsel for HMMA. Mr. Neal has knowledge concerning the termination of Dees' employment.

5.    **Chris Smith,** In-House counsel for HMMA. Mr. Smith participated in the filming of the alleged contents of Dees' locker.

6.    **John McClenney,** employee of HMMA. Mr. McClenney participated in the filming of the alleged contents of Dees' locker.

7.    **Barry Jackson,** employee of HMMA. Mr. Jackson participated in the filming of the alleged contents of Dees' locker.

8.    Dees identifies the individuals disclosed by the Defendants' in their Rule 26(a)(1) disclosures and all supplements thereto not specifically identified herein.

9.    HMMA and HMA corporate representatives whose identities have not been disclosed at this time by the Defendants but whose depositions will be taken after the close of discovery.

10.    **Gwang Mun.** Mr. Mun was previously identified by Dees, however, Mr. Mun is being  identified again to correct the spelling of his name, as well as, to disclose his full name. Mr. Mun has knowledge regarding discussions with Dees and his wife following Dees' termination. Mr.

Mun also has knowledge of an inquiry he conducted as to why Dees was terminated.

B.    A copy of, or a description by category and location of, all documents, electronically stored information, and tangible things that are in the possession, custody, or control of the party and that Dees may use to support its claims or defenses, unless solely for impeachment.

**In addition to the documents previously identified by the Plaintiff in his Initial Disclosures and any supplements thereto, the following documents may be used to support the Plaintiff's claims or his defenses at the trial of the above styled cause.**

1.    Documents numbered Dees000296-413.

2.    Copies of Dees' cell phone records which were produced without Bates numbers.

3.    The reports and any supplements thereto provided by Robert Hall, the expert witness for Dees whose deposition will be taken by the Defendants after the close of discovery.  Mr. Hall's report may be revised after the conclusion of the depositions of the HMA and HMMA corporate representatives and Plaintiff reserves the right to supplement if necessary.

4.    All documents provided pursuant to non-party subpoenas issued at the request of either party.

5.    All documents produced by the Defendants.

6.    All photographs taken during Dees' inspection of HMMA's premises.

7.    The alleged contents of Dees' locker delivered to him in a cardboard box at HMMA, along with the inventory statement and DVD prepared by HMMA.

Jeffrey R. Sport, Esquire (SPORJ5390)
Vincent F. Kilborn, III, Esquire (KILBV4484)
W. Perry Hall, Esquire (HALLW9043)
KILBORN, ROEBUCK & MCDONALD
1810 Old Government Street
Post Office Box 66710
Mobile, Alabama 36660
Telephone: (251) 479-9010
Fax: (251) 479-6747

OF COUNSEL
David A. McDonald, Esquire (MCDOD5329)
KILBORN, ROEBUCK & MCDONALD
P.O. Box 832
Mobile, AL 36601
(251) 434-0045 Telephone
(251) 434-0047 Fax
Email: dam@krmlaw.us

## CERTIFICATE OF SERVICE

I do hereby certify that I have served on this 11th day of January, 2008, the foregoing
pleading on all counsel of record by depositing a copy of same in the United States Mail with
postage prepaid to:

J. Trent Scofield
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Federal Place, Ste. 1000
1819 Fifth Avenue North
Birmingham, AL 35203

Matthew Kinard Johnson
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
PO Box 2757
Greenville, SC 29602

COUNSEL

# Exhibit D

*Jerry Leon Dees, Jr., Plaintiff v. Hyundai Motor Manufacturing Alabama, LLC and Hyundai Motor America, Inc., Defendants*

## DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S EVIDENTIARY SUBMISSION IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**IN THE UNITED STATES DISTRICT COURT**
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| JERRY LEON DEES, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| Vs. | * | **CASE NO.** |
| | * | **2:07-cv-00306-MHT-CSC** |
| HYUNDAI MOTOR MANUFACTURING | * | |
| ALABAMA, LLC, and HYUNDAI | * | |
| MOTOR AMERICA, INC., | * | |
| | * | |
| Defendants. | * | |

## DEES ANSWERS TO HMMA'S FIRST INTERROGATORIES TO PLAINTIFF

Comes now the Plaintiff, Jerry Leon Dees, Jr. ("Dees"), by and through its counsel of record, and answers Hyundai Motor Manufacturing Alabama, LLC's ("HMMA") First Interrogatories to Plaintiff as follows:

1.    If you possessed a mobile telephone during your employment with HMMA, please provide: (a) your mobile phone number; (b) the mobile/cellular service provider; and (c) the name of the account holder with that mobile/cellular service provider.

