IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JERRY LEON DEES, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO. 2:07-CV-306-MHT |
| | ) | (WO) |
| HYUNDAI MOTOR MANUFACTURING | ) | |
| ALABAMA, LLC, *et al*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

A jury ought to know about any mental health issues that would compromise a witness's ability to perceive and recall events at the time the crime occurred. *See, e.g., United States v. Partin*, 493 F.2d 750, 762 (5th Cir. 1974) ("It is just as reasonable that a jury be informed of a witness's mental incapacity at a time about which he proposes to testify as it would be for the jury to know that he then suffered an impairment of sight or hearing."); *see also* FED. R. EVID. 601. In this case, Hyundai Motor Manufacturing Alabama, LLC (HMMA) contends that the plaintiff was fired because he was sleeping on the job. The employee, to whom the court will refer in this order only as JB, who saw the plaintiff sleeping was later found to have a drug and alcohol abuse problem.[1] The plaintiff knows all about that; JB testified about it in his deposition. The plaintiff now

---

[1] According to HMMA's brief in support of its motion for summary judgment, JB observed Dees sleeping at approximately 1:00 a.m. on February 14, 2007. JB was drug tested in late March 2007 as part of treatment for a work related, minor injury. JB tested positive for drugs and alcohol resulting in employer mandated substance abuse treatment and a period of random drug testing thereafter.

wants the medical records in the possession of Industrial Case Management, Inc. (ICM) which runs the medical clinic at HMMA's manufacturing plant. In response to the plaintiff's subpoena, ICM filed a motion to quash. (doc. # 92).

The resolution of that motion is what is immediately before the court. But before addressing the legal issues the motion raises, the court needs to briefly explain some procedural history. On December 4, 2007, two non-parties filed a motion to quash (doc. # 61) a subpoena issued by the plaintiff seeking JB's medical records relating to his substance abuse treatment. One of those non-parties subsequently filed a second motion to quash (doc. # 66), and so did HMMA. (doc. # 76) The court granted those motions (doc. # 86). The court concluded that the records and information which the plaintiff wanted were privileged, *see Jaffee v. Redmond*, 518 U.S. 1 (1996), and that JB had not waived the privilege.

Pursuant to 28 U.S.C. § 636(b)(1)(A), the plaintiff objected. (doc. # 91) In reviewing the objections and related filings by the defendants, the court noted that the positions of the parties were premised on factual assertions about the nature and function of ICM. That led the court to set a hearing and argument on February 6, 2008, affording the parties an opportunity to present evidence about what ICM did in relation to JB. Unfortunately, ICM's medical director could not be present for the hearing, and the only witness was one of HMMA's managers responsible for general affairs and safety. Part of his job is to "oversee" ICM's operation.

At any rate, the facts show that ICM is a medical clinic staffed by a physician

medical director, three nurse practitioners, 2 nurses and 3 medical assistants. According to the testimony, HMMA does not have access to medical records maintained by ICM. At the same time, however, ICM does inform HMMA about positive drug tests (and presumably about any other medical problems which affect work safety). ICM also tendered to the court JB's records for an *in camera* review. As all of this suggests, the objections and ICM's motion to quash raise essentially the same issue which the court will revisit: Whether JB's medical records about his substance abuse and subsequent treatment are subject to discovery by the plaintiff? The remainder of this order is devoted to that issue.

The facts show and the court finds that ICM is a medical services provider which maintains medical records about HMMA employees. Earlier, relying on *Jaffee v. Redmond*, 518 U.S. 1 (1996), the court concluded that JB's medical records were protected from disclosure because the information in those records was protected by the psychotherapist privilege. The plaintiff argued then and now that JB waived his privilege. As explained already, ICM produced JB's records for the court's *in camera* review.

In those records are three release forms. Two are ICM's forms labeled "Patient Authorization for Use and/or Disclosure of Protected Health Information." These forms authorize ICM to release JB's information to other health care providers. While generally this type of release by one health care provider to another hardly constitutes a waiver of the privilege, the form also contains this: "I understand that the health information to be

release may be subject to re-disclosure by the recipient of the health information and no longer protected by the federal Privacy Rules." The third release form is an American Behavioral HIPAA "Authorization for Release of Protected Health Information" form. It gives American Behavioral Benefits Managers, Inc. and its employees and agents authority to disclose JB's health information to "HYUNDAI." This form contains the identical re-disclosure language quoted above. It does not appear that American Behavorial provided treatment to JB; rather, he obtained treatment through Alabama Psychiatric Services.

At best, these release forms are equivocal regarding the health care information to which they apply. These release forms certainly do not cover the records of the substance abuse treatment provided to JB by Alabama Psychiatric Services. Except for waiver, the psychotherapist privilege recognized in *Jaffee* is absolute in the sense that it is not subject to some balancing test. *Jaffee*, 518 U.S. at 17-18 (holding that applying a balancing test creating uncertainty undermines the privilege). Based on these forms, the court cannot conclude that JB has waived the privilege attending the information.

In short, the court concludes that JB has not waived the privilege which protects disclosure of the records of his substance abuse treatment; therefore, *Jaffee* precludes their disclosure.[2] Accordingly, it is

---

[2]Notwithstanding *United States v. Partin*, 493 F.2d 750, 762 (5th Cir.1974), it is not at all clear that evidence about JB's acuity of observation is relevant if at the time he reported the plaintiff's sleeping Hyundai was unaware of his substance abuse problem and reasonably believed the report. An employer's mistaken belief in a legitimate reason for an adverse action is not a violation of Title VII. *See Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000)("A plaintiff must show not merely that the

ORDERED that the motion to quash (doc. # 92) be and is hereby GRANTED.

Done this 17th day of March, 2008.

        /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE

---

defendant's employment decisions were mistaken, but that they were in fact motivated by sex."); *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1339 (11th Cir. 2000) ("A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race."); *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th Cir. 1996) ("Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action.") (internal marks and citations omitted).