**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **JERRY LEON DEES, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **v.** | ) | **2:07-cv-00306-MHT-CSC** |
| | ) | |
| **HYUNDAI MOTOR MANUFACTURING** | ) | |
| **ALABAMA, LLC, and HYUNDAI MOTOR** | ) | |
| **AMERICA, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PARTIES' JOINT REPORT REGARDING CONFERENCE**
**ON SELECTED MOTIONS AND OBJECTIONS**

Plaintiff, Jerry Leon Dees, Jr. (hereinafter "Plaintiff"), and Defendants Hyundai Motor Manufacturing Alabama, LLC, and Hyundai Motor America, Inc. (hereinafter "Defendants"), through undersigned counsel, jointly file this Report regarding their conference and their respective positions regarding certain motions and objections currently pending before the Court. The parties further state:

**I.      PROCEDURAL HISTORY**

On April 3, 2008, the Court entered an Order (Doc. 166) that instructed counsel for the parties to meet and confer regarding five pending motions in limine and four pre-trial objections pleadings.  On April 8, 2008, counsel for the parties met and conferred in a mutual, good faith attempt to resolve the motions and objections.  This joint report follows and sets forth:  (a) the results of the conference as to each motion/objection, and (b) the parties' respective positions where a motion/objection remains unresolved.[1]

---

[1] Counsel for the parties agree that neither side waives the right to timely submit additional evidence and/or authorities related to the subjects in dispute and may do so by filing a traditional pleading for the Court's consideration.

## II.    SELECTED MOTIONS IN LIMINE

### A.    Defendants' Motion in Limine and Supporting Authorities Regarding Opinion Testimony by Plaintiff and Others (Doc. 137).

The parties were unable to resolve their differences regarding this motion in limine and therefore set forth their respective positions below.

#### 1.    Movant's Position:

[Pursuant to Fed. R. Civ. P. 10 (c), Defendants adopt and incorporate by reference the facts and authorities which they submitted in connection with the pending motion in limine. (See Doc. 137). Defendants' position may be summarized as follows. Any proffered testimony regarding any witnesses' subjective belief that Plaintiff was harassed or discriminated against based on his military status lacks requisite foundation and is due to be excluded as unfairly prejudicial under Rule 403. Further, any proffered testimony that others were also discriminated against (i.e., "me too" testimony) is irrelevant and also prejudicial and subject to exclusion under Rule 401-403.

Finally, any anticipated testimony from Plaintiff's military colleagues regarding the quality of his military service and/or his character has no relevance to Plaintiff's claims asserted and would serve no purpose other than to inflame the passion of the jury. This is especially true in light of the fact that the parties have stipulated Plaintiff is a protected class member under USERRA. Such proffered testimony should be excluded under Rules 401-403.

#### 2.    Non-Movant's Position:

Plaintiff objects to Defendants' Motion in Limine regarding Opinion Testimony by Plaintiff and Others (Doc. 137), stating as follows:

**Opinion Testimony**

Rule 701, in pertinent part, allows a lay witness to offer opinion testimony when it is: "(a) rationally based on the perception of the witness, (and) (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue…" Fed. R. Evid. 701; *Cartel Asset Management v. Ocwen Financial Corp.*, 2007 WL 2733725 **20 (10th Cir. Sept. 18, 2007); *Gossett v. Oklahoma ex rel. Board of Regents for Langston Univ.*, 245 F.3d 1172, 1179 (10th Cir. 2001); *U.S. v. Hoffner*, 777 F.2d 1423, 1425 (10th Cir. 1985). "The perception requirement stems from F.R.E. 602 which requires a lay witness to have first-hand knowledge of the events he is testifying about so as to present only the most accurate information to the finder of fact." *Cartel*, 2007 WL 2733725 at **20; *Hoffner*, 777 F.2d at 1425. "Courts generally hold admissible under Rule 701 … lay opinion testimony in discrimination cases when given by a person whose position with the defendant entity provides the opportunity to personally observe and experience the defendant's policies and practices." *Gossett*, 245 F.3d at 1179, citing as examples *Hansard v. Pepsi-Cola Metro. Bottling Co.*, 865 F.2d 1461, 1466-67 (5th Cir. 1989) ("Courts often have permitted lay witnesses to express opinions about the motivation or intent of a particular person if the witness has an adequate opportunity to observe the underlying circumstances.") (citing cases); *Hoffner*, 777 F.2d at 1425 ("[C]ourts have been very liberal in admitting witnesses' testimony as to another's state of mind if the witness has had a sufficient opportunity to observe the accused so as to draw a rational conclusion about the intent of the accused."); *U.S. v. Freeman*, 514 F.2d 1184, 1191 (10th Cir. 1975) (lay opinion testimony of employee admitted as "a shorthand rendition of his knowledge of the total situation and the collective facts").

Here, statements in the Declarations presented by Plaintiff in opposition to Defendants' motion for summary judgment are based on the witnesses' own personal knowledge and

observations based on working with Dees and observing HMMA's treatment of Dees. These statements are clearly admissible, and Defendants seek to exclude them despite the great weight of authority.

What's more, the cases cited by Defendants are easily distinguishable. In *Aramburu v. Boeing Co.*, 112 F.3d 1398 (10th Cir. 1997), the court, after analyzing the evidence presented by the claimant, found that the evidence did not present allegations of similar discriminatory conduct (discrimination based on national origin) complained of by the claimant. *Aramburu*, 112 F.3d at 1408. Similarly, in *Little v. Republic Refining Co.*, 924 F.2d 93 (5th Cir. 1991), the court found that Little's evidence supporting his position that Republic's reasons for firing him were pretextual, did not rise to the level that could justifiably lead reasonable jurors to conclude Republic discharged him because of his age. For example, one of Little's coworkers testified that Little's job experience intimidated the supervisor that fired Little. In analyzing this statement, the court found that it did not rise to an allegation that Republic fired Little <u>because of his age</u> since intimidation because of experience cannot be equated with discrimination because of age. *Little*, 924 F.2d at 96. Whereas in the instant case, the observations made by witnesses indicated HMMA treated Dees badly <u>because of his military service</u>.

Finally, in *Trotter v. Todd*, 719 F.2d 346 (10th Cir. 1983), the trial court excluded the testimony of a lay witness of the discriminatory motive of defendants where the plaintiff claimed that he was not promoted because of his race, but plaintiff had severely failed an examination necessary for plaintiff's promotion. *Trotter*, 719 F.2d at 348-49.

### "Me Too" Testimony

Defendants also move to exclude any "me too" testimony by Plaintiff's witnesses. [Doc. 137, ¶¶ 11-14] Plaintiff is unaware of any "me too" testimony where any Plaintiff's witness

intends to proffer testimony that he was also discriminated against in support of Plaintiff's claims of discrimination in violation of USERRA, nor have Defendants cited any in their motion. To the extent, however, that Defendants characterize any statements in the Declarations submitted by Plaintiff in support of his opposition to Defendants' motion for summary judgment, or any deposition testimony, as "me too" statements, Plaintiff objects to each and every such characterization.

