IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| JERRY LEON DEES, JR., | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
|    v. | ) | 2:07cv306-MHT |
| | ) | (WO) |
| HYUNDAI MOTOR MANUFACTURING | ) | |
| ALABAMA, LLC, and HYUNDAI | ) | |
| MOTOR AMERICA, INC., | ) | |
| | ) | |
|    Defendants. | ) | |

OPINION

In this lawsuit, plaintiff Jerry Leon Dees, Jr.,
asserts the following claims against defendants Hyundai
Motor Manufacturing Alabama, LLC (HMMA) and Hyundai Motor
America, Inc. (HMA): termination and harassment claims
under the Uniformed Services Employment and Reemployment
Rights Act of 1994 (USERRA), 38 U.S.C. §§ 4301-4334, and
outrage and conversion claims under Alabama law.
Jurisdiction over the USERRA claims is proper under 28
U.S.C. § 1331 and 38 U.S.C. § 4323(b)(3), and the state-
law claims may be heard under supplemental jurisdiction,
28 U.S.C. § 1367(a).

This case is currently before the court on HMMA and HMA's motion for summary judgment. For the reasons that follow, the motion will be granted in all respects except as to Dees's USERRA harassment claim and conversion claim against HMMA. These claims will go to trial.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. FACTS

Dees began working at HMMA as a maintenance technician in the Stamping Maintenance Department in November 2005. At that time, he was also a Staff Sergeant and Combat MP in the Alabama Army National Guard and had previously served two tours in Iraq.

Dees's direct supervisors at HMMA were Stamping Maintenance Assistant Manager Greg Prater and Team Leader Kevin Hughes. Prater and Hughes began to harass Dees almost immediately upon learning about his military service. In particular, Prater required that Dees provide nonexistent military orders for Guard monthly weekend training, forbade Dees from missing work for training, made derogatory comments about the Guard in the presence of Dees and other employees, and attempted to coerce Dees's coworkers to state, falsely, that Dees had violated company policies and procedures. Additionally, Prater and Hughes assigned Dees to difficult and dangerous work more frequently than they did for other employees. In an effort to stem the harassment, Dees asked the sergeant of

3

his Guard unit to send a letter to HMMA's Human Resources Department that explained the lack of monthly military orders. The sergeant did so and also offered to confirm Dees's presence at the weekend trainings. Instead of quelling the harassment, however, the sergeant's letter caused the harassment to escalate.

In February 2007, Production Stamping Manager Jim Brookshire accused Dees of sleeping on the job, and a HMMA committee terminated Dees's employment.

### III. DISCUSSION

### A. USERRA Claims

As stated, Dees has two USERRA claims: a termination claim and a harassment claim. USERRA provides that a member of the Armed Services "shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership." 38 U.S.C. § 4311(a).

1. Dees's "employer" within the meaning of USERRA

Before turning to the substance of Dees's two USERRA claims, it is necessary to determine whether both HMMA and HMA may properly be sued as Dees's "employer," or, as the defendants argue, only HMMA may be deemed Dees's employer.

HMMA manufactures Hyundai automobiles, while HMA distributes, markets, and sells Hyundai automobiles in the United States. The parent company of both is Hyundai Motor Company, Ltd. (HMC), which is traded on the Korean Stock Exchange. Defs.' Corporate/Conflict Disclosure Statement (Doc. No. 14).

In USERRA, "employer" means "any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities, including a person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities." 38 U.S.C. § 4303(4)(A)(i). This definition suggests that the statute is concerned only with the "person, institution, organization, or other

entity" that carries out "employment-related responsibilities," and not with who controls the overall enterprise.

The entity carrying out employment-related responsibilities was HMMA alone. The totality of the circumstances demonstrate that HMMA is a start-up that HMC--not HMA--is assisting in getting off the ground. See Second Warner Decl. (Doc. No. 58), at 2. In particular, HMMA has a number of Korean expatriates "on loan" from HMC--including its President, Chief Operating Officer, and Chief Financial Officer--but these persons are employed by HMC, not HMA, and were also not on the HMMA payroll. Warner Depo. (Doc. No. 69), at 12. No HMA employees work in Alabama, id. at 27, and all members of the committee overseeing Dees's termination were HMMA employees. Defs.' Br. (Doc. No. 69), at 20. All human resources decisions, including hiring, training, and firing, were undertaken by HMMA's Human Resources Department, with no involvement by HMA. Warner Depo (Doc. No. 69), at 24, 35; Parker Decl. (Doc. No. 69), at 2. The companies are undeniably linked,

but their relationship does not indicate that HMA handled any of HMMA's employment-related duties such that HMA could be found liable under USERRA.

