IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **JERRY LEON DEES, JR.,** | |
| Plaintiff, | |
| v. | CIVIL ACTION NO.: 2:07-cv-00306-MHT-CSC |
| **HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC, and HYUNDAI MOTOR AMERICA, INC.,** | |
| Defendants. | |

**DEFENDANT'S OPPOSITION RESPONSE TO PLAINTIFF'S
MOTION TO RECONSIDER THE COURT'S DISMISSAL OF
<u>PLAINTIFF'S USERRA TERMINATION CLAIM</u>**

Defendant Hyundai Motor Manufacturing Alabama, LLC (hereinafter "HMMA" or "Defendant") files this opposition response to Plaintiff Jerry Leon Dees' (hereinafter "Dees" or "Plaintiff") motion to reconsider the Court's dismissal of Plaintiff's USERRA termination claim. (Docs. 213-214). For the reasons fully explained herein, Defendant HMMA respectfully submits that Plaintiff's motion for reconsideration is due to be denied.

**I.   Relevant Procedural History**

1.   Defendants HMMA and Hyundai Motor America, Inc. ("HMA") timely moved for summary judgment as to all claims asserted by Plaintiff. (Docs. 67-69, 115). This motion for summary judgment was opposed by Plaintiff. (Docs. 107-108).

2.   On May 21, 2008, this Court entered an Opinion (Doc. 186) that granted Defendant HMA's motion for summary judgment in its entirety. The same Opinion granted Defendant HMMA's motion for summary judgment in part. This Court dismissed Plaintiff's

USERRA termination and outrage claims against HMMA. This Court, however, decided that Plaintiff's USERRA harassment and conversion claims could proceed to trial. These opinion rulings were memorialized in the Judgment (Doc. 187), also entered on May 21, 2008.

3.  On June 3, 2008, the parties filed competing motions for reconsideration. HMMA has requested the Court reconsider its decision to deny summary judgment as to Plaintiff's USERRA harassment and conversion claims. (Doc. 212). Plaintiff has requested the Court reconsider its decision to grant summary judgment as to Plaintiff's USERRA termination claim against HMMA. (Docs. 213-214).[1]

4.  This opposition response shall address the arguments presented by Plaintiff in his motion for reconsideration.

## II.   Argument and Authorities

### A.   The Court Correctly Decided to Dismiss Plaintiff's USERRA Termination Claim

In its summary judgment opinion, this Court correctly concluded that Plaintiff's USERRA termination claim could not survive HMMA's dispositive motion. Plaintiff's USERRA termination claim has been at the heart of this litigation, and this Court's detailed opinion demonstrates that it gave the termination claim, and the record evidence presented, careful consideration before deciding to dismiss it. (*See* Doc. 186 at 7-11).

This Court's summary judgment opinion correctly concludes that "Dees has not shown that his protected status was a motivating factor in terminating him." (*Id.* at 9). Absent such evidence, Plaintiff cannot proceed with a USERRA termination claim. *See*, 38 U.S.C. § 4311(c)(1). This Court further explained that the undisputed facts demonstrate:

---

[1] This is the only claim for which plaintiff has sought reconsideration.

> Importantly, it was Brookshire, and not Prater [the alleged harasser], who reported Dees, and the termination decision was ultimately made by a committee. There is no evidence that either Brookshire or the committee harbored any bias against those in the military.

(Doc. 186 at 10-11). Therefore, Plaintiff's termination claim fails because he cannot present any evidence of unlawful motive as required by the statute. 38 U.S.C. § 4311(c)(1); *Coffman v. Chugach Support Services, Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005) ("Section 4311 clearly mandates proof of discriminatory motive.").

This Court, however, did not simply end its analysis with Plaintiff's deficient *prima facie* case. In giving the Plaintiff the benefit of the doubt, this Court continued its evaluation of the evidence and correctly decided that HMMA successfully met its burden in proving the affirmative defense available to it under 38 U.S.C. § 4311(c)(2). Specifically, this Court held, "However, even if Dees could show that his military status was a motivating factor in his termination, the committee would have made the same decision without regard to Dees' military service, as intentional sleeping is an infraction that merits termination." (Doc. 186 at 11, citing Ontario King Investigation File (Doc. 108)).

### B. Plaintiff's Reconsideration Arguments are Misplaced in Light of the Undisputed Facts

Plaintiff's supporting memorandum (Doc. 214) requests that the Court reconsider its factual findings in order to resurrect his "corporate conspiracy theory" that this Court has already implicitly rejected. In so doing, Plaintiff identifies three areas where he claims the record supports his theory regarding unlawful military discrimination: (1) Brookshire may have a discriminatory animus; (2) others (namely Applegate) also harbored an animus against him; and (3) the termination committee was affected by this alleged animus. HMMA explains below why Plaintiff's arguments are misplaced and even negated by his own sworn testimony. HMMA also

identifies critical evidence and opposition arguments that Plaintiff has failed to address both at the summary judgment stage and in connection with his motion for reconsideration.

