IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| JERRY LEON DEES, JR., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
|     v. | ) | 2:07cv306-MHT |
| | ) | (WO) |
| HYUNDAI MOTOR MANUFACTURING | ) | |
| ALABAMA, LLC, and HYUNDAI | ) | |
| MOTOR AMERICA, INC., | ) | |
| | ) | |
|     Defendants. | ) | |

OPINION

In this lawsuit, plaintiff Jerry Leon Dees, Jr.,
asserts the following claims against defendants Hyundai
Motor Manufacturing Alabama, LLC (HMMA) and Hyundai Motor
America, Inc. (HMA): termination and harassment claims
under the Uniformed Services Employment and Reemployment
Rights Act of 1994 (USERRA), 38 U.S.C. §§ 4301-4334, and
outrage and conversion claims under Alabama law.
Jurisdiction over the USERRA claims is proper under 28
U.S.C. § 1331 and 38 U.S.C. § 4323(b)(3), and the state-

law claims may be heard under supplemental jurisdiction, 28 U.S.C. § 1367(a).

On May 21, 2008, this court entered summary judgment against Dees on his USERRA-termination claim and state-law outrage claim against HMMA and on all claims against HMA, with the result that Dees's USERRA-harassment claim and state-law conversion claim against HMMA were to go to trial. Dees v. Hyundai Motor Mfg. Alabama, LLC, 2008 WL 2157009 (M.D. Ala. 2008) (Thompson, J.).  This case is again before the court, this time on Dees's and HMMA's motions asking the court to reconsider its summary judgment-decision.  For the following reasons, the court will grant the reconsideration motions, vacate its entire May 21 summary-judgment opinion and accompanying judgment, and enter this new opinion, with a companion judgment, in their place.[1]  The court now holds that HMMA

_____

1.  A district court "ha[s] the power to vacate the summary judgment because a final judgment had not been entered in the case." In re Saffady, 524 F.3d 799 (6th Cir. 2008) (quoting Mallory v. Eyrich, 922 F.2d 1273, 1282 (6th Cir. 1991)); see also Marconi Wireless v. United States, 320 U.S. 1, 47 (1943) (stating that the

and HMA are entitled to summary judgment on both of
Dees's USERRA claims (retaliation and harassment) and
that both of Dees's state-law claims (outrage and
conversion) should be dismissed with the right to refile
them in state court.


## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings,
depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and
that the moving party is entitled to a judgment as a
matter of law." Fed. R. Civ. P. 56(c). The court must
view the evidence in the light most favorable to the non-
moving party and draw all reasonable inferences in favor
of that party. Matsushita Elec. Indus. Co. v. Zenith
Radio Corp., 475 U.S. 574, 587 (1986).

---

court has the "power at any time prior to entry of its
final judgment ... to reconsider any portion of its
decision and reopen any part of the case").

## II. FACTS

Dees began working at HMMA as a maintenance technician in the Stamping Maintenance Department in November 2005. At that time, he was also a Staff Sergeant and Combat MP in the Alabama Army National Guard and had previously served two tours in Iraq.

Dees's direct supervisors at HMMA were Stamping Maintenance Assistant Manager Greg Prater and Team Leader Kevin Hughes. Prater and Hughes began to harass Dees almost immediately upon learning about his military service. Prater required that Dees provide nonexistent military orders for Guard monthly weekend training; forbade Dees from missing work for training; made derogatory comments about the Guard in the presence of Dees and other employees; and attempted to coerce Dees's coworkers to state, falsely, that Dees had violated company policies and procedures. Additionally, Prater and Hughes assigned Dees to difficult and dangerous work

4

more frequently than they did for other employees.  In an effort to stem the harassment, Dees asked the sergeant of his Guard unit to send a letter to HMMA's Human Resources Department that explained the lack of monthly military orders.  The sergeant did so and also offered to confirm Dees's presence at the weekend trainings.  Instead of quelling the harassment, however, the sergeant's letter caused the harassment to escalate.

In February 2007, Production Stamping Manager Jim Brookshire accused Dees of sleeping on the job, and a HMMA committee terminated Dees's employment.  After his termination, Dees recovered most of his personal items from his locker but did not recover military pay stubs and notes that he had made about his harassment.

### III. DISCUSSION

#### A. USERRA Claims

As stated, Dees has two USERRA claims: a termination claim and a harassment claim.  USERRA provides that a

member of the Armed Services "shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership."   38 U.S.C. § 4311(a).