**RESPONSE:** Dees objects to this interrogatory on the grounds that is not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds that it invades Dees right to privacy.

2.    Please identify any person whom you believe may be a witness concerning the facts of this case.

**RESPONSE:** Dees refers to its Initial Disclosures.

3.    For each person identified in your answer to the previous interrogatory, please state a narrative summary of the facts you believe each witness may possess, and whether any statement has been taken from any of these persons.

**RESPONSE:** Dees objects to this interrogatory on the grounds that it is too broad and unduly burdensome in that it asks Dees to basically write the testimony of each witness before their depositions have been taken. Notwithstanding these objections, but expressly insisting thereon, Dees states that, for the topics on which the witnesses will testify, Dees refers to his Initial Disclosures. Dees further states that no statements have been taken from any witnesses.

4.    Please state your education background in detail.

**RESPONSE:** Dees graduated from Clay County High School located in Ashland, Alabama in 1983. Dees also took some college courses at George C. Wallace Jr. College in the early 1990's and at John Patterson Tech in approximately 1996-1998.

5.    Please identify each branch or unit of the United States uniformed services, as defined in 38 U.S.C. § 4303, in which you have served, and as to each, please identify:

    a.  Your dates of entry;

    b.  Your dates of discharge:

    c.  Your dates and locations of active duty, if any;

    d.  Your dates and locations of active duty for training, if any;

    e.  Your dates of inactive duty, if any;

    f.  The type/nature of discharge or separation;

    g.  Your rank at discharge; and

    h.  Your serial number.

**RESPONSE:** Dees has served in the United States military for virtually all of his adult life. Dees completed basic training with the Alabama Army National Guard ("Guard") in the summer of 1982, before his senior year in high school.

Upon graduation from high school, Dees was released from the Guard to go active U.S. military. Dees enlisted in the U.S. Air Force in June 1983. While in the Air Force, Dees served at Eglin Air Force Base in Ft. Walton Beach, Florida, at Osan Air Base in Korea, at Ft. Lewis in Washington State, and at Bitburg Air Base in Germany. While stationed at Bitburg, Dees served in the first six months of Operation Desert Storm. Dees was honorably discharged from the Air Force on November 30, 1992, at the rank of Staff Sergeant (E-5).

Dees rejoined the Guard in 1994 as a Sergeant (equivalent rank of E-5), and is now a Staff Sergeant (E-6) and combat MP in the 1165th Military Police. Dees served another tour in the current Iraqi conflict from March 2003 through August 2004.

6.    Set forth a list of documents, as defined above, which you believe relate or

pertain in any way to this case and with respect to each document, identify each

person who has custody of each document.

**RESPONSE:** Dees refers to his Initial Disclosures.

7.    Set forth at itemized statement of all damages, exclusive of pain and

suffering, and exclusive of any claims of severe emotional distress, you are

claiming in this lawsuit.

**RESPONSE:** Dees expects his damages to be lost wages and benefits. Dees expects his damages to be the difference between his wages at HMMA, adjusted for anticipated increases over time, and his wages earned from subsequent employers. Dees also expects these damages to include the value of benefits he enjoyed while employed at HMMA that his subsequent employers do not provide, or provide to a lesser extent, including insurance coverage. A more precise calculation of damages will be provided when made.

Dees also seeks punitive damages relating to his claims in this case in an amount to be set by the jury.

- 3 -

8.     For your claim of severe emotional distress, or any similar claims, if any, set forth an itemized statement of each type of non-economic damage sought and identify all evidence supporting each type of damage.

**RESPONSE:** Plaintiff will testify to the distress and anguish he suffered because of Hyndai's extreme and outrageous conduct.

9.     Set forth the names and addresses of all physicians or other medical treatment providers who have treated you and all hospitals in which you have been treated or evaluated in connection with the injuries described in your complaint, if any.