### Testimony by Military Colleagues

Defendants also seek to exclude testimony by Dees' "military colleagues" regarding whether Dees would be likely to fall asleep on the job. [Doc. 137, ¶ 15] In so doing, Defendants claim that such testimony is irrelevant and unfairly prejudicial. [*Id.*, ¶ 16] Defendants, however, have put the likelihood of Dees falling asleep on the job at issue by firing him for allegedly doing just that. "[O]therwise inadmissible evidence may be rendered admissible when it is offered to rebut a factual contention placed in issue by the opposing party." *Ricciardi v. Bentley*, 2002 WL 1880241, **1 (9th Cir. Aug. 14, 2002).

Defendants claim to have created a "Chinese wall" that supposedly separates what the Termination Committee knew and the actual truth in an attempt to cloak the actions of the Termination Committee with "good faith." Yet, the root of this case is the allegation of Dees sleeping, occurring after months of harassment by HMMA because of his military obligations, and the subsequent sham investigation that completely ignored Shane Archer, Dees' coworker **who was with Dees all night the night of February 13, 2007 except for five minutes**, who submitted sworn testimony that Dees was not sleeping that night.

Archer's sworn testimony corroborates Dees' own assertion that he was not asleep, and Dees is entitled to present additional evidence tending to show that he was not asleep. Such

additional evidence is certainly relevant to Dees' claims, and is not unfairly prejudicial given the circumstances under which Dees' was terminated by Defendants.

Additionally, evidence provided by Dees' "military colleagues" rises to the level of habit evidence of Fed. R. Evid. Rule 406, which states:

> **Evidence of the habit of a person** or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, **is relevant to prove that the conduct of the person** or organization on a particular occasion **was in conformity with the habit** or routine practice.

(emphasis added).

Dees' "military colleagues" have personal knowledge that Dees never falls asleep on duty, as well as the training Dees received to prevent sleeping on duty. This testimony is relevant, is corroborative of the other evidence cited above, and is not unfairly prejudicial to Defendants.

The hundreds of nights Dees was on duty in the military, and the hundreds of nights Dees worked in industry, without falling asleep establish a habit of not sleeping on duty, and is analogous to the facts presented in *Babcock v. General Motors Corp.*, 299 F.3d 60 (1st Cir. 2002). In *Babcock*, the executrix of a decedent's estate sued General Motors ("GM") for negligence and strict liability relating to the death of the decedent resulting from a single-vehicle accident in a GM vehicle. *Babcock*, 299 F.3d at 62. GM contended there was a lack of evidence that Babcock had been wearing his seat belt at the time of the accident. *Id.* at 66. The trial court admitted testimony relating to Babcock's habit of always wearing a seatbelt, introduced through testimony of friends and relatives that frequently rode with Babcock. Upon a jury verdict against GM, GM appealed. *Id.* The First Circuit held that "It is well-established that habit evidence may be used to prove a person's conduct on a particular occasion…" *Id.*

Here, Dees offers testimony of not only his military brethren, but his industry coworkers as well, that he did not fall asleep on duty. As such, it is completely analogous to *Babcock*, and is, therefore, admissible. Defendants' motion due to be denied.

### B. Defendants' Motion in Limine and Supporting Authorities Regarding Their Financial Condition (Doc. 141).

The parties were unable to resolve their differences regarding this motion in limine and therefore set forth their respective positions below.

### 1. Movant's Position:

Pursuant to Fed. R. Civ. P. 10 (c), Defendants adopt and incorporate by reference the facts and authorities which they submitted in connection with the pending motion in limine. (See Doc. 141). Defendants' position may be summarized as follows. Any proffered testimony regarding the alleged financial condition of Defendants HMMA and HMA, or Hyundai Motor Company ("HMC") is irrelevant according to the defined remedial structure of USERRA.[2] Therefore, the financial well-being of these organizations is due to be excluded under Rules 401-402. Because Defendants' financial condition is totally unrelated to any issue in this lawsuit, its only purpose would be to inflame the jury if asked to calculate damages. This would create unfair prejudice and should be excluded pursuant to Rule 403.

### 2. Non-Movant's Position:

Plaintiff objects to Defendants' Motion in Limine regarding testimony of Defendants' financial condition (Doc. 141), stating as follows:

Defendants primarily base their argument for a sweeping exclusion of all evidence relating to their financial condition on their contention that punitive damages are unavailable in

---

[2] It is well-settled that USERRA does not authorize punitive damages. See, e.g., Vander Wal v. Sykes Enters., 377 F. Supp. 2d 738, 746 (D.N.D. 2005).

this action. They are wrong on two counts. First, punitive damages are available for Dees' conversion claim. See, e.g., Friendly Credit Union v. Campbell, 579 So. 2d 1288 (Ala. 1991).

Second, as many courts have found, USERRA liquidated damages are punitive in nature. For example, in Maher v. City of Chicago, the court first noted that the Supreme Court has held that Congress intended for double damage liquidated liability for willful violations of the ADEA to be punitive in nature. 463 F. Supp. 2d 837, 841 (N.D. Ill. 2006) (citing TWA v. Thurston, 469 U.S. 111, 119 (1985)). Finding there to be "no principled distinction between the ADEA's double damage remedy and that in USERRA," the court said "[i]f the former is punitive, so too is the latter." Id. See also, Duarte v. Agilent Techs., Inc., 366 F. Supp. 2d 1036, 1038 (D. Colo. 2005) (making same analysis based on TWA and concluding USERRA liquidated damages are "punitive in nature"); Schmauch v. Honda of Am. Mfg., Inc., 311 F. Supp. 2d 631, 636 (S.D. Ohio 2003) ("USERRA's provision for liquidated damages operates to punish the defendant"); Woodard v. New York Health & Hospitals Corp., No. CV-04-5297, 2008 U.S. Dist. LEXIS 20794, *64 (E.D.N.Y. Mar. 17, 2008) (USERRA liquidated damages operate "to punish an employer's willful misconduct").

Hyundai's attempted wholesale equation of USERRA's remedial structure to the FLSA's fails. In Snapp v. Unlimited Concepts, Inc., 208 F.3d 928 (11th Cir. 2000), which Hyundai cites, the court pointed out that ADEA's liquidated damages provision's requirement of "willfulness," as USERRA in the case at bar, serves a punitive purpose, whereas the FLSA liquidated damages award "does not cover the punitive component." 208 F.3d at 938-39. See also, Lindsey v. Am. Cast Iron Pipe Co., 810 F.2d 1094, 1102 (11th Cir. 1987) ("ADEA liquidated damages awards punish and deter violators, while FLSA liquidated damages merely compensate for damages that would be difficult to calculate").