HMA is entitled to summary judgment on both of Dees's USERRA claims.


## 2. USERRA termination claim

Dees claims HMMA terminated his employment because of his Guard membership.  As this court explained in an earlier opinion on a discovery dispute between Dees and the defendants, Congress enacted USERRA to encourage "noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civil careers and employment which can result from such service" and to minimize "the disruption to the lives of persons performing service in the uniformed services as well as to their employers."  Dees v. Hyundai Motor Mfg. Ala., LLC, 524 F.Supp.2d 1348,  1351 (M.D. Ala. 2007) (Thompson, J.) (quoting 38 U.S.C. § 4301(a)).  In the legislative history of a predecessor statute to USERRA, it was argued that

"[i]f these young men are essential to our national defense, then certainly our Government and employers have a moral obligation to see that their economic well being is disrupted to the minimum extent possible." H.R.Rep. No. 1303, 89th Cong. (1966) (quoted in Monroe v. Standard Oil Co., 452 U.S. 549, 561 (1981)).

Of particular relevance to the instant case, 38 U.S.C. § 4311 prohibits discrimination in employment if the employee's membership in the armed services "is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership." § 4311(c)(1). To proceed under USERRA, Dees must show by a preponderance of the evidence that his protected status was a motivating factor in terminating him, although that status need not be the sole cause as long as "it is one of the factors that a truthful employer would list if asked for the reasons for its decision." Coffman v. Chugach Support Servs., Inc., 411 F.3d 1231, 1238 (11th Cir. 2005) (citation omitted).

Dees has presented evidence that Prater, his direct supervisor, may have harbored some animus as a result of Dees's membership in the Guard.  See, e.g., Archer Decl. (Doc. No. 108), at ¶ 3 ("Based on my personal observations, Prater wanted to get rid of Leon because of the ongoing dispute over Leon's Guard obligations."); Bomberg Decl. (Doc. No. 108), at ¶ 5 ("It looked like Leon had a target on his back because of his Guard obligations.").  Nevertheless, Dees has not shown that his protected status was a motivating factor in terminating him.  Prater's actions, taken by themselves, could constitute circumstantial evidence from which Prater's discriminatory motivation could be inferred, see Coffman, 411 F.3d at 1238, but Prater's discrimination cannot be imputed to HMMA, for Prater played no role in Dees's termination.  Discriminatory remark by non-decisionmaker is insufficient to satisfy a plaintiff's burden under USERRA to show employer's discriminatory motive.  See Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc., 473 F.3d 11, 18 (1st Cir. 2007) (in USERRA case, "the

9

remarks that [the plaintiff] testified to were not made by those who participated in the decision to fire him, and this does limit their probativeness"); <u>cf.</u> <u>Evans v.</u> <u>McClain of Georgia, Inc.</u>, 131 F.3d 957, 962 (11th Cir. 1997) (in case under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a, 2000e through 2000e-17, discriminatory remark by non-decisionmaker is insufficient to satisfy plaintiff's burden to show discriminatory employment motive by employer).

Dees was found sleeping by Stamping Production Manager Jim Brookshire, and HMMA considers "intentional sleeping" to be serious conduct meriting termination. 2d Warner Decl. (Doc. No. 68) at ¶ 15; Employee Handbook (Doc. No. 68) at 34. Dees's sleeping was deemed "intentional," rather than accidental, because he was found in an isolated area and was thought to have set up the area to avoid detection. Importantly, it was Brookshire, and not Prater, who reported Dees, and the termination decision was ultimately made by a committee. There is no evidence that either Brookshire or the committee harbored any bias

against those in the military.  Moreover, the termination proceeding was based solely on the allegations that Dees was asleep on the job.  2d Warner Decl. (Doc. No. 69), at ¶ 14; Clevenger Decl. (Doc. No. 69), at ¶ 11.  However, even if Dees could show that his military status was a motivating factor in his termination, the committee would have made the same decision without regard to Dees's military service, as intentional sleeping is an infraction that merits termination.  See Ontario King Investigation File (Doc. No. 108).