### 1. No Evidence Suggests Brookshire Had Unlawful Animus

Jim Brookshire, the Stamping Production Manager, was the sole witness who observed Dees asleep in an isolated area on the third floor mezzanine. (*See* Doc. 69 at 11). It is undisputed that Plaintiff did not report to Brookshire and, per Plaintiff's *own* deposition testimony, he never had any problems working with Brookshire. (Dees Depo. at 228:6-13). Likewise, Plaintiff admitted in his deposition that he has no personal knowledge of any facts that would support his Complaint allegations that Brookshire falsely accused him of sleeping on the job. (Dees Depo. at 193:19-194:15, 197:12-198:1).

Plaintiff's "eleventh hour" arguments that Brookshire may have been prejudiced against him is directly contradicted by his own sworn testimony on the subject. Further, it is well-settled that "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination." *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir. 1988), *cert. denied*, 488 U.S. 1004 (1989). The record reflects that Brookshire is nothing more than an impartial member of management who observed Plaintiff's misconduct. Plaintiff's belated attempt to attach "discriminatory animus" to Brookshire's actions is entirely unsupported by any evidence and should not be considered as grounds to reverse this Court's correct decision.

### 2. No Animus Extended to Others

Plaintiff's motion for reconsideration further contends that others in management (in addition to Greg Prater) harbored a discriminatory animus against him. Specifically, Plaintiff

cites his own conclusory theory that John Applegate (Maintenance Department Senior Manager) "ratified each and every decision Prater made." (Doc. 214 at 3).

However, Plaintiff again ignores his own deposition testimony regarding Applegate's lack of alleged military animus. Plaintiff testified that the worst thing Applegate said to him was a comment about "partying" while on guard duty. (Dees Depo at 142:8-21). It is undisputed that Applegate did not demand military orders from Dees, and Plaintiff offers no additional evidence that Applegate harassed him in any way related to his military service. (*See* Dees Depo. at: 99:23; 100: 1-2).

In light of Plaintiff's deposition admissions, no reasonable jury could conclude that Applegate was motivated by unlawful discriminatory animus. Though this Court must view the evidence in a light most favorable to Plaintiff, it is not required to turn the lights out altogether. *See Davis v. Coastal Int'l. Sec., Inc.*, 275 F.3d 1119, 1125, 1125-26 (D.C. Cir. 2002) (holding no reasonable jury could believe plaintiff's testimony); *Scott v. Genuine Parts Co.*, 2002 U.S. Dist. LEXIS 24284 at *13 ("Given all this, no reasonable jury could believe Plaintiff's self-serving, unsupported contentions."). Plaintiff has again failed to present credible evidence that would warrant reversal of this Court's decision to dismiss the USERRA termination claim.

### 3. The Termination Committee Decision was Non-Discriminatory

Plaintiff's final reconsideration argument rests on his speculative belief that the actions of the termination committee were nothing more than a clandestine operation designed to get rid of him based on his military service. Again, Plaintiff fails to acknowledge critical undisputed facts that are fatal to his corporate conspiracy theory.

First, Plaintiff makes the entirely unfounded assertion that, "Applegate was, therefore, the decision-maker regarding whether Dees would be terminated." (Doc. 214 at 2). Plaintiff's

assertion is directly contradicted by the record evidence in this case. Though Applegate briefly attended the termination committee meeting, it is undisputed that he did not participate in the decision to terminate Plaintiff's employment. (Clevenger Depo., 17-21, 40:8-12, 44:6-12).

Plaintiff's motion for reconsideration ignores the undisputed evidence that it was Wendy Warner, HMMA's Employment Department Manager, who was in charge of the termination committee, and that Ms. Warner made the decision to terminate Plaintiff's employment. (Clevenger Depo., 40:8-12, 44:6-12; Warner Decl. No. 2 at ¶ 8). It is further undisputed that Ms. Warner had <u>no</u> <u>knowledge</u> that Plaintiff was a member of the military (Warner Depo. at 210, passim), and no information was presented to the termination committee regarding Plaintiff's military service. (Clevenger Decl., ¶ 11; Warner Decl. No. 2, ¶¶ 21-22). This evidence further negates Plaintiff's ability to prove a *prima facie* case of military animus/USERRA discrimination related to his termination claim.

Plaintiff's alternative argument to attack the integrity of the termination committee is based on his theory that Applegate and Rob Clevenger, an Assistant Manager of Team Relations, conspired to present fabricated evidence to the committee. (Doc. 214 at 3-5). Specifically, Plaintiff claims that there are inconsistencies in deposition testimony regarding whether the PLC cabinet doors behind the area in which Plaintiff was sleeping were open or closed. (*See* Doc. 214 at 6-7). Plaintiff contends that Brookshire's testimony that the doors "weren't wide open" bolsters his theory that animus motivated the termination decision. (*Id.*).