### 1. "Employer" within the meaning of USERRA

Before turning to the substance of Dees's two USERRA claims, it is necessary to determine whether both HMMA and HMA may properly be sued as Dees's "employer" or, as the defendants argue, only HMMA may be deemed Dees's employer.

HMMA manufactures Hyundai automobiles, while HMA distributes, markets, and sells Hyundai automobiles in the United States.  The parent company of both is Hyundai Motor Company, Ltd. (HMC), which is traded on the Korean Stock Exchange.  Defs.' Corporate/Conflict Disclosure Statement (Doc. No. 14).

In USERRA, "employer" means "any person, institution, organization, or other entity that pays salary or wages

for work performed or that has control over employment
opportunities, including a person, institution,
organization, or other entity to whom the employer has
delegated the performance of employment-related
responsibilities." 38 U.S.C. § 4303(4)(A)(i). This
definition suggests that the statute is concerned only
with the "person, institution, organization, or other
entity" that carries out "employment-related
responsibilities," and not with who controls the overall
enterprise.

The entity carrying out employment-related
responsibilities was HMMA alone. The totality of the
circumstances demonstrate that HMMA is a start-up that
HMC (not HMA) is assisting in getting off the ground.
See Second Warner Decl. (Doc. No. 58), at 2. In
particular, HMMA has a number of Korean expatriates "on
loan" from HMC (including its President, Chief Operating
Officer, and Chief Financial Officer) but these persons
are employed by HMC, not HMA, and were also not on the

7

HMMA payroll.  Warner Depo. (Doc. No. 69), at 12.  No HMA employees work in Alabama, id. at 27, and all members of the committee overseeing Dees's termination were HMMA employees.  Defs.' Br. (Doc. No. 69), at 20.  All personnel decisions, including hiring, training, and firing, were undertaken by HMMA's Human Resources Department, with no involvement by HMA.  Warner Depo (Doc. No. 69), at 24, 35; Parker Decl. (Doc. No. 69), at 2.  The companies are undeniably linked, but their relationship does not indicate that HMA handled any of HMMA's employment-related duties such that HMA could be found liable under USERRA.

HMA is therefore entitled to summary judgment on both of Dees's USERRA claims.  However, even if HMA could be liable to Dees for a USERRA violation, Dees could still not recover from it because, as explained next, he cannot recover on his USERRA claims for other reasons.

8

## 2. USERRA-termination claim

Dees claims HMMA and HMA terminated his employment because of his Guard membership.  As this court explained in an earlier opinion on a discovery dispute between Dees and the defendants, Congress enacted USERRA to encourage "noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civil careers and employment which can result from such service" and to minimize "the disruption to the lives of persons performing service in the uniformed services as well as to their employers." <u>Dees v. Hyundai Motor Mfg. Ala., LLC</u>, 524 F.Supp.2d 1348, 1351 (M.D. Ala. 2007) (Thompson, J.) (quoting 38 U.S.C. § 4301(a)).  In the legislative history of a predecessor statute to USERRA, it was observed that, "[i]f these young men are essential to our national defense, then certainly our Government and employers have a moral obligation to see that their economic well being is disrupted to the minimum extent

possible." H.R.Rep. No. 1303, 89th Cong. (1966) (quoted in <u>Monroe v. Standard Oil Co.</u>, 452 U.S. 549, 561 (1981)).

USERRA prohibits discrimination in employment if the employee's membership in the armed services "is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership." 38 U.S.C. § 4311(c)(1). To proceed under USERRA, Dees must show by a preponderance of the evidence that his protected status was a motivating factor in terminating him, although that status need not be the sole cause as long as "it is one of the factors that a truthful employer would list if asked for the reasons for its decision." <u>Coffman v. Chugach Support Servs., Inc.</u>, 411 F.3d 1231, 1238 (11th Cir. 2005) (citation omitted).