**RESPONSE:** Dees states that he has not been treated for his suffering the outrageous conduct perpetrated on him by HMMA because he simply did not have time. Finding himself unceremoniously fired for the first time in his life, he had a family to feed and financial obligations to meet, so he had to immediately go to work. Dees further states that, simply because he has not sought treatment does not mean he was not adversely affected by HMMA's harassment of him during virtually his entire tenure at HMMA that ended in his abrupt termination in February 2007.

10.     Identify in detail all instances in which you have sought gainful employment since your last date of employment with Defendant HMMA.

**RESPONSE:** Dees states that he went to work for BE&K the morning after he was unceremoniously fired after more than a year of outrageous and harassing treatment by HMMA because, as previously stated in response to Interrogatory No. 9 above, he had a family to feed and financial obligations to meet. Dees further states that on July 12, 2007, he left BE&K and started work with International Paper in Prattville, Alabama.

11.     Identify in detail all instances where you have been offered a job or employment since your last date of employment with Defendant HMMA.

**RESPONSE:** Dees refers to his answer to Interrogatory No. 10 above.

- 4 -

12.    Provide an itemized list of all of your employers or other sources of income since your last date of employment with Defendant HMMA.

**RESPONSE:** Dees refers to his answer to Interrogatory No. 10 above.

13.    Please identify and describe in detail all evidence of which you are aware which bears upon the allegations contained in paragraph 4 of your Complaint.

**RESPONSE:** Dees objects to answering this interrogatory before discovery is completed regarding the alleged relationship between HMMA and HMA, which the Court has ordered. Notwithstanding this objection, but expressly insisting thereon, Dees states that HMA is qualified to do business in Alabama, and sells the automobiles manufactured by HMMA. Also, the address for HMA in Alabama is listed as 700 Hyundai Blvd., Montgomery, Alabama, and its phone number is listed as 334-387-8000. These are also HMMA's address and phone number.

14.    Please identify and describe in detail all evidence of which you are aware which bears upon the allegations contained in Count One, paragraphs 18 through 22, including the unnumbered paragraph immediately following paragraph 22 of your Complaint.

**RESPONSE:** Dees is a Staff Sergeant and combat MP in the 1165th Military Police of the Alabama Army National Guard (hereinafter "Guard"), and has been in the Guard since 1994. During his Guard tenure, Dees has served one tour in the current Iraqi conflict. Dees also served in the first Iraqi conflict, Operation Desert Storm, while on active duty in the U.S. Air Force, stationed at Bitburg Air Base in Germany. As a member of the uniformed services, Dees is a person intended to be protected by USERRA.

Harassment of Dees by HMMA through Greg Prater and Kevin Hughes began almost immediately when Prater learned that Dees was a member of the Alabama Army National Guard and had served two tours in Iraq. Hyundai, through Prater, Hughes and Applegate, harassed Dees during his entire tenure at Hyundai. Harassing acts included:

a.    Prater repeatedly demanded that Dees provide military orders to excuse missing work when Dees would have to attend his monthly weekend training with the Guard, even though the Guard issues only an annual training schedule;

- 5 -

b.  Prater telling Dees he could not miss work to attend his Guard training;

c.  Prater frequently made derogatory remarks about the Guard in the presence of Dees and other employees;

d.  Prater told Dees that he could not go to the Human Resources department to complain about how he was being treated, despite Hyundai having an "open door" policy regarding employee complaints;

e.  Prater attempted to force Dees' coworkers to say that Dees had violated Hyundai policies and procedures when Prater knew it was not true;

f.  In an effort to coerce Dees into quitting his job at Hyundai so that Hyundai would not have to deal with Dees' Guard service obligations, Dees' was forced to clean the "pit" more frequently than the other personnel. It became a way for Hyundai, through Prater and Hughes, to punish Dees. The pit is a highly dangerous area where metal pieces which are scrap from the stamping process, many of which are sharp, come off of a conveyor and are supposed to fall into a scrap bin. Many of the parts do not fall into the bin, but are thrown to the floor of the pit. This scrap process was running while Dees was made to clean the pit, making working in the pit far more dangerous than the maintenance technician's other duties. Dees cleaned the pit almost daily some weeks, and the frequency with which he was assigned to the pit was several times that of his coworkers.