8

Evidence of the Defendants' financial condition will be relevant to punitive damages on Dees' conversion claim and his USERRA claim for punitive liquidated damages. The evidence will also be relevant to Dees' "joint employer," "alter ego" claim. As an example, the Defendants' consolidated tax returns show that HMMA is disregarded as a separate entity.

Contrary to Hyundai's argument, this evidence will not be unfairly prejudicial under Fed. R. Evid. 403. For the Rule 403 argument, Hyundai quotes the Supreme Court's opinion in Newport v. Fact Concerts, Inc., 453 U.S. 247, 270-271 (1981) [Defs.' Mot., p. 4, Doc. 141], in pertinent part as follows: "[E]vidence of a [municipality's wealth, inasmuch as it has unlimited taxing power], may have a prejudicial impact...." The first part of that sentence shows the misleading nature of Hyundai's parenthetical alteration, to-wit: "Because **evidence of a tortfeasor's *wealth is traditionally admissible* as a measure of the amount of punitive damages that should be awarded**, the **unlimited taxing power** of a municipality may have a prejudicial impact...." Newport, 453 U.S. at 270 (emphasis added). Thus, it was not the city's wealth that the Court found so prejudicial but rather its *unlimited* taxing power; the Court acknowledged, contrary to Hyundai's implication, that **financial condition evidence** is **traditionally admissible** in a case involving punitive damages.

Many courts have found that a defendant's financial condition is relevant to punitive damages. For example, one court noted that on a § 1981 claim for punitive damages, "a jury can and should consider the defendant's financial means." Skaggs v. Hartford Fin. Group, Inc., No. 1999-CV-3306, 2001 U.S. Dist. LEXIS 20351 (E.D. Pa. Sept. 28, 2001). See also Woods-Drake v. Lundy, 667 F.2d 1198, 1203 n. 9 (5th Cir. 1982) (defendant's net worth an important factor for the jury to consider in determining amount of punitive damages); Winters v. Union Texas Petroleum Corp., No. 90-2269, 1992 U.S. App. LEXIS 19168, *9 (10th Cir. Aug. 17, 1992)

("financial condition evidence is relevant because punitive damages must be sufficient to alter conduct for the better"); Lane v. Capital Acquisitions, 242 F.R.D. 667, 669 (S.D. Fla. 2005) ("financial records . . . are relevant to the issue of punitive damages"); State of Wisc. Inv. Bd. v. Plantation Square Assocs., Ltd., 761 F. Supp. 1569, 1577 (S.D. Fla. 1991) ("the degree of punishment or deterrence resulting from a [punitive] judgment is to some extent in proportion to the means of the guilty person") (quoting Restatement (Second) of Torts § 908(2), Cmt. e).

The only other ruling cited by Hyundai for the "unfairly prejudicial" argument is clearly distinguishable. In St. Cyr v. Flying J Inc., 2007 WL 2696791, *2 (M.D. Fla. Sept. 12, 2007), the court specifically prefaced its ruling by saying that "punitive damages are not an issue in this case."

In short, Defendants seek a blanket order precluding any evidence, comments, testimony or argument "relating to [their] financial condition." [Mot., p. 5]. This type of broad-based motion in limine has been frowned upon by federal courts. "Courts . . . are generally reluctant to grant broad exclusions of evidence in limine, because 'a court is almost always better situated during the actual trial to assess the value and utility of evidence.'" Tuttle v. Tyco Elecs. Installation Servs., Inc., No. 2:06-cv-581, 2008 U.S. Dist. LEXIS 12307, *2-3 (S.D. Ohio Feb. 7, 2008) (quoting Koch v. Koch Indus., Inc., 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998)). Accord, Hull v. Ford, 2008 U.S. Dist. LEXIS 3686, *2-3, No. C-05-43 (S.D. Tex. Jan. 17, 2008).

In fact, one federal court denied an **identical motion to Hyundai's** (to "exclude all 'evidence of . . . financial condition") because the motion lacked "'the necessary specificity with respect to the evidence to be excluded [and was] too sweeping in scope to be decided in limine.'" Baxter Diagnostics, Inc. v. Novatek Med., Inc., No. 94 Civ. 5520, 1998 U.S. Dist. LEXIS 15093 (S.D.N.Y. Sept. 25, 1998) (quoting Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group, 937 F.

10

Supp. 276, 287 (S.D.N.Y. 1996)) (the court made this ruling despite the fact that in the same order it also ruled that punitive damages were not available).

The Defendants' motion in limine regarding their financial condition is due to be denied.

**C.    Defendants' Motion in Limine and Support Authorities to Exclude Testimony Concerning General Allegations of Bad Corporate Conduct (Doc. 143).**

The parties were unable to resolve their differences regarding this motion in limine and therefore set forth their respective positions below.

**1.    Movant's Position:**

Pursuant to Fed. R. Civ. P. 10 (c), Defendants adopt and incorporate by reference the facts and authorities which they submitted in connection with the pending motion in limine. (See Doc. 143). Defendants' position may be summarized as follows. Any proffered testimony regarding alleged bad conduct by corporate officers or entities that is not directly relevant to Plaintiff's allegations should be excluded according to the applicable rules of evidence. The introduction of such testimony serves no purpose other than to confuse the issues and mislead the jury. Such testimony, if allowed, will also unfairly prejudice Defendants by requiring them to rebut improper inferences which may reasonably be drawn from such questioning. Further, such testimony calls into question the reputation and/or character traits regarding individuals and alleged wrongs or acts that have no relevance to Plaintiff's claims alleged in this matter. Therefore, such testimony should be excluded pursuant to Rules 401-403, as well as Rule 608.

2.   **Non-Movant's Position:**

Plaintiff objects to Defendants' Motion in Limine regarding testimony of general allegations of bad corporate conduct (Doc. 143), stating as follows:

In short, Hyundai seeks to exclude, under Fed. R. Evid. 401-404 and 608, "[a]ny evidence of character traits, morality, or reputation of [Defendants], or existing or former employees or representatives of [Defendants], or any other corporate entity..., or any reference to the reputation of such individuals for having such character traits, including evidence of other alleged wrongs or acts not relevant to the claims in this case," and "global references to the corporate character, morality, or reputation of [Defendants] as a whole...." [Mot., p. 3, ¶¶ 5 & 6].