HMMA is entitled to summary judgment on Dees's USERRA termination claim.


### 3. USERRA harassment claim

Dees alleges that HMMA violated USERRA by "creating an environment of harassment."  Compl. (Doc. No. 2), at ¶¶ 20-21.

a. Abandonment of USERRA harassment claim

Dees, in his opposition to summary judgment, repeatedly referred to HMMA's "harassment," Pl.'s Br. (Doc. No. 107), at 2-3, 5-6, 10, 12, 17-21, but did not specifically address HMMA's legal argument that a harassment claim is non-cognizable under USERRA or show that his allegations are legally sufficient for a harassment claim. HMMA now argues that this non-responsiveness shows that Dees has abandoned his USERRA harassment claim. Defs.' Reply Br. (Doc. No. 115), at 8-9. The court disagrees.

HMMA correctly notes that, in "opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him. ... [G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995). There appears to be no question that a complete omission of the claim in response to summary judgment is sufficient for a finding of abandonment. See Wilkerson v. Grinnell Corp.,

270 F.3d 1314, 1322 (11th Cir. 2001) (claim that was included in complaint but not again raised until the plaintiff's supplemental reply brief is abandoned); Robinson v. Regions Financial Corp., 242 F.Supp.2d 1070, 1075 (M.D. Ala. 2003) (Thompson, J.) (where plaintiff's opposition to summary judgment addresses discrimination with respect to only four positions, claims with regard to the other 25 positions in the defendant's brief are deemed abandoned). In the instant case, however, the omission is not total--Dees refers to the facts of his USERRA harassment claim without refuting HMMA's legal arguments.

The frequency with which Dees mentions harassment in his brief strongly suggests that he did not intend to abandon the harassment claim and, indeed, underscores the claim's centrality to his lawsuit. Moreover, it would be an unduly harsh punishment to deem the claim abandoned based on Dees's failure to make legal arguments despite his consistent reiteration of his harassment claim. While Dees failed to argue the question fully, he did in

fact raise it in response to summary judgment. <u>Cf</u>. <u>Road</u>
<u>Sprinkler Fitters Local Union N. 669 v. Indep. Sprinkler</u>
<u>Corp.</u>, 10 F.3d 1563, 1568 (11th Cir. 1994) (court may
dismiss as abandoned a claim "alleged in the complaint
but not even raised as a ground for summary judgment").


            b. Whether USERRA provides cause
               of action for harassment

     USERRA provides that a uniformed servicemember may
not be denied "any benefit of employment."   38 U.S.C.
§ 4311(a).   The courts have not yet resolved whether
freedom from harassment properly constitutes a "benefit
of employment" under the statute.   The Eleventh Circuit
Court of Appeals has not weighed in on the question;
indeed, only a smattering of courts nationwide has done
so.   Some courts considering the issue have assumed
arguendo that a cause of action for harassment exists but
determined that the plaintiff's claimed harassment was
insufficiently severe and pervasive.   <u>Miller v. City of</u>
<u>Indianapolis</u>, 281 F.3d 648, 653 (7th Cir. 2002); <u>Figueroa</u>
<u>Reyes v. Hosp. San Pablo del Este</u>, 389 F.Supp.2d 205, 213

(D.P.R. 2005) (Fuste, J.).  Others have based their decisions on the existence of an anti-harassment employment policy, <u>Vickers v. City of Memphis</u>,[1] 368 F.Supp.2d 842, 845 (W.D. Tenn. 2005) (McCalla, J.), or the content of a consent decree, <u>Church v. City of Reno</u>, No. 97-17097, 1999 WL 65205, at *1 (9th Cir. Feb. 9, 1999), without reaching the question of whether the statute itself supports a harassment claim.

One case to address the question squarely is <u>Petersen v. Department of Interior</u>, 71 M.S.P.R. 227 (1996).  In <u>Petersen</u>, the plaintiff contended that he had been harassed as a result of his prior military service. <u>Petersen</u> examined the legislative history of the term "benefit of employment" and found that Congress intended the phrase to be interpreted expansively in order to support veterans, <u>id</u>. at 236, and  also noted that the

_____

1.  As will be discussed below, the court in <u>Vickers</u> found a cause of action for harassment under USERRA, but it also held that a plaintiff can succeed on a USERRA harassment claim only if he can show an employment policy prohibiting the conduct about which he is complaining. 368 F.Supp.2d at 845.