Plaintiff's alternative argument again misses the mark. As this Court well knows, "Employment law is not a game of 'Gotcha!' and an employer's differing statements are not necessarily and automatically inconsistent." *Stallworth v. E-Z Serve Convenience Stores*, 2001 WL 125304, *4 (M.D. Ala.); *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998)

(holding employer's reasons that build upon each other but are not plainly contradictory are legitimate). Even if Plaintiff's proffered evidence is viewed in a light most favorable to Plaintiff and is accepted as true, he presents no evidence which may overcome the well-established "good faith belief" doctrine applicable to HMMA's decision to terminate his employment. Here, it is undisputed that Ms. Warner, as the head of the termination committee, made the decision to terminate Plaintiff's employment. (*See* Clevenger Depo., 40:8-12, 44:6-12; Warner Decl. No. 2 at ¶ 8). In its summary judgment reply (Doc. 115 at 14-15), HMMA set forth the litany of Eleventh Circuit authority that holds an employer may lawfully rely on its good faith belief to discharge an employee whom it reasonably believes engaged in misconduct. In *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991), the Eleventh Circuit rejected the same opposition argument now made by Plaintiff on reconsideration:

> Much of Elrod's proof at trial centered around whether Elrod was in fact guilty of the sexual harassment allegations leveled at him by his former co-workers. **We can assume for purposes of this opinion that the complaining co-workers interviewed by Rives were lying through their teeth**. The inquiry of the ADEA is limited to whether Rives, Malone and Merrill <u>believed</u> that Elrod was guilty of harassment and, if so, whether this belief was the reason behind Elrod's discharge.

939 F. 2d at 1470 (Emphasis added).

This Court correctly identified the following undisputed facts relevant to HMMA's decision to terminate Plaintiff's employment: (1) intentionally sleeping on the job constitutes serious misconduct (Doc. 186 at 10, <u>citing</u> Warner Decl. No. 2 at ¶ 15 and Employee Handbook at 34), and (2) a team member who is found to have committed serious misconduct is subject to termination. (*Id.*). Regardless of the deposition "inconsistencies" claimed by Plaintiff, he cannot present any evidence which would suggest the termination committee did not have a good faith belief that Plaintiff had engaged in serious misconduct when the decision was made to terminate

his employment. Therefore, according to the law of this Circuit, Plaintiff's USERRA termination claim is due to be dismissed. *Elrod*, supra.

## C. Plaintiff Ignores HMMA's USERRA Affirmative Defense

The statute makes clear that an employer is not liable for alleged discrimination under USERRA if it "can prove that the action would have been taken in the absence of" an employee's protected military service. 38 U.S.C. § 4311(c)(2); *Coffman*, 411 F.3d at 1239. Here, Plaintiff both ignores and completely fails to address HMMA's summary judgment argument that it would have made the same termination decision regardless of Dees' military service. (*See* Doc. 69 at 29-31).

As stated above, the undisputed facts demonstrate that intentionally sleeping on the job is a serious misconduct offense that warrants termination. The evidence presented by HMMA clearly demonstrates that its decision to terminate Plaintiff's employment was entirely consistent with its past practice. (*See* Warner Decl. No. 2 at ¶ 15; Warner Depo. at 268:18-23, 269:1-23, 270:1-10; Clevenger Decl. at Attachment D (past practice)). In granting HMMA's motion for summary judgment on Plaintiff's USERRA termination claim, this Court correctly held:

> However, even if Dees could show that his military status was a motivating factor in his termination, the committee would have made the same decision without regard to Dees' military service, as intentional sleeping is an infraction that merits termination.[2]

Plaintiff's failure to acknowledge, or even address, this undisputed evidence further negates his ability to survive summary judgment and pursue a USERRA termination claim. Therefore, HMMA respectfully submits that Plaintiff's motion for reconsideration is due to be denied.

---

[2] Doc. 186 at 11, citing Ontario King Investigation File.

8

Respectfully submitted this the 20th day of June, 2008.

/s/ J. Trent Scofield
Timothy A. Palmer (PAL009)
J. Trent Scofield (SCO024)
T. Scott Kelly (KEL053)
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
One Federal Place, Suite 1000
1819 Fifth Avenue North
Birmingham, AL 35203-2118
Tel.: (205) 328-1900
Fax: (205) 328-6000
E-mail: tim.palmer@odnss.com
E-mail: trent.scofield@odnss.com
E-mail: scott.kelly@odnss.com

Attorneys for Defendant Hyundai Motor
Manufacturing Alabama, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of June, 2008, I electronically filed the foregoing *Opposition Response to Plaintiff's Motion to Reconsider the Court's Dismissal of Plaintiff's USERRA Termination Claim* on behalf of Defendant Hyundai Motor Manufacturing Alabama, LLC with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: W. Perry Hall, Vincent F. Kilborn, III, David Allen McDonald, Jeffrey R. Sport, T. Scott Kelly, Matthew K. Johnson, and Timothy A. Palmer.

/s/ J. Trent Scofield
J. Trent Scofield (SCO024)
OF COUNSEL