Dees has presented evidence that Prater, his direct supervisor, may have harbored some animus as a result of Dees's membership in the Guard. <u>See, e.g.</u>, Archer Decl. (Doc. No. 108), at ¶ 3 ("Based on my personal

observations, Prater wanted to get rid of Leon because of the ongoing dispute over Leon's Guard obligations."); Bomberg Decl. (Doc. No. 108), at ¶ 5 ("It looked like Leon had a target on his back because of his Guard obligations."). Nevertheless, Dees has not shown that his protected status was a motivating factor in terminating him. Prater's actions, taken by themselves, could constitute circumstantial evidence from which Prater's discriminatory motivation could be inferred, see Coffman, 411 F.3d at 1238, but Prater's discrimination cannot be imputed to HMMA and HMA, for Prater played no role in Dees's termination. Discriminatory remark by non-decisionmaker is insufficient to satisfy a plaintiff's burden under USERRA to show employer's discriminatory motive. See Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc., 473 F.3d 11, 18 (1st Cir. 2007) (in USERRA case, "the remarks that [the plaintiff] testified to were not made by those who participated in the decision to fire him, and this does limit their

probativeness"); cf. Evans v. McClain of Georgia, Inc.,
131 F.3d 957, 962 (11th Cir. 1997) (in case under Title
VII of the Civil Rights Act of 1964, as amended, 42
U.S.C. §§ 1981a, 2000e through 2000e-17, discriminatory
remark by non-decisionmaker is insufficient to satisfy
plaintiff's burden to show discriminatory employment
motive by employer).

Dees emphasizes that another supervisor, John
Applegate, also harassed him on the basis of his Guard
membership; recommended his termination; and attended the
meeting of the termination committee.  Again, Dees has
presented no evidence that his protected status actually
played a part in the decision to terminate him. Dees was
found sleeping by Stamping Production Manager Jim
Brookshire, and HMMA considers "intentional sleeping" to
be serious conduct meriting termination.  2d Warner Decl.
(Doc. No. 68) at ¶ 15; Employee Handbook (Doc. No. 68),
at 34.  Dees's sleeping was deemed "intentional," rather
than accidental, because he was found in an isolated area

and was thought to have set up the area to avoid
detection.  Importantly, it was Brookshire who reported
Dees, and the termination decision was ultimately made by
a committee.  There is no evidence that either Brookshire
or the committee harbored any bias against those in the
military.  Moreover, the termination proceeding was based
solely on the allegations that Dees was asleep on the
job.  2d Warner Decl. (Doc. No. 69), at ¶ 14; Clevenger
Decl. (Doc. No. 69), at ¶ 11.

However, even if, as Dees contends, the allegations
against him were fabricated, there is no evidence
whatsoever that the termination committee was not acting
in good faith when it terminated him on the basis of
those allegations.  See Elrod v. Sears, Roebuck & Co.,
939 F.2d 1466, 1470 (11th Cir. 1991) (regardless of truth
of allegations against the plaintiff, the inquiry is
limited to whether the decisionmakers believed the
allegations when they discharged him).  And, even if Dees
could show that his military status was a motivating

13

factor in his termination, the committee would have made the same decision without regard to Dees's military service, as intentional sleeping is an infraction that merits termination.  <u>See</u> Ontario King Investigation File (Doc. No. 108).

HMMA and HMA are entitled to summary judgment on Dees's USERRA-termination claim.


### 3. USERRA-harassment claim

Dees alleges that HMMA and HMA violated USERRA by "creating an environment of harassment."  Compl. (Doc. No. 2), at ¶¶ 20-21.


### a. Abandonment of USERRA-harassment claim

Dees, in his opposition to summary judgment, repeatedly referred to HMMA's "harassment,"  Pl.'s Br. (Doc. No. 107), at 2-3, 5-6, 10, 12, 17-21, but did not specifically address HMMA and HMA's legal argument that a harassment claim is non-cognizable under USERRA or show

that his allegations are legally sufficient for a harassment claim. HMMA and HMA now argue that this non-responsiveness shows that Dees has abandoned his USERRA-harassment claim. Defs.' Reply Br. (Doc. No. 115), at 8-9. The court disagrees.

HMMA and HMA correctly note that, in "opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him. ... [G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995). There appears to be no question that a complete omission of the claim in response to summary judgment is sufficient for a finding of abandonment. See Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1322 (11th Cir. 2001) (claim that was included in complaint but not again raised until the plaintiff's supplemental reply brief is abandoned); Robinson v. Regions Financial Corp., 242 F.Supp.2d 1070, 1075 (M.D. Ala. 2003) (Thompson, J.)