Applegate ratified each and every action of harassment by Prater and Hughes by stating that he stood behind each and every decision they made in running the stamping maintenance department, and refusing to act on or even investigate complaints to Applegate about Prater and Hughes.

The harassment regarding Dees having to provide military orders for his monthly Guard service continued despite Human Resources confirming that Dees' was correct about there only being a annual schedule of training times. In an attempt to end the harassment, Dees finally asked the Guard to write a letter to Hyundai asking Hyundai to stop harassing Dees about his Guard duty. Evidence of this letter has been produced in Dees' Initial Disclosures.

Per Dees' request, on or about October 23, 2006, Sergeant Franklin Barnes of Dees' Guard unit wrote a Letter of Instruction ("LOI") to the Human Resources department at Hyundai. The LOI stated that military orders were not cut, that only an annual schedule was prepared and could be furnished to Hyundai if it needed one, and that Barnes would be happy to provide a Letter of Participation stating that Dees was present on the weekends indicated on the schedule.

- 6 -

After the letter from Sergeant Barnes was sent to Hyundai, the incidences of harassment outlined above escalated until finally, on or about February 19, 2007, Prater got the Production Stamping Manager, Jim Brookshire, to falsely accuse Dees of sleeping on the job. Finally, on or about February 26, 2007, Hyundai fired Dees.

Dees expects the actions of HMMA discussed above to be testified to by the witnesses listed in his Initial Disclosures.

15.    Please identify and describe in detail all evidence of which you are aware which bears upon the allegations contained in Count Two, paragraphs 23 through 27, including the unnumbered paragraph immediately following paragraph 27 of your Complaint.

> **RESPONSE:** Dees incorporates herein his answers to Interrogatories No. 9 and 14 above. Additionally, Dees states that Hyundai intentionally created a harassing environment and subjected Dees to a pattern of intentional harassment regarding Dees' membership in the Guard and Dees' Guard service obligations. The specific extreme and outrageous acts of intentional harassment perpetrated by Hyundai cited in response to Interrogatory No. 14, particularly forcing Dees to clean the dangerous "pit" more frequently than other employees and attempting to coerce Dees' coworkers to falsely say that Dees violated Hyundai policies and procedures so Hyundai could fire Dees, were intentional acts designed to either force Dees to quit or give Hyundai an excuse to fire Dees. Hyundai's termination of Dees was the culmination of the protracted pattern of intentional harassment related to Dees' Guard membership and requisite Guard service obligations.
>
> As a result of Hyundai's extreme and outrageous conduct, Dees has suffered severe emotional distress. Dees had never been fired before, and had never been treated with the hatred and disdain shown by Hyundai. Hyundai's firing of Dees bothers him to this day. As stated previously, Dees' strong constitution allowed him to pick up the pieces of his life quickly and return to work to support his wife and children.

16.    Please identify and describe in detail all evidence of which you are aware which bears upon the allegations contained in Count One, paragraphs 28 through 29,

including the unnumbered paragraph immediately following paragraph 29 of your Complaint.

**RESPONSE:**    When Hyundai unlawfully terminated Dees, it refused to allow Dees to collect his personal belongings from his locker, even under supervision. Therefore, Hyundai exercised dominion and control over Dees' personal belongings in his locker at Hyundai, and Dees personal belongings were confiscated by Hyundai. Dees' personal belongings included notes regarding the pattern of harassment engaged in by Hyundai through Hughes, Prater and Applegate during Dees' tenure as an employee at Hyundai. Dees demands the production of these documents by Hyundai.


_____
JERRY LEON DEES, JR.



STATE OF ALABAMA

COUNTY OF _____

    Before me, the undersigned Notary Public in and for the State of Alabama, personally appeared JERRY LEON DEES, JR., whose name is signed to the foregoing pleading, and who is known to me, being sworn, acknowledged that he, having been informed of the contents thereof, voluntarily executed and delivered the same on this date.

    Given under my hand and official seal this the _____ day of August, 2007.