Contrary to Hyundai's arguments, Dees does not seek to introduce any evidence for an impermissible purpose under Rule 404 or Rule 608 or that would violate Rule 403. Depending on how the trial develops, any such evidence will or may be relevant and admissible on the issues of Hyundai's intent, motive and knowledge (all permissible purposes under Rule 404), as well as Rule 608 impeachment, relating to or surrounding:

1) Plaintiff's claim that his military status was a **motivating** factor in his termination;

2) Plaintiff's claim that Defendants **willfully** violated USERRA, i.e., whether Hyundai "**knew** its conduct was prohibited or showed **reckless disregard** for whether its conduct was prohibited by the Act." Stanfield v. Answering Serv., Inc., 867 F.2d 1290, 1296 (11th Cir. 1989) (interpreting same "willful" violation provision in ADEA) (emphasis added).

3) Defendants' defense that its termination of Plaintiff was based on their "**good faith** assessment of Plaintiff's performance and/or misconduct and was **not based upon any unlawful reason**." [HMMA's Answer, ¶ 34] (emphasis added).

4) Defendants' defense that their termination of Plaintiff was "**motivated by legitimate, non-discriminatory and non-retaliatory reasons** unrelated to Plaintiff's uniformed service." [*Id.*, ¶ 35] (emphasis added).

5)      Defendants' defense that Dees' "uniformed service was **not a motivating factor** for" their termination of Dees. [*Id.*, ¶ 36] (emphasis added).

6)      Defendants' defense that their conduct toward "Plaintiff was at all times **in good faith and was not willful, intentional or discriminatory**."  [*Id.*, ¶ 37] (emphasis added).

7)      Defendants' defense that they "maintained and enforced policies consistent with USERRA."  [*Id.*, ¶ 38] (emphasis added).

8)      Plaintiff's rebuttal that Defendants' reason for terminating Dees was a mere pretext, "that its explanation is **false or unworthy or credence**."  Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 & 147 (2000)) (emphasis added).

9)      Dees' claim for punitive damages for his conversion claim requiring a showing of **willful and/or intentional** acts by defendants.  See Lyons v. Williams, 567 So. 2d 1280 (Ala. 1990).

Indeed, Hyundai recently acknowledged the relevance of its corporate conduct and prior acts when it belatedly–on March 5, 7 weeks after the discovery deadline–disclosed 2 of its employees as having knowledge about a video Hyundai prepared for Veterans' Day and "the steps taken by [Hyundai] to support members of the military." [Defs.' Third Supplemented Initial Disclosures].   At the same time, Hyundai also disclosed the following documents, presumably as evidence of Hyundai's good corporate character: "**Toys for Tots** support documents and photographs"; "**Veterans Day Observance** information and photographs"; "**Memorial Day remembrance** card information"; "'Insights' newsletter, November 20, 2006" proclaiming "Hyundai Becomes **First Automaker to Join Army Partnership**...."; and "**Military Appreciation – Veterans Day recognition** list sign-up information." [*Id.*] (emphasis added).  Upon Hyundai's disclosure that it intends to call these witnesses and introduce these documents, Dees has moved to exclude this evidence as untimely proffered.

Finally, as with Hyundai's motion to exclude financial condition evidence, its motion on "bad corporate conduct" is too sweeping in scope to be ruled on in limine and Hyundai does not and cannot demonstrate that such a broad range of "evidence is **clearly inadmissible on all potential grounds**." Koch v. Koch Indus., Inc., 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998) (quoting *Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993)) (emphasis added).[1] As the court noted in Hawthorne, "[u]nless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." 831 F. Supp. at 1400. See also, Bowden v. Wal-Mart Stores, Inc., No. 99-D-880-E, 201 U.S. Dist. LEXIS 7213, *2 (M.D. Ala. Feb. 20, 2001) ("better approach [is] to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there"); Jaroslawicz v. Engelhard Corp., No. 84-3641, 1989 U.S. Dist. LEXIS 3332, *2-3 (D.N.J. Apr. 5, 1989) ("Caution [in evaluating motions in limine] is especially warranted where . . . movant seeks a decision under Rule 403 'without the benefit of the flavor of the record developed at trial.'") (quoting *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)).

The Defendants' wholesale motion in limine should be denied.

### D.     Defendants' Motion in Limine and Supporting Authorities Regarding The Alleged Drug Use of "JB," a Co-Worker (Doc. 147).

The parties were unable to resolve their differences regarding this motion in limine and therefore set forth their respective positions below.

---

[1] Accord, United States v. Ozsusamlar, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006); Tuttle v. Tyco Elecs. Installation Servs., Inc., No. 2:06-cv-581, 2008 U.S. Dist. LEXIS 12307, *2-3 (S.D. Ohio Feb. 7, 2008).

1.     **Movant's Position:**

Pursuant to Fed. R. Civ. P. 10 (c), Defendants adopt and incorporate by reference the facts and authorities which they submitted in connection with the pending motion in limine. (See Doc. 147).  Defendants' position may be summarized as follows.  Any proffered testimony regarding any alleged drug use of JB, the eyewitness to Plaintiff sleeping on the job, should be excluded based on the applicable rules of evidence.  This issue has been contested throughout this litigation.  As this Court has recognized, "[i]t is not at all clear that evidence of JB's acuity of observation is relevant if at the time he reported the plaintiff sleeping.  Hyundai was unaware of his substance abuse problem and reasonably believed the report.  An employer's mistaken belief in a legitimate reason for an adverse action is not a violation of Title VII."  Doc. 128, p. 4, n. 4.  Such testimony is clearly irrelevant to Defendants' good faith belief and therefore should be excluded under Rules 401-402.  Further, such testimony presents the imminent threat of unfair prejudice under Rule 403.  See e.g., Simco v. Ellis, 222 F. Supp. 2d 1139, 1140-41 (W.D. Ark. 2000) ("the mere mention of cocaine would inflame the jury and be extremely prejudicial to the defendant.").  Therefore, such testimony should be excluded from the trial of this matter.

2.     **Non-Movant's Position:**

Plaintiff objects to Defendants Motion in Limine regarding the alleged drug use of "JB," stating as follows:

Defendants have moved to exclude any reference to the drug use of "JB," who is the HMMA management employee that claims to have observed Dees asleep at work, and whose testimony, along with several critical factual fabrications by other members of HMMA management, is the sole evidence used to HMMA to terminate Dees.

In their motion, Defendants contend that there is "no evidence that JB had ever tested positive for drugs at any time before late-March, 2007." Defendants overlook the fact, however, that JB testified that he was diagnosed as an alcoholic during his mandatory treatment, required by HMMA as a condition of JB's continued employment after he tested positive for cocaine use. JB also testified that he was an alcoholic when he allegedly observed Dees asleep. Plaintiff also intends to elicit testimony at trial that JB showed up for work at HMMA with alcohol on his breath. JB's capacity to comprehend, remember and recall on the night he supposedly saw Dees asleep on the job is certainly relevant to JB's credibility as a witness.

Also, there is no evidence that JB passed any drug tests between his pre-employment drug test in August 2005 and his positive test in March 2007. JB admitted in his deposition that he had abused cocaine as early as ten years prior to his deposition.