Supreme Court has broadly construed predecessor statutes. Id. at n.8 (citing Coffy v. Rep. Steel Corp., 447 U.S. 191, 196 (1980) ("The statute is to be liberally construed for the benefit of the returning veteran.")). Petersen then stated that, "Although the appellant's hostile environment claim does not clearly fall within the term 'benefit,' we are persuaded that an 'expansive interpretation' of that term, as intended by Congress, leads to the conclusion that it does." Id. at 237. Petersen's conclusion was bolstered by courts' consistent holdings that other anti-discrimination statutes lacking anti-harassment language--including Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112--nevertheless proscribe harassment as a kind of discrimination. Id. at 238-39. The Eleventh Circuit Court of Appeals has also acknowledged the prohibition on harassment into other anti-discrimination statutes. See., e.g., Davis v. Dekalb County Sch. Dist., 233 F.3d

1367 (11th Cir. 2000) (school district may be liable under Title IX for teacher's sexual harassment of a student); E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc., 117 F.3d 1244 (11th Cir. 1997) (awarding back pay for harassment under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.).

The court agrees with Petersen's logic, and in the absence of Eleventh Circuit precedent to the contrary, concludes that a claim for harassment on account of military service is cognizable under USERRA.[2]  Notably, harassment is cognizable under other anti-discrimination

---

    2.  At least three other courts have been similarly persuaded by Petersen. See Maher v. City of Chicago, 406 F.Supp.2d 1006, 1023 (N.D. Ill. 2006) (Cole, M.J.) ("Harassment on account of prior military service can be a violation of USERRA."); Steenken v. Campbell County, No. 04-224-DLB, 2007 WL 837173, at *3 (E.D. Ky. Mar. 15, 2007) (Bunning, J.) ("Because the right to be free from a hostile work environment, broadly construed, is a benefit of employment, the Court ... concludes that Plaintiff's hostile work environment claim is cognizable under USERRA."). Another case, Vickers v. City of Memphis, also adopted Peterson's conclusion that "USERRA provides a cause of action for harassment due to prior military service" but also held that a plaintiff may succeed only if an employer's policy prohibits the conduct about which he complains.  368 F.Supp.2d at 844.

statutes, and USERRA is intended to be construed broadly for the benefit of returning veterans. This conclusion is consistent with the purpose of USERRA--namely, to encourage individuals to join the military by assuring them that their jobs are not at risk. 38 U.S.C. § 4301(a)(1). An assurance that employees cannot be fired on account of their military service is meaningless without assurance that the work environment will not be so intolerable that they will feel forced to quit. This protection is especially necessary at a time when demand for deployment of non-career servicemembers in the National Guard and Reserves has reached an unprecedented level; such persons now account for nearly 50% of the active military. Konrad S. Lee, "When Johnny Comes Home Again" Will He Be Welcome at Work?, 35 Pepp. L. Rev. 247, 248 (2008).

### c. Dees's harassment claim

Having found that a harassment claim is cognizable under USERRA, the court now turns to the viability of

Dees's harassment claim.  USERRA harassment claims, like those under Title VII, should be analyzed using the principle announced by the Supreme Court in <u>Meritor Savings Bank v. Vinson</u>, 477 U.S. 57, 67 (1986): harassment is actionable when it is "sufficiently severe or pervasive to alter conditions of [the victim's] employment and create an abusive working environment." <u>See</u> <u>Peterson</u>, 71 M.S.P.R. at 239 (harassment violates USERRA if it is "sufficiently pervasive to alter the conditions of employment and create an abusive working environment"); <u>Maher</u>, 406 F.Supp.2d at 1023 (same).  <u>See also</u> <u>Baldwin v. Blue Cross Blue Shield of Ala.</u>, 480 F.3d 1287, 1301 (11th Cir. 2007) (applying <u>Meritor</u> standard in Title VII case).  Among the factors to be considered in assessing a harassment claim are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 647 (11th Cir. 1997)

(citing <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23 (1993)).