15

(where plaintiff's opposition to summary judgment
addresses discrimination with respect to only four
positions, claims with regard to the other 25 positions
in the defendant's brief are deemed abandoned).  In the
instant case, however, the omission is not total:  Dees
refers to the facts of his USERRA-harassment claim
without refuting HMMA and HMA's legal arguments.

The frequency with which Dees mentions harassment in
his brief strongly suggests that he did not intend to
abandon the harassment claim and, indeed, underscores the
claim's centrality to his lawsuit.  Moreover, it would be
an unduly harsh punishment to deem the claim abandoned
based on Dees's failure to make legal arguments despite
his consistent reiteration of his harassment claim.
While Dees failed to argue the question fully, he did in
fact raise it in response to summary judgment.  Cf. Road
Sprinkler Fitters Local Union N. 669 v. Indep. Sprinkler
Corp., 10 F.3d 1563, 1568 (11th Cir. 1994) (court may

16

dismiss as abandoned a claim "alleged in the complaint
but not even raised as a ground for summary judgment").

### b. Whether USERRA provides cause of action for harassment

USERRA provides that a uniformed servicemember may
not be denied "any benefit of employment."   38 U.S.C.
§ 4311(a).   The courts have not yet resolved whether
freedom from harassment properly constitutes a "benefit
of employment" under the statute.   The Eleventh Circuit
Court of Appeals has not weighed in on the question;
indeed, only a smattering of courts nationwide has done
so.   Some courts considering the issue have assumed
arguendo that a cause of action for harassment exists but
determined that the plaintiff's claimed harassment was
insufficiently severe and pervasive.   <u>Miller v. City of
Indianapolis</u>, 281 F.3d 648, 653 (7th Cir. 2002); <u>Figueroa
Reyes v. Hosp. San Pablo del Este</u>, 389 F.Supp.2d 205, 213
(D.P.R. 2005) (Fuste, J.).   Others have based their
decisions on the existence of an anti-harassment

employment policy, <u>Vickers v. City of Memphis</u>, 368 F.Supp.2d 842, 845 (W.D. Tenn. 2005) (McCalla, J.), or the content of a consent decree, <u>Church v. City of Reno</u>, 168 F.3d 498 (9th Cir. 1999) (table), without reaching the question of whether the statute itself supports a harassment claim.[2]

One case to address the question squarely is <u>Petersen v. Department of Interior</u>, 71 M.S.P.R. 227 (1996).  In <u>Petersen</u>, the plaintiff contended that he had been harassed as a result of his prior military service. <u>Petersen</u> examined the legislative history of the term "benefit of employment" and found that Congress intended the phrase to be interpreted expansively in order to support veterans, <u>id</u>. at 236, and  also noted that the Supreme Court has broadly construed predecessor statutes. <u>Id</u>. at n.8 (citing <u>Coffy v. Rep. Steel Corp.</u>, 447 U.S.

---

2.  As will be discussed below, the court in <u>Vickers</u> found a cause of action for harassment under USERRA, but it also held that a plaintiff can succeed on a USERRA harassment claim only if he can show an employment policy prohibiting the conduct about which he is complaining. 368 F.Supp.2d at 845.

191, 196 (1980) ("The statute is to be liberally construed for the benefit of the returning veteran.")). <u>Petersen</u> then stated that, "Although the appellant's hostile environment claim does not clearly fall within the term 'benefit,' we are persuaded that an 'expansive interpretation' of that term, as intended by Congress, leads to the conclusion that it does." <u>Id</u>. at 237. <u>Petersen</u>'s conclusion was bolstered by courts' consistent holdings that other anti-discrimination statutes lacking anti-harassment language (including Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112) nevertheless proscribe harassment as a kind of discrimination. <u>Id</u>. at 238-39. The Eleventh Circuit Court of Appeals has also acknowledged the prohibition on harassment into other anti-discrimination statutes. <u>See., e.g.</u>, <u>Davis v. Dekalb County Sch. Dist.</u>, 233 F.3d 1367 (11th Cir. 2000) (school district may be liable

19

under Title IX for teacher's sexual harassment of a student).