_____
NOTARY PUBLIC

My Commission Expires:_____

- 8 -

As to objections:

Jeffrey R. Sport (SPORJ5390)
Vincent F. Kilborn, III (KILBV4484)
David A. McDonald (MCDOD5329)
W. Perry Hall (HALLW9043)

OF COUNSEL:

KILBORN, ROEBUCK & McDONALD
1810 Old Government Street
Post Office Box 66710
Mobile, Alabama 36660
Telephone: (251) 479-9010
Fax: (251) 479-6747
E-mail: vfk@krmlaw.us
E-mail: dam@krmlaw.us
E-mail: wph@krmlaw.us
E-mail: jeff.sport@sportlaw.us

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I do hereby certify that I have on the 3rd day of August, 2007, filed the foregoing pleading with opposing counsel by placing a copy of same in the United States mail, postage pre-paid:

J. Trent Scofield, Esq.
T. Scott Kelly, Esq.
OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, AL 35203-2118

Matthew K. Johnson
OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
P.O. Box 2757
Greenville, SC 29602

COUNSEL

- 10 -

# Exhibit E

*Jerry Leon Dees, Jr., Plaintiff v. Hyundai Motor Manufacturing Alabama, LLC and Hyundai Motor America, Inc., Defendants*

## DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFF'S EVIDENTIARY SUBMISSION IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**IN THE UNITED STATES DISTRICT COURT**
FOR THE MIDDLE DISTRICT OF ALABAMA

JERRY LEON DEES, JR.,                        *
                                             *
          Plaintiff,                         *
                                             *
Vs.                                          *          **CASE NO.**
                                             *    **2:07-cv-00306-MHT-CSC**
HYUNDAI MOTOR MANUFACTURING                  *
ALABAMA, LLC, and HYUNDAI                    *
MOTOR AMERICA, INC.,                         *
                                             *
          Defendants.                        *


## DEES' RESPONSES TO HMMA'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF

Comes now the Plaintiff, Jerry Leon Dees, Jr. ("Dees"), by and through its counsel of record, and responds to Hyundai Motor Manufacturing Alabama, LLC's ("HMMA") First Request for Production to Plaintiff as follows:


1.      Please produce copies of any and all documents identified in response to Defendant's interrogatories or which are in any way relevant or responsive to Defendant's interrogatories.

**RESPONSE:**  Dees refers to documents produced in his Initial Disclosures, and to the document Bates numbered DEES000316. Dees also states that the notes left in his locker that were included in Dees' personal belongings that were converted by Hyundai detailed the pattern of extreme and outrageous harassment perpetrated on Dees by Hyundai, would be response to some of Defendant's interrogatories. Dees demands that HMMA produce these notes.

2.      Please produce any document referred to or consulted for the purpose of answering any interrogatory or document request in this case.

- 1 -

**RESPONSE:** Dees refers to documents produced in his Initial Disclosures, as well as documents Bates numbered DEES000296-317 produced herewith.

3.    Please produce any document that may evidence, support, corroborate, or dispute all or part of any defense asserted by the Defendants in this case.

**RESPONSE:** Dees refers the notes left in his locker that were included in Dees' personal belongings that were converted by Hyundai detailed the pattern of extreme and outrageous harassment perpetrated on Dees by Hyundai. Dees demands that HMMA produce these notes.

4.    Please produce any document in your possession concerning Defendant HMMA, including, but not limited to, your employment with, or termination from, Defendant HMMA.

**RESPONSE:** Dees refers to documents produced in his Initial Disclosures.

5.    Please produce copies of all written documents obtained in any way from Defendant HMMA's computers, files, or past or present employees, that are relevant to the claims and allegations of your Complaint or the defenses asserted by Defendant HMMA.

**RESPONSE:** Dees refers to documents produced in his Initial Disclosures. Dees also states that the notes left in his locker that were included in Dees' personal belongings that were converted by Hyundai detailed the pattern of extreme and outrageous harassment perpetrated on Dees by Hyundai, would be response to some of Defendant's interrogatories. Dees demands that HMMA produce these notes.

6.    Please produce any correspondence, memoranda, or other written documents provided to or received from Defendant.

**RESPONSE:** Dees refers to documents produced in his Initial Disclosures.

- 2 -

7.    Please produce copies of any and all medical records and/or medical bills pertaining to your injuries and/or damages in your Complaint.