More importantly, as a result of JB's positive drug test a few weeks after Dees was allegedly caught sleeping by JB, JB is now on **"conditional employment"** with HMMA. One slight mistake and HMMA can fire JB immediately. Dees believes that this **"conditional employment"**, which resulted from JB's positive drug test, and is highly relevant to JB's credibility, particularly given the exculpatory testimony of Archer, which corroborates Dees' testimony in its entirety.

Finally, admission of this evidence would not unfairly prejudice HMMA. To the contrary, excluding this evidence would unfairly prejudice Dees, because to do so would enable HMMA to present JB to the jury as a drug-free boy scout, instead of an alcoholic that also abused controlled substances. Since JB is HMMA's only witness to the events resulting in Dees' termination, presentation of all evidence impacting JB's credibility to the jury is vital to prevent Dees from being unfairly prejudiced.

16

Defendants' motion, therefore, is due to be denied.

**E.    Plaintiff's Motion in Limine to Exclude Certain of Defendants' Witnesses and Exhibits (Doc. 154).**

The parties were unable to resolve their differences regarding this motion in limine and therefore set forth their respective positions below.

**1.    Movant's Position:**

Plaintiff's position is more fully set forth in his motion (Doc. 154). In summary, the five witnesses sought to be excluded in Plaintiff's motion relate to issues that have been known throughout this case, and were disclosed by Defendants more than six weeks after the close of discovery. What's more, Defendants offered no "substantial justification" for the late disclosure. Plaintiff's decisions regarding discovery, particularly relating to which depositions to take, were based in significant part on the witnesses disclosed by Defendants who had potentially discoverable information. Plaintiff will be unfairly prejudiced by allowing these witnesses to testify. Exclusion of these witnesses is, therefore, proper. *See Heidtman v. County of El Paso*, 171 F.3d 1038, 1040 (5th Cir. 1999) (non-disclosing party offered no explanation for failure to disclose; exclusion proper).

Similarly, Defendants have listed eight new exhibits on their exhibit list (Def. Ex. 25-31 and 84) that should have been produced before the end of discovery and relate to issues that have been in contention throughout this case. As such, introduction of these exhibits unfairly prejudices Plaintiff because he has no opportunity to test the veracity of these exhibits, and question various witnesses about their contents. Since Defendants similarly offered no "substantial justification" for not disclosing the contents of these exhibits during discovery, exclusion is proper. *See Klonoski v. Mahlab*, 156 F.3d 255, 268 (1st Cir. 1998) (exclusionary

17

sanction of *Fed. R. Civ. P. 37(c)(1)* contemplates stricter adherence to discovery supplementation requirements and harsher sanctions for breaches of those requirements, and required sanction in ordinary case is mandatory preclusion).

Based on the foregoing reasons and argument, and as more fully set out in Plaintiff's motion to exclude these witnesses and exhibits not previously disclosed by Defendants, Plaintiff's motion is due to be granted.

### 2.    Non-Movant's Position:

Defendants' position is that Plaintiff is not entitled to the exclusionary relief sought in his motion in limine (Doc. 154).  Said motion can be divided into two general areas: (1) witness and (2) exhibits, and Defendants shall address each below.

- **<u>Witnesses</u>**

Plaintiff seeks to exclude the testimony of five witnesses based on the fact that said witnesses were not identified in connection with Initial Disclosures during the discovery period. Simply stated, Plaintiff's argument is incorrect.  The Court's Scheduling Order (Doc. 19) certainly does not impose the same "all or nothing" disclosure requirement regarding witnesses that Plaintiff asks the Court to adopt here.  Per the Scheduling Order, trial witnesses may be disclosed in accordance with the Witness List requirement (Doc. 19, Sec. 10), even if that disclosure occurs outside the discovery deadline.  (Doc. 19, Sec. 7).

Plaintiff's suggested authority regarding the exclusion of such witnesses is likewise misplaced.  Contrary to Plaintiff's suggestion, the requirements of Rule 26(a)(1)(A) (initial disclosures) and Rule 26(a)(3)(A) (pre-trial disclosures) are not mutually exclusive.  <u>See</u>, <u>e.g.</u>, <u>Hernandez-Torres v. Intercontinental Trading, Inc.</u>, 158 F.3d 43, 49-50 (1st Cir. 1998) ("The

district court did not err.  Federal Rule of Civil Procedure 26(a)(3) does not require disclosure of a prospective witness identity during the discovery period.").

Plaintiff challenges Brian Roby as a trial witness.  Mr. Roby was included in Defendants' last supplemented Initial Disclosures[3] as an individual with knowledge regarding Defendants' efforts to locate Daily Report documents requested by Plaintiff in connection with discovery.  In connection with Plaintiff's opposition to Defendants' motion for summary judgment, and also included in Plaintiff's section of the Pre-Trial Order, Plaintiff indicates his intent to seek sanctions against Defendants based on alleged discovery misconduct.  (See Docs. 107, 118).

Should Plaintiff intend to seek sanctions, due process requires that Defendants are entitled to present evidence to defend against such allegations.  Mr. Roby's testimony is anticipated to rebut allegations made by Plaintiff and/or his counsel regarding this issue, and Defendant's respectfully submit that he should be allowed to testify at the trial of this matter.

Plaintiff challenges Andy Dishman and Paul Dunbar as trial witnesses.  Both witnesses have been identified by Defendants as individuals who may possess knowledge regarding "the pit," a work area referenced by Plaintiff during this litigation.  Regarding Mr. Dunbar, Defendants have disclosed to Plaintiff that he can authenticate the videotape of "the pit" which Defendants have prepared in anticipation of trial.  Authentication is a necessary pre-requisite to admission of evidence  (see Rules 901-903), and Defendants anticipate Mr. Dunbar's testimony to be related to the same.  Further, to the extent Plaintiff alleges that "the pit" is a dangerous working environment, Defendants anticipate that both Mr. Dishman and Mr. Dunbar are qualified to provide rebuttal testimony.  Defendants are aware of no express obligation to

---

[3]  Defendants acknowledge this disclosure was served contemporaneously with Defendants' Witness List.

disclose rebuttal witnesses but have done so out of an abundance of caution. Plaintiff has failed to identify a compelling reason why such testimony should be excluded and therefore his objection to these witnesses should be denied.

Plaintiff also challenges Tim Haseltine and Sheron Rose as trial witnesses. Mr. Haseltine's disclosed and anticipated testimony relates to the authentication of a Veteran's Day video presentation and will be offered for that purpose. (See Rules 901-903). Therefore, Mr. Haseltine should not be excluded as a witness in this proceeding. Ms. Rose has been offered regarding corporate steps taken to recognize military service. Because Defendants anticipate that Plaintiff will accuse Defendants of military animus, Ms. Rose has been designated as a rebuttal witness to negate this inference. Again, Defendants are aware of no express obligation to disclose rebuttal witnesses but have done so out of an abundance of caution. Plaintiff has failed to identify a compelling reason why such testimony should be excluded and therefore his objection to these witnesses should be denied.