Viewing the evidence in the light most favorable to Dees, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), the court finds that Dees has shown the existence of genuine issues of material fact as to the hostility of his work environment that are sufficient to preclude summary judgment. Prater, Dees's supervisor, made frequent derogatory comments about Dees's Guard service and engaged in discriminatory behavior that went beyond mere words. By demanding that Dees produce orders for every Guard training weekend and insisting that he put his civilian job ahead of his military service, Prater was implicitly threatening Dees's continued employment at HMMA. This behavior occurred with some frequency, not merely on a few isolated incidents. Furthermore, Prater unfairly over-assigned Dees to more dangerous work, suggesting that he punitively assigned Dees to work that is more physically threatening. These allegations meet the standard for

"severe or pervasive harassment," under both the subjective and the objective components. See Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc). Dees subjectively perceived the harassment to be sever and pervasive, and a reasonable person in his position would agree. Id. Dees reports frequent derogatory remarks and over-assignment to physically threatening tasks, and Prater gave him reason to fear for his job. In light of the totality of the circumstances, the court finds that a reasonable jury could find that the harassment Dees faced was sufficiently severe and pervasive to alter the terms and conditions of his employment.

Furthermore, HMMA may be held liable for the harassment, as Prater was Dees's supervisor and HMMA has raised no affirmative defense that it exercised reasonable care to correct the harassment and that Dees failed to avoid the harm. See Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998).

21

HMMA is not entitled to summary judgment on Dees's USERRA harassment claim.

## B. State-law claims

### 1. Outrage

To be liable for the tort of outrage, a person must "by extreme and outrageous conduct intentionally or recklessly cause[] severe emotional distress to another. ... The emotional distress thereunder must be so severe that no reasonable person could be expected to endure it." Wal-Mart Stores, Inc. v. Smitherman, 872 So.2d 833, 840 (Ala. 2003). For a plaintiff to recover, the defendant's conduct must have been "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Id. While Prater may have offended Dees or treated him unfairly, Dees has presented no evidence suggesting that Prater's conduct reached such an intolerable level, see Am. Road Serv. Co. v. Inmon, 394

22

So.2d 361, 364-65 (Ala. 1980) (no recovery for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities"), or that HMMA should be held liable for it.  Additionally, Dees has provided no evidence demonstrating that he suffered severe emotional distress.  His wife's testimony--that he was no longer jolly and no longer talks as much--is not sufficient.  K. Dees Depo. (Doc. No. 114), at 3.

HMMA and HMA are entitled to summary judgment on Dees's outrage claim.


## 2. Conversion

In his conversion claim, Dees alleges that Hyundai confiscated personal belongings kept in his locker, including a jacket, a music player, personal tools, military pay stubs, and notes regarding his harassment. Prater retrieved Dees's jacket and music player from his locker, and a coworker brought Dees his tool bag.  Prater did not, however, return the notes and pay stubs from Dees's locker, and those items were never returned to

23

Dees, despite his repeated requests.  The parties have two factual disputes requiring resolution at trial.  The first factual dispute concerns the value of the items; a plaintiff can recover for conversion even if the property lacks a market value.  See Lary v. Gardener, 908 So.2d 955, 959-60 (Ala. Civ. App. 2005) (in the absence of evidence of market value, the plaintiff "may prove other factors of value such as the value of the property to him").  Second, there is a factual dispute on whether the employee responsible for the loss of the items was acting on behalf of HMMA in clearing out Dees's locker.  See Joyner v. AAA Cooper Transp., 477 So.2d 364, 365 (Ala. 1985).

However, Dees may proceed on his conversion claim against HMMA but not HMA.  No Alabama employees work for HMA, and Dees has not otherwise provided evidence supporting HMA's liability.  Cf. Ford v. Carylon Corp., Inc., 937 So.2d 491, 498 (Ala. 2006) ("A parent corporation generally cannot be held liable for the acts of its subsidiary unless the latter's corporate veil can

24

be pierced as a result of the parent's abuse of
control."). HMA is entitled to summary judgment on
Dees's conversion claim, and HMMA is not.


                         *  *  *


     An appropriate judgment will be entered.

     DONE, this the 21st day of May, 2008.


                         ___/s/ Myron H. Thompson___
                         UNITED STATES DISTRICT JUDGE