The court agrees with <u>Petersen</u>'s logic and, in the absence of Eleventh Circuit precedent to the contrary, concludes that a claim for harassment on account of military service is cognizable under USERRA.[3]  Notably, harassment is cognizable under other anti-discrimination statutes, and USERRA is intended to be construed broadly for the benefit of returning veterans.  This conclusion is consistent with the purpose of USERRA--namely, to encourage individuals to join the military by assuring

---

3.  At least three other courts have been similarly persuaded by <u>Petersen</u>.  <u>See</u> <u>Maher v. City of Chicago</u>, 406 F.Supp.2d 1006, 1023 (N.D. Ill. 2006) (Cole, M.J.) ("Harassment on account of prior military service can be a violation of USERRA."); <u>Steenken v. Campbell County</u>, 2007 WL 837173, at *3 (E.D. Ky. 2007) (Bunning, J.) ("Because the right to be free from a hostile work environment, broadly construed, is a benefit of employment, the Court ... concludes that Plaintiff's hostile work environment claim is cognizable under USERRA.").  Another case, <u>Vickers v. City of Memphis</u>, also adopted <u>Peterson</u>'s conclusion that "USERRA provides a cause of action for harassment due to prior military service" but also held that a plaintiff may succeed only if an employer's policy prohibits the conduct about which he complains.  368 F.Supp.2d at 844.

them that their jobs are not at risk.   38 U.S.C.
§ 4301(a)(1).   An assurance that employees cannot be
fired on account of their military service is meaningless
without assurance that the work environment will not be
so intolerable that they will feel forced to quit.   This
protection is especially necessary at a time when demand
for deployment of non-career servicemembers in the
National Guard and Reserves has reached an unprecedented
level; such persons now account for nearly 50% of the
active military.   Konrad S. Lee, "When Johnny Comes Home
Again" Will He Be Welcome at Work?, 35 Pepp. L. Rev. 247,
248 (2008).


               c.   Dees's harassment claim
        Having found that a harassment claim is cognizable
under USERRA, the court now turns to the viability of
Dees's harassment claim.   USERRA-harassment claims, like
those under Title VII, should be analyzed using the
principle announced by the Supreme Court in Meritor
Savings Bank v. Vinson, 477 U.S. 57, 67 (1986):

                            21

harassment is actionable when it is "sufficiently severe or pervasive to alter conditions of [the victim's] employment and create an abusive working environment." See Peterson, 71 M.S.P.R. at 239 (harassment violates USERRA if it is "sufficiently pervasive to alter the conditions of employment and create an abusive working environment"); Maher, 406 F.Supp.2d at 1023 (same); see also Baldwin v. Blue Cross Blue Shield of Ala., 480 F.3d 1287, 1301 (11th Cir. 2007) (applying Meritor standard in Title VII case). Among the factors to be considered in assessing a harassment claim are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Allen v. Tyson Foods, Inc., 121 F.3d 642, 647 (11th Cir. 1997) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

Viewing the evidence in the light most favorable to Dees, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

22

475 U.S. 574, 587 (1986), the court finds that Dees has shown the existence of genuine issues of material fact as to the hostility of his work environment that are sufficient to preclude summary judgment. Prater, Dees's supervisor, made frequent derogatory comments about Dees's Guard service and engaged in discriminatory behavior that went beyond mere words. By demanding that Dees produce orders for every Guard training weekend and insisting that he put his civilian job ahead of his military service, Prater was implicitly threatening Dees's continued employment at HMMA. This behavior occurred with some frequency, not merely on a few isolated incidents. Furthermore, Prater unfairly over-assigned Dees to more dangerous work, suggesting that he punitively assigned Dees to work that is more physically threatening. These allegations meet the standard for "severe or pervasive harassment," under both the subjective and the objective components. See Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc). Dees subjectively perceived the harassment to be

23

severe and pervasive, and a reasonable person in his position would agree.  Id.  Dees reports frequent derogatory remarks and over-assignment to physically threatening tasks, and Prater gave him reason to fear for his job.  In light of the totality of the circumstances, the court finds that a reasonable jury could find that the harassment Dees faced was sufficiently severe and pervasive to alter the terms and conditions of his employment.

Furthermore, HMMA may be held liable for the harassment, as Prater was Dees's supervisor and HMMA has raised no affirmative defense that it exercised reasonable care to correct the harassment and that Dees failed to avoid the harm.  See Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998).