**RESPONSE:**  No documents.

8.    Please produce any and all medical records and/or medical bills related to your physical, mental, or emotional condition for the last five (5) years.

**RESPONSE:**  Dees objects to this request to the extent that it requests medical records and medical bills unrelated, and therefore irrelevant, to the injuries claimed in this case. Dees further incorporates his response to Request No. 7 above.

9.    Please produce any documents concerning your service in the Alabama National Guard and/or your service in any other branch or unit of the United States uniformed services as defined in 38 U.S.C. § 4303.

**RESPONSE:**   Dees refers to documents produced in his Initial Disclosures. Additionally, Dees refers to documents Bates numbered DEES000296-299 produced simultaneously with these responses.

10.    Please produce any documents provided to or any statements made to the Department of Labor, Veterans' Employment and Training Service, or any other similar administrative agency by you.

**RESPONSE:**  See document produced Bates numbered DEES000317.

11.    Please produce any documents supporting, evidencing, or corroborating any claim for damages you are making in this case.

**RESPONSE:**  Dees refers to documents produced in his Initial Disclosures. Dees also refers to documents Bates numbered DEES000300-315 produced simultaneously with these responses.

12.     Please produce any documents supporting, evidencing, or corroborating any efforts you have made to mitigate your damages in this case.

**RESPONSE:** Dees refers to documents produced in his Initial Disclosures. Dees also refers to documents Bates numbered DEES000300-315 produced simultaneously with these responses.

13.     Please produce a copy of any resume you have prepared in the three (3) years immediately preceding the filing of your Complaint and since the filing of your Complaint through the present.

**RESPONSE:** No documents.

14.     Please produce any checks, pay stubs, check ledgers, deposit slips, W-2 forms, and any other documents evidencing or showing income, earnings, or benefits from any employer (other than Defendant HMMA) or from any other source, for the three (3) years immediately preceding the filing of your Complaint and since the filing of your Complaint through the present.

**RESPONSE:** See response to Request No. 15 below.

15.     Please produce copies of your state and federal income tax returns, together with all attachments (including all W-2 forms) for the three (3) years immediately preceding the filing of your Complaint and since the filing of your Complaint through the present. Also, please produce documentation of earnings for the current year by way of pay stubs, cancelled checks, etc.

**RESPONSE:** Dees' 2006 tax returns have previously been produced at Bates No.'s DEES000066-88. Dees 2007 earnings to date are reflected in documents Bates No.'s DEES000300-315. Dees' tax returns for 2004 and 2005 will be produced when they are located.

- 4 -

_____

JERRY LEON DEES, JR.


STATE OF ALABAMA

COUNTY OF _____

Before me, the undersigned Notary Public in and for the State of Alabama, personally appeared JERRY LEON DEES, JR., whose name is signed to the foregoing pleading, and who is known to me, being sworn, acknowledged that he, having been informed of the contents thereof, voluntarily executed and delivered the same on this date.

Given under my hand and official seal this the _____ day of August, 2007.


_____
NOTARY PUBLIC

My Commission Expires:_____

As to objections:

Jeffrey R. Sport (SPORJ5390)
Vincent F. Kilborn, III (KILBV4484)
David A. McDonald (MCDOD5329)
W. Perry Hall (HALLW9043)

OF COUNSEL:

KILBORN, ROEBUCK & McDONALD
1810 Old Government Street
Post Office Box 66710
Mobile, Alabama 36660
Telephone: (251) 479-9010
Fax: (251) 479-6747
E-mail: vfk@krmlaw.us
E-mail: dam@krmlaw.us
E-mail: wph@krmlaw.us
E-mail: jeff.sport@sportlaw.us

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I do hereby certify that I have on the 3rd day of August, 2007, filed the foregoing pleading with opposing counsel by United States mail, postage pre-paid, at the address shown below:

J. Trent Scofield, Esq.
T. Scott Kelly, Esq.
OGLETREE, DEAKINS, NASH,
    SMOAK & STEWART, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, AL 35203-2118

Matthew K. Johnson
OGLETREE, DEAKINS, NASH,
    SMOAK & STEWART, P.C.
P.O. Box 2757
Greenville, SC 29602

COUNSEL