- **Exhibits**

Plaintiff also challenged a handful of Defendants' designed trial exhibits, and Defendants respond to these objections as follows. In summary, Plaintiff's "non-disclosure" objection is also misplaced as applied to Defendants' trial exhibits and should be overruled.

Defendants have listed **Exhibit 25**, a videotape of "the pit" in production. As referenced above, working conditions in "the pit" has been challenged by Plaintiff, and this videotape is offered to rebut any inference created by Plaintiff's anticipated testimony. Again, Defendants are unaware of any express obligation to disclose rebuttal evidence and have done so out at this stage in the proceeding out of an abundance of caution. Plaintiff has not articulated any

compelling reason for the exclusion of such evidence and, given its nature, such an objection should be overruled.

Defendants have listed **Exhibits 26 – 31** as documents which reference Defendants' corporate efforts to recognize military service. Defendants are unaware of <u>any</u> discovery effort which Plaintiff directed to this subject matter. Defendants anticipate that Plaintiff will attempt to introduce testimony which suggests an alleged animus that HMMA harbors against military members and the designated exhibits are offered to rebut such an inference. Again, Defendants are unaware of any express obligation to disclose rebuttal evidence and have done so out at this stage in the proceeding out of an abundance of caution. Plaintiff has not articulated any compelling reason for the exclusion of such evidence and, given its nature, such an objection should be overruled.

Defendants have listed **Exhibit 84** as a summary document pursuant to Rule 1006. This exhibit relates to hours worked by Plaintiff, a subject matter about which he presumably has personal knowledge. To the extent such a summary is offered at trial, the source documents will be made available. Based on this stipulation, Plaintiff's objection to this exhibit should be overruled.

## III.    PRE-TRIAL OBJECTIONS

### A.    Defendants' Objections to Plaintiff's Trial Witnesses (Doc. 145)

The parties report that they have reached the following agreement related to resolve a portion of the objections presented in Doc. 145. Plaintiff's counsel agrees that Christopher N. Smith, Esq. (who is listed as a "may call" witness by Plaintiff) may attend the trial of this matter without violating the rule of sequestration as the parties anticipate it will be applied in this case.

To the extent there remain issues unresolved in connection with Defendants' objections, the parties have set forth their respective positions below.

### 1.    Objecting Party's Position:

Pursuant to Federal Rule of Civil Procedure 10(c), Defendants adopt and incorporate by reference their arguments and authorities as stated in their filed objections.  (Doc. 145).  To the extent objections remain unresolved, Defendants summarize their position here.  Defendants object to either Mr. Smith or Mr. Neal being called as witnesses because as counsel employed by HMMA, neither can be compelled to violate the attorney-client communication and/or work product privileges.  Though Plaintiff is agreeable to allowing Mr. Smith to attend the trial, he has not "released" the threat of calling him as a witness.  It is Defendants' respectful position that both Mr. Smith and Mr. Neal should be excluded as potential trial witnesses who may be called to testify in this proceeding.

Defendants further object to Ronnie House because he was never timely disclosed by Plaintiff as an individual with knowledge relevant to either Plaintiff's claims or Defendants' defenses and to allow him to testify would constitute unfair surprise and undue prejudice to Defendants.  See Rule 403.

### 2.    Responding Party's Position:

Defendants object to three of Plaintiff's witnesses: Ronnie House, Richard Neal, Esq., and Christopher N. Smith, Esq. Plaintiff responds as follows:

Plaintiff has sought information throughout this case regarding other HMMA employees who have been caught sleeping on the job. Defendants objected strenuously to this request, but did initially produce files relating to two HMMA employees, Ontario King and Sharon Baker. Plaintiff subsequently filed a motion to compel Defendants to produce documents for all HMMA

employees who had been caught sleeping on the job when Defendants refused to confirm to Plaintiff verbally that Defendants' initial disclosure included all employees caught sleeping on the job as originally requested. (Doc. 90). At a hearing on Plaintiff's motion, Defendants admitted they had disclosed only those employees that had been terminated for sleeping on the job. The Court ordered Defendants to produce documentation of all HMMA employees that had been caught sleeping on the job. (Doc. 112). HMMA then disclosed one additional employee, William Sievers.

Subsequent to the close of discovery, Plaintiff learned that Ronnie House, an HMMA employee, had been caught sleeping and had not been fired. Plaintiff then listed Mr. House on his witness list. Since Defendants failed to disclose Mr. House as required under Fed. R. Civ. P. Rules 26(a) and 34, and Plaintiff learned of Mr. House independently after the close of discovery, Plaintiff is substantially justified in including Mr. House on its witness list.

Defendants also object to Richard Neal, Esq., HMMA's in-house counsel. Defendants, however, listed Mr. Neal in its own initial disclosures (and supplements thereto) as having potentially discoverable information. Further, Mr. Neal participates in every termination committee meeting. Even though Plaintiff elected not to depose Mr. Neal, it is undisputed that Mr. Neal has discoverable information regarding the operations of the termination committee. Plaintiff, therefore, is justified in listing Mr. Neal as a potential witness.

Defendants similarly object to Plaintiff listing Christopher Smith, Esq., another HMMA in-house lawyer, as a potential witness. Mr. Smith supervised the cleaning out the alleged locker contents of Plaintiff's locker that HMMA refused to let Plaintiff gather when it unceremoniously terminated him, including the production of a video to commemorate the event. This cleaning out of the locker and recording of the event occurred some seven months after Plaintiff was

23

terminated, and was not produced to the Plaintiff until his deposition in November 2007, some two months later. Plaintiff also believes that Mr. Smith has discoverable information relating to the search for missing Daily Reports. Since Mr. Smith has interjected himself into the facts relating to this case, he is properly a potential fact witness – a fact which Defendants do not deny.

Based on the foregoing, Defendants objections are due to be overruled.

**B.    Defendants' Objections to Plaintiff's Exhibit List (Doc. 146).**

The parties report that they have reached the following agreement to resolve a portion of the objections presented in Doc. 146.  Plaintiff has filed an "Amended Trial Exhibit List" (Doc. 168), which sets forth "will introduce" and "may introduce" designations.  To the extent there remain issues unresolved in connection with Defendants' objections, the parties have set forth their respective positions below.

**1.    Objecting Party's Position:**

Pursuant to Federal Rules of Civil Procedure 10(c), Defendants adopt and incorporate and incorporate by reference their arguments and authorities as stated in their filed objections. (Doc. 146).  To the extent that objections remain unresolved, Defendants summarize their position here.  Defendants specifically object to the "bulk exhibit" descriptions utilized by Plaintiff's counsel.  Counsel for the parties have pledged to continue working together to address these concerns, and Defendants suggest this is the proper approach and will better conserve the Court's resources.  Defendants also have numerous objections based on relevance.  However, those are best handled in accordance with the procedure set forth in the Scheduling Order and, if necessary, at trial.