Nevertheless, HMMA and HMA are entitled to summary judgment on Dees's USERRA-harassment claim.  USERRA provides that a court may award three kinds of relief: it may require the employer to "(A) ... comply with the provisions of this chapter," 38 U.S.C. § 4323(d)(1), "(B)

24

... compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter," id., and "(C) ... require the employer to pay the person an amount equal to the amount referred to in subparagraph (B) as liquidated damages, if the court determines that the employer's failure to comply with the provisions of this chapter was willful." Id. The statute further provides that, "The court shall use, in any case in which the court determines it is appropriate, its full equity powers, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits of persons under this chapter." 38 U.S.C. § 4323(e).  This remedial scheme conspicuously omits any recovery for mental anguish, pain and suffering, and punitive damages. See Vander Wal v. Sykes Enterprises, Inc., 377 F.Supp.2d 738, 746 (D.N.D. 2005) (Hovland, J.).

Because Dees suffered no loss of wages or other benefits as a result of the alleged harassment against

25

him, he would not be entitled to loss of wages or other benefits or any commensurate liquidated damages were he to prevail on his harassment claim.  And because he is no longer working for HMMA, an injunction requiring HMMA and MHA "to comply with the provisions of [USERRA]," 38 U.S.C. § 4323(d)(1)(A), would be of no benefit to him. In short, there is no relief the court can give Dees for the harassment he may have suffered.

As a result, Dees does not meet the minimum constitutional requirements for standing as to his harassment claim.  In order to have standing (1) "the plaintiff must have suffered ... an invasion of a legally protected interest resulting in a "concrete and particularized" injury," (2) "the injury must have been caused by the defendant's complained-of actions," and (3) "the plaintiff's injury or threat of injury must likely be redressible by a favorable court decision."  Fla. State Conference of N.A.A.C.P. v. Browning, 522 F.3d 1153, 1159 (11th Cir. 2008) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  Dees cannot meet

this third requirement because a decision in his favor
would not bring him any relief.  Cf. Tanner Advertising
Group, L.L.C. v. Fayette County, 451 F.3d 777, 786 (11th
Cir. 2006) ("A request for damages that is barred as a
matter of law cannot save a case from mootness.").

The court emphasizes that it is not saying that there
is no remedy for USERRA-prohibited harassment.  If Dees
were still working for HMMA and if the fact-finder were
to find that Dees had suffered harassment as claimed,
there would be the question of whether an injunction
prohibiting HMMA and MHA from harassing him would be
appropriate.  See 38 U.S.C. § 4323(d)(1)(A) ("The court
may require the employer to comply with the provisions of
this chapter.").  But, because Dees is no longer working
for HMMA, the court need not reach this issue.


**B. State-Law Claims**

Having determined that summary judgment should be
granted in favor of HMMA and HMA on Dees's termination
and harassment claims under USERRA, the court now

27

considers what to do with Dees's state-law claim for outrage and his state-law claim for conversion of his notes and military pay stubs.  Because summary judgment is being granted on Dees's federal claims, this court "may decline to exercise supplemental jurisdiction" over his state-law claims.   28 U.S.C. § 1367(c)(3).   The language of the statute is discretionary, but case law leans toward dismissing state-law claims in the absence of a federal claim to tether them to federal court.  <u>See Mergens v. Dreyfoos</u>, 166 F.3d 1114, 1119 (11th Cir. 1999) ("This court has noted that if the federal claims are dismissed prior to trial, [precedent] strongly encourages or even requires dismissal of state claims.") (internal quotation omitted); <u>see also Carnegie-Mellon University v. Cohill</u>, 484 U.S. 343 (1988) ("when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice").  The court thus declines to exercise supplemental jurisdiction over

28

Dees's state-law outrage and conversion claims. <u>See</u> <u>City of Chicago v. Int'l Coll. of Surgeons</u>, 522 U.S. 156, 172-73 (1997); <u>Engelhardt v. Paul Revere Life Ins. Co.</u>, 139 F.3d 1346, 1350 (11th Cir. 1998).[4]

* * *

In conclusion, the court will, as stated, grant the reconsideration motions, vacate its previous summary-judgment opinion and accompanying judgment, and enter this new opinion, with a companion judgment, in their place.  Pursuant to this new opinion, the court will enter summary judgment in favor of HMMA and HMA on both of Dees's USERRA claims (retaliation and harassment) and will dismiss both of his state-law claims (outrage and conversion) with the right to refile then in state court. An appropriate judgment will be entered.

DONE, this the 25th day of March, 2009.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

---

4.  Pursuant to 28 U.S.C. § 1367(d), the applicable statute of limitations under state law will be tolled 30 days so as to allow Dees time to refile his state-law claims in state court.