2.    **Responding Party's Position:**

Based on the meeting between the parties on April 8, 2008, Plaintiff believes that he has resolved Defendants "global objections" in ¶¶ 1-2 of Defendants' Objections to Plaintiff's Exhibit List (Doc. 146). Also, Plaintiff believes the designation of exhibits as "will use" and "may use" as indicated in Rule 26(a)(3)(A)(iii) resolves Defendants' objections to exhibits 8-9, 17-20, and 62.

Defendants have also objected to many of Plaintiff's exhibits (Ex. 27, and 30-42) based on the alleged confidential or proprietary nature of the documents in these exhibits. Defendants also have a "global objection" relating to the introduction of these documents at trial in a manner not prescribed in the Protective Order entered into between the parties (Doc. 27). Plaintiff has and will continue to abide by the provisions of the Protective Order in this case if he used these exhibits at trial.

Also, Defendants have objected to many exhibits on relevancy, lack of foundation, and/or prejudicial grounds. These objections are more appropriately addressed at trial, where the context of how the exhibit may be used can be evaluated by the court, in light of the factual record that has developed at trial. *See  Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998) (quoting *Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993)) (emphasis added).   As the court in <u>Hawthorne</u> noted, "[u]nless evidence meets this high standard (of being inadmissible on all potential grounds), evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."  831 F. Supp. at 1400.  *See also*, *Bowden v. Wal-Mart Stores, Inc.*, No. 99-D-880-E, 2001 U.S. Dist. LEXIS 7213, *2 (M.D. Ala. Feb. 20, 2001) ("it is the better approach to

wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there").

Defendants object to exhibits 30-42 on grounds of lack of foundation. These documents, however, were produced by Defendants in response to Plaintiff's 30(b)(5) document request and relate to the relationship between HMMA and HMA. Defendants also produced witnesses who had knowledge relating to the relationship between HMMA and HMA, including subjects covered by the documents to which Defendants now object. If HMA remains a defendant at the trial of this case, these documents are properly admissible to show the extent of that relationship.

Plaintiff will withdraw the portion of Pl. Ex. 7 that is Defendants written response/objections to Plaintiff's 30(b)(5) document request. The documents produced by Defendants remaining in Pl. Ex. 7 will be segregated into sub-exhibits for ease of identification.

Defendants object to Pl. Ex. 27, HMMA organizational charts, which were produced by Defendants in discovery. Wendy Warner testified about these charts, and can provide the necessary foundation for their admissibility. Any confidentiality concerns are addressed by the Protective Order in this case.

Defendants' objections to Pl. Ex. 45 are baseless. Plaintiff testified in his deposition about his personal knowledge of this memorandum, so adequate foundation has been established. Also, the document is admissible under the business records exception to the hearsay rule, Rule 803(6).

Defendants object to Exhibit 49, the report of Plaintiff's expert, based on its motion in limine to exclude Mr. Hall's testimony. Plaintiff is filing a response in opposition to that motion contemporaneously herewith.

Defendants object to Exhibit 50 as being "not specific enough to allow Defendants to properly consider whether they have any objections thereto." (Doc. 146, ¶49). Defendants, however, had an opportunity to review the contents of Mr. Hall's records, which he produced at his deposition pursuant to a subpoena issued by Defendants. Even though Defendants declined to copy any of Mr. Hall's records, they are aware of its contents. In an effort to assuage Defendants' concerns, however, Plaintiff will supplement the description of this exhibit. To the extent Mr. Hall's records include anything that might be considered hearsay as objected to by Defendants, Mr. Hall, as an expert, can rely on hearsay if it is in a form commonly relied upon by the expert.

Defendants object to Pl. Ex. 56, Plaintiff's military honors, as being irrelevant and prejudicial. Mr. Dees is a career military man. His military career is a large measure of who he is. Plaintiff is entitled to personalize Mr. Dees to the jury. Further, many of his awards go directly to the issue of whether Plaintiff would sleep on duty, as he has been accused and fired for doing. Plaintiff has briefed its position on this issue in its response to Defendants' motion to exclude opinion testimony presented above.

Pl. Ex. 59 is directly relevant to the relationship between HMA and HMMA.

Plaintiff has withdrawn his Ex. 60 and will submit an amendment to his exhibit list.

Defendants object to Pl. Ex. 65, All HMMA Daily Reports, as not being specific, and on grounds of relevancy and hearsay. On the contrary, Defendants produced these documents only after they were demanded by Plaintiff as responsive to Plaintiff's requests for production. Defendants are intimately familiar with the contents of this exhibit. Daily reports prepared by Plaintiff would prove a key allegation by Plaintiff: Dees was assigned to clean the pit far more than any of his coworkers. This exhibit provides evidence, by the absence of all but one Daily

Report prepared by Dees, but hundreds of Daily Reports prepared by his coworkers, that HMMA has purged Dees' Daily Reports from its files, corroborating evidence that HMMA disposed of these documents after this lawsuit was filed. Plaintiff is entitled to assert that these Daily Reports, if produced, would be injurious to Defendants' case, and Plaintiff is also entitled to a jury charge to this effect. With respect to Defendants' other objections, Dees prepared his Daily Reports and testified about the general process by which they were prepared and filed. Dees has personal knowledge of these documents based on the above, and will provide the foundation necessary to introduce them into evidence at trial.

Defendants object to Pl. Ex. 66 on the grounds of relevance, unfair prejudice, and privacy concerns. The documents in this exhibit, the investigation of sexual harassment claims by Veronica Stallworth, were produced by Defendants in discovery as being responsive to Plaintiff's requests. These documents are relevant to show the seriousness HMMA affords allegations of sexual harassment as compared to allegations of harassment based on military obligations. Because of the probative value on this point, Defendants are not unfairly prejudiced. Any privacy concerns are addressed by the Protective Order in this case.

Plaintiff will withdraw Exhibit 67.

Defendants object to Pl. Ex. 68, HMMA organizational charts, which were produced by Defendants in discovery. Wendy Warner testified about this chart, and can provide the necessary foundation for its admissibility. Any confidentiality concerns are addressed by the Protective Order in this case.

Defendants object to Pl. Ex. 69, Bill Sievers documents, on grounds of a vague description, as well as grounds of relevancy and hearsay. Defendants know full well the contents of this exhibit. The documents are identified by Bates number, and were produced by Defendants

28

only after a direct order of the court (Doc. 112). The exhibit is relevant because Sievers was also found sleeping on the job. Also, the documents are admissible under the business records hearsay exception Rule 803(6).

### C. Plaintiff's Objections to Defendants' Witness List (Doc. 152).

The parties were unable to resolve their differences regarding these objections and therefore set forth their respective positions below.

#### 1. Objecting Party's Position:

Plaintiff objects to five witnesses on Defendants witness list (Doc. 152), to wit: Brian Roby, Andy Dishman, Paul Dunbar, Tim Haseltine, and Sheron Rose. Plaintiff objects on the grounds that these witnesses were not timely identified as required by Rule 26(a)(1)(A), nor have Defendants offered any "substantial justification" for not disclosing them during discovery. Their exclusion is therefore proper. *See Heidtman v. County of El Paso*, 171 F.3d 1038, 1040 (5th Cir. 1999) (non-disclosing party offered no explanation for failure to disclose; exclusion proper). Plaintiff had no opportunity to discover witness' testimony. Witness should therefore be excluded because Plaintiff would be prejudiced by his testimony under FRE 403.

#### 2. Responding Party's Position:

Plaintiff's objections to Defendants' trial witnesses relate to the same five witnesses (Brian Roby, Andy Dishman, Paul Dunbar, Tim Haseltine, and Sheron Rose) that are identified in Plaintiff's motion in limine (Doc. 154), and the objections in this pleading track those previously asserted in his motion in limine. (Id.). Likewise, Defendants' opposition to exclusion of these witnesses tracks its opposition to the motion in limine. These individuals have been designated at this stage of the proceeding for either authentication of evidence or to rebut inferences created by Plaintiff's anticipated testimony. Plaintiff has failed to articulate a

compelling reason for the exclusion of such testimony and therefore these objections should be denied.

### D. Plaintiff's Objections to Defendants' Exhibit List (Doc. 153).

The parties were unable to resolve their differences regarding these objections and therefore set forth their respective positions below.

### 1. Objecting Party's Position:

Plaintiff's objections to Defendants exhibits are fully set out in Doc. 153. In summary, Plaintiff objects to Def. Ex. 25-31 and 84 because they were produced six weeks after close of discovery, relate to Plaintiff's claims or Defendants' asserted defenses and, therefore, should have been produced well before the close of discovery, and Defendants have not presented any "substantial justification" for the non-disclosure. *See Heidtman v. County of El Paso*, 171 F.3d 1038, 1040 (5th Cir. 1999) (non-disclosing party offered no explanation for failure to disclose; exclusion proper). Plaintiff had no opportunity to discover the veracity of the documents or other evidence in these exhibits. Witness should therefore be excluded because Plaintiff would be prejudiced by his testimony under FRE 403.

Plaintiff objects to Def. Ex. 83, Plaintiff's bankruptcy records, as being irrelevant under Rule 402 and a waste of time under Rule 403. These records have no relevance to the issues in this case, and are more than eleven years old.

Plaintiff also objects to Def. Ex. 85, Document Hold Order, pursuant to FRE 402, irrelevant, and 403, waste of time and confusion. The document hold order Defendants seek to introduce provides no assurance that all persons within Defendant corporations complied with the order and preserved documents; only that they should have done so. Preservation of these

documents, as a legal matter, would have been required without the order. Introduction of this document would merely confuse the trier of fact and be a waste of time.

Plaintiff also objects to Def. Ex.'s 60 and 82 as being irrelevant and a waste of time.

### 2.    Responding Party's Position:

Plaintiff's objections to Defendants' Exhibit List also largely track those objections which he asserts in his motion in limine.  (Doc. 154).  Therefore, Defendants' responses to Plaintiff's objections in Exhibits 25 – 31, and Exhibit 84, which have been stated above, are expressly adopted and incorporated herein.

Plaintiff's objection to Defendants' **Exhibit 60** is improper because this exhibit (Department of Defense Employer Support Freedom Award nomination) clearly rebuts any information of military animus suggested by Plaintiff and should be considered by the jury in this case.

Plaintiff's objections to Defendants' **Exhibits 82** and **84** is improper in that there are proposed summary exhibits and the source documents on which the summaries are based will be available to Plaintiff.  Therefore, such an objection is due to be overruled pursuant to Rule 1006.

Plaintiff's objection to Defendants' **Exhibit 83** (Plaintiff's bankruptcy records) is improper.  To the extent the Court allows Plaintiff to testify regarding his alleged emotional distress (which Defendants vigorously oppose), Plaintiff's previous bankruptcy has relevance to the alleged "severe" emotional distress he suffered as a result of his termination from HMMA employment.

Plaintiff's objection to Defendants' **Exhibit 85** (Document Hold Order) is improper. Plaintiff has accused Defendants of deliberately destroying documents in this case. Due process requires that Defendants be provided full and fair opportunity to respond to such allegations.

This Document Hold Order demonstrates that Defendants took careful steps to preserve documents and Defendants should not be prohibited from introducing such evidence if called to do so.

THIS WILL CERTIFY THAT ALL PARTIES HAVE AGREED TO THE ABOVE. FURTHER, THE PARTIES HAVE AGREED THAT JEFFREY R. SPORT WILL E-FILE THE FOREGOING *PARTIES' JOINT REPORT REGARDING CONFERENCE ON SELECTED MOTIONS AND OBJECTIONS*.

Respectfully submitted this the 18TH day of April, 2008.

| /s/ Jeffrey R. Sport | /s/ J. Trent Scofield |
|---|---|
| SPO-005 | (SCO-024) |
| | |
| Jeffrey R. Sport | J. Trent Scofield |
| Kilborn, Roebuck & McDonald | Ogletree, Deakins, Nash, Smoak & Stewart, P.C. |
| P.O. Box 66710 | One Federal Place, Suite 1000 |
| Mobile, AL  36660 | 1819 5th Avenue North |
| Telephone: (251) 479-9010 | Birmingham, AL  35203-2118 |
| Facsimile: (251) 479-6747 | Telephone: (205) 328-1900 |
| jeff.sport@sportlaw.us | Facsimile: (205) 328-6000 |
| | trent.scofield@odnss.com |
| | |
| ONE OF THE ATTORNEYS | ONE OF THE ATTORNEYS |
| FOR PLAINTIFF | FOR DEFENDANTS |

## CERTIFICATE OF SERVICE

I hereby certify that on the 18TH day of April, 2008, I electronically filed the foregoing *Parties' Joint Report Regarding Conference On Selected Motions And Objections* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: W. Perry Hall, Vincent F. Kilborn, III, David Allen McDonald, J. Trent Scofield, T. Scott Kelly, Matthew K. Johnson and Timothy A. Palmer.

/s/ Jeffrey R. Sport
Jeffrey R. Sport (SPO-005)
KILBORN, ROEBUCK & McDONALD
1810 Old Government Street
Post Office Box 66710
Mobile, Alabama 36660
Telephone: (251) 479-9010
Fax: (251) 